1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11  KATY WILLIAMS; GARY EVANS; and
    Minor Plaintiffs A.C., Am.E. and Aa.E.,
12  by and through their Guardian Ad Litem,
    JOHN GARTER,
13
                          Plaintiffs,
14  v.
15  COUNTY OF SAN DIEGO; COUNTY
    OF SAN DIEGO HEALTH AND
16  HUMAN SERVICES AGENCY;
    DANIEL V. BERNAL; JANET
17  BARRAGAN, and MIRIAM G.
    PARTIDA,
18
19                        Defendants.

Case No.: 17cv815-MMA (JLB)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

[Doc. No. 15]

20          Plaintiffs Katy Williams, Gary Evans, and minor plaintiffs A.C., Am.E., and Aa.E.,

21  by and through their Guardian ad Litem, John Garter (collectively, "Plaintiffs"), filed this

22  action pursuant to 42 U.S.C. § 1983 against Defendants County of San Diego ("County"),

23  County of San Diego Health and Human Services Agency ("HHSA"), Daniel Bernal

24  ("Bernal"), Janet Barragan ("Barragan"), and Miriam Partida ("Partida") alleging

25  violations of Plaintiffs' First, Fourth, and Fourteenth Amendment rights. *See* Doc. No. 1.

26  Plaintiffs also raise claims under *Monell*.  Defendants move to dismiss Plaintiffs'

27  Complaint for failure to state a claim for relief pursuant to Federal Rule of Civil

28  Procedure 12(b)(6).  Doc. No. 15.  Plaintiffs filed an opposition, to which Defendants

replied. Doc. Nos. 16, 17. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. Doc. No. 18. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

<u>**BACKGROUND**</u>

Plaintiff Katy Williams ("Williams") is the natural mother of A.C., Am.E., and Aa.E ("Minor Plaintiffs"). Complaint ¶ 11. Williams has another minor child, D.C., who is not a plaintiff in this action. Complaint ¶ 11. Plaintiff Gary Evans ("Evans") is the natural father of Am.E. and Aa.E. Complaint ¶ 12. Williams and Evans share custody of Am.E. and Aa.E, and Williams has sole custody of A.C. Complaint ¶¶ 13-14. On April 24, 2017, the Court appointed Mr. John Garter as Guardian ad Litem for Minor Plaintiffs. *See* Doc. No. 4. Defendants Bernal, Barragan, and Partida (collectively, the "social worker defendants") are officers, agents, and/or employees of the County and HHSA. Complaint ¶¶ 5-7.

In 2013, the County and HHSA first became acquainted with Williams and her children after an incident involving D.C.'s father, Jason Clark ("Clark"). Complaint ¶ 15. Clark became violent with Williams and threatened to kill her. Complaint ¶ 15. As a result, Williams obtained a restraining order against Clark. Complaint ¶ 15.

In June 2014, HHSA filed a petition on D.C.'s behalf alleging D.C. sustained bruises to his head, "which would not ordinarily be sustained except as a result of the unreasonable acts of D.C.'s father[.]" Complaint ¶ 16. Juvenile dependency proceedings commenced shortly thereafter. Complaint ¶ 16. D.C. lived with Williams during this time, and Clark was no longer able to have unsupervised visits with his son. Complaint ¶ 16. Clark, angry about the supervised visits with D.C., began making "false allegations against Williams and [Evans.]" Complaint ¶¶ 17-18.

In January 2016, Clark reported a bruise near D.C.'s eye to HHSA. Complaint ¶ 21. D.C. "hit his left eye on a corner of a kitchen island while playing with Minor Plaintiff Aa.E." Complaint ¶ 21. Bernal inspected the bruise on January 8, 2016.

Complaint ¶ 21. During Bernal's investigation, Bernal informed Williams that he wished to interview minor plaintiff Aa.E. alone. Complaint ¶ 22. Williams advised Bernal that she did not consent to such an interview. Complaint ¶ 22. On January 11, 2016, Evans and Williams' attorney sent a letter to the County, HHSA, and Bernal, indicating that "Minor Plaintiffs were represented by counsel and that no interviews of Minor Plaintiffs A.C., Am.E. or Aa.E. should take place without counsel present." Complaint ¶ 23.

On January 12, 2016, D.C. sustained injuries to his head when "he ran into a doorknob at his home[.]" Complaint ¶ 24. Williams took D.C. to the hospital, and the doctor discharged D.C. indicating that D.C. "sustained a 'normal childhood injury.'" Complaint ¶ 24. Clark, once again, reported the incident to the HHSA hotline. Complaint ¶ 24.

On January 19, 2016, Bernal went to A.C.'s middle school, instructed staff to remove her from her classroom, and "detained her against her will" without court order, parental consent, knowledge, or presence. Complaint ¶ 25. That same day, Bernal also visited Am.E. and Aa.E.'s elementary school, instructed staff to remove them from their classrooms, and "detained them against their will" without court order, parental consent, knowledge, or presence. Complaint ¶ 26. Once the children were removed from their classrooms, Bernal, Barragan, and Partida "interrogated" the children, despite the fact that Bernal, the County, and HHSA "were informed in writing" that Evans and Williams "did not want their minor children to be interviewed by social workers with the County and HHSA without a parent and/or attorney being present at that interview." Complaint ¶ 27. Notably, there were not, nor have there ever been, any allegations that Minor Plaintiffs were abused or neglected by their parents, or any other individuals. Complaint ¶ 27.

During the interviews, the social worker defendants inquired about Minor Plaintiffs' safety at home, how their parents disciplined them, and whether D.C. "was an active child." Complaint ¶ 28. The social worker defendants did not inform the Minor Plaintiffs that they could decline to be interviewed, nor were they given a choice about

being interviewed "once they were detained and confronted by the Defendant workers." Complaint ¶ 29. Further, the Minor Plaintiffs "were not informed that they could have a parent and/or an attorney present for the interviews." Complaint ¶ 29. At the time of the interviews, "Defendants did not have exigency, Court Order, parental consent, knowledge or presence, or even reasonable suspicion that the Minor Plaintiffs were the subject of abuse or neglect." Complaint ¶ 30.

Based on these allegations, Plaintiffs bring six causes of action. Specifically, Plaintiffs bring four causes of action against the social worker defendants: (1) retaliation in violation of Plaintiffs' First Amendment rights under 42 U.S.C. § 1983; (2) unlawful seizure in violation of Minor Plaintiffs' Fourth Amendment rights under 42 U.S.C. § 1983; (3) interference with Plaintiffs' Fourteenth Amendment familial association rights under 42 U.S.C. § 1983; and (4) interference with Plaintiffs' Fourteenth Amendment procedural due process rights under 42 U.S.C. § 1983. Further, Plaintiffs bring one cause of action against the County and HHSA for municipal liability under 42 U.S.C. § 1983 ("*Monell* claim"). Finally, Plaintiffs bring one cause of action against all Defendants for injunctive relief. Defendants move to dismiss Plaintiffs' Complaint in its entirety.

## LEGAL STANDARDS

### A.     Request for Judicial Notice

Generally, a court must take judicial notice if a party requests it and supplies the court with the requisite information. Fed. R. Evid. 201(d). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see Mack v. South Bay Beer Distributors,* 798 F.2d 1279, 1282 (9th Cir. 1986) (citing *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.,* 245 F.2d 67, 70 (9th Cir. 1956)). While a court may take judicial notice of matters of public record, it may not take judicial notice of a fact that is subject to reasonable dispute. Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

**B.    Rule 12(b)(6)**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face."  Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  The court need not take legal conclusions as true merely because they are cast in the form of factual allegations.  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).  Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."  *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading.  *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

**A.** **Plaintiffs' Request for Judicial Notice**

As an initial matter, Plaintiffs request that the Court take judicial notice of the district court's order in *Dees v. County of San Diego*, 2017 WL 4511003, (S.D. Cal. Oct. 10, 2017). *See* Doc. No. 21. In *Dees*, the district court granted judgment as a matter of law in favor of the defendants, some of which are defendants in the instant action. *See id.* at 2. Plaintiffs summarily state the decision is "persuasive authority to the pending matter before this Court." *Id.* Defendants filed an objection to Plaintiffs' request for judicial notice. *See* Doc. No. 22. Defendants contend *Dees* is "irrelevant" to the case at bar and "devoid of any precedential value." *Id.* at 1. Though the Court finds *Dees* is relevant to the instant action, the Court **DENIES** Plaintiffs' request for judicial notice, however, as "[j]udicial notice is not required to alert the Court to relevant case authority." *Hamilton v. Wells Fargo Bank, N.A.*, 2010 WL 1460253, at *1 n.1 (N.D. Cal. Apr. 12, 2010).

**B.** **Defendants' Motion to Dismiss**

Defendants argue that the Court should dismiss Plaintiffs' Complaint in its entirety for the following reasons: (1) Plaintiffs fail to allege violations of their constitutional rights, and even if they did, the social worker defendants are entitled to qualified immunity; (2) Plaintiffs fail to allege sufficient facts to support their municipal liability claim; and (3) Plaintiffs fail to allege circumstances justifying injunctive relief. *See* Doc. No. 15-1. The Court addresses each argument in turn.

**1. 42 U.S.C. § 1983 and Qualified Immunity**

Defendants first argue that Plaintiffs state no violation of their First, Fourth, or Fourteenth Amendment rights. However, even if Plaintiffs did state a violation of their constitutional rights, the social worker defendants are entitled to qualified immunity. *See* Doc. No. 15-1 at 3-9.

42 U.S.C. § 1983 creates a means for redressing violations of substantive rights created by the United States Constitution or federal statutes. *See Baker v. McCollan*, 443

U.S. 137, 140 (1979).  It states, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  42 U.S.C. § 1983.  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)).  To state a claim under section 1983, a plaintiff must allege (1) he or she was deprived of a right secured by the United States Constitution or federal laws, and (2) the deprivation was caused by a person acting under color of state law.  *Parratt v. Taylor*, 451 U.S. 527, 535, (1981) (overruled in part on other grounds, *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986)).

The doctrine of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Courts considering a claim of qualified immunity must determine whether the plaintiff has alleged both: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow*, 457 U.S. at 818).  The Supreme Court has clarified that "lower courts have discretion in deciding which of the two prongs of the qualified-immunity analysis to tackle first."  *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).  Regarding the second prong, the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *Saucier v. Katz*, 533 U.S. 194, 202 (2001).  The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Id.* at 201.

The purpose underlying this defense is "to strike a balance between the competing need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011).

a. First Amendment Violation

Plaintiffs allege that "[i]n retaliation against [Plaintiffs'] exercise of their legal rights under the First and Fifth Amendment to object to, refuse, and/or complain about the conduct of the COUNTY, HHSA, and its social workers," the social worker defendants "acted together in initiating and conducting investigations and proceedings . . . to interfere with the legal custody rights of [Plaintiffs]." Complaint ¶ 40. In their motion, Defendants contend Plaintiffs fail to sufficiently allege "the threshold elements of a First Amendment retaliation claim[.]" Doc. No. 15-1 at 5. However, even if Plaintiffs "had adequately pled facts showing a First Amendment violation via retaliation, qualified immunity would nonetheless shield the social worker Defendants from liability because their actions did not violate clearly established law." *Id.*

To state a claim for retaliation under the First Amendment, a plaintiff must allege that: "(1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)).

Here, the Court finds that Plaintiffs have not sufficiently alleged a claim for retaliation. As an initial matter, Minor Plaintiffs have not demonstrated that they were engaged in a constitutionally protected activity. As the Complaint alleges, Williams notified Bernal that "she would not consent to an interview [of Aa.E. alone] without the presence of either her or an attorney." Complaint ¶ 22. Moreover, attorneys for the "WILLIAMS/EVANS' family sent a letter to COUNTY, HHSA AND BERNAL, informing said Defendants that the Minor Plaintiffs were represented by counsel and that

no interviews of Minor Plaintiffs . . . should take place without counsel present."
Complaint ¶ 23. Thus, as alleged, it does not appear that Minor Plaintiffs were engaged in any constitutionally protected activity. As such, Minor Plaintiffs' First Amendment claim fails on this basis.

Further, even assuming Evans and Williams have sufficiently alleged that they were engaged in a constitutionally protected activity, Plaintiffs allege insufficient facts to support the second and third elements of their First Amendment claim—namely that Defendants' actions would chill a person of ordinary firmness, and that engaging in their constitutionally protected right was a substantial motivating factor in Defendants' conduct. For example, *after* Plaintiffs' counsel sent a letter to the County, HHSA, and Bernal indicating that Minor Plaintiffs were represented by counsel, D.C. sustained another injury. Complaint ¶ 24. Plaintiffs fail to sufficiently allege that the social worker defendants conducted the interviews based upon the family's letter, as opposed to solely investigating D.C.'s injuries. As such, Plaintiffs fail to allege "plausible circumstances connecting the defendants' retaliatory intent to the suppressive conduct." *Arizona Student' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 870 (9th Cir. 2016).

Accordingly, the Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiffs' section 1983 claim to the extent it is based upon a First Amendment violation **with leave to amend**.

### b. Fourth Amendment Violation

Minor Plaintiffs assert that the social worker defendants committed an unlawful seizure by removing them from their classrooms at school, detaining them, and questioning them without exigency, court order, the consent and/or knowledge of a parent, and without reasonable suspicion that they were subject to abuse or neglect. Complaint ¶ 32. Defendants argue such conduct does not violate the Fourth Amendment. Doc. No. 15-1 at 6. Further, even if the social workers' interviews violated the Minor Plaintiffs' Fourth Amendment rights, this right was not clearly established at the time of the interviews; thus, the social worker defendants are entitled to qualified immunity. *See*

*id.* at 7; Doc. No. 17 at 4-6.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. CONST. amend IV. A seizure of a person occurs when, considering all of the circumstances, "a reasonable person would have believed that he was not free to leave." *Jones v. Cnty. of L.A.*, 802 F.3d 990, 1001 (9th Cir. 2015) (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

Here, the Court finds that Plaintiffs sufficiently state a constitutional violation of the Minor Plaintiffs' Fourth Amendment rights. While no binding authority has addressed the precise situation at issue, interviewing minors at school without parental consent can violate constitutional rights. *See Dees*, 2017 WL 4511003, at *7 (concluding a social worker's interview of a child at school, without parental consent, exigency, court order, or reasonable suspicion the child was the subject of child abuse, violated the child's Fourth Amendment rights); *Stoot v. City of Everett*, 582 F.3d 910, 921 (9th Cir. 2009) (in-school interview by detective of teenager suspected of sexual assault was a seizure under the Fourth Amendment); *Jones v. Hunt*, 410 F.3d 1221, 1226-27 (10th Cir. 2005) (social worker and police officer's in-school interview of teenager suspected of child abuse violated teenager's Fourth Amendment rights). Accordingly, in light of the relevant case law, the Court finds that Plaintiffs sufficiently allege a violation of Minor Plaintiffs' Fourth Amendment rights.

However, the Court finds that the social worker defendants are entitled to qualified immunity because the right was not clearly established at the time of the interviews. Plaintiffs rely primarily on two Ninth Circuit decisions in support of their contention that the social worker defendants "had fair notice that their actions were unlawful."[1] Doc.

---

[1] Plaintiffs also cite to two decisions from outside of the Ninth Circuit: (1) *Hunt*, 410 F.3d at 1226-27, and (2) *Word of Faith Fellowship, Inc. v. Rutherford Cnty. Dep't of Soc. Servs.*, 329 F. Supp. 2d 675, 687 (W.D.N.C. 2004). However, the Ninth Circuit has made clear that only prior, factually similar *precedent* can create clearly established law. *S.B. v. Cnty. of San Diego*, 864 F.3d 1010, 1015-16

No. 16 at 9. First, Plaintiffs cite to *Stoot*, where the Ninth Circuit concluded that a detective's school interview of a minor accused of sexual assault constituted a seizure. 582 F.3d at 918. As Defendants note, *Stoot* did not involve a social worker interviewing a child at school in connection with a child abuse investigation, as alleged here. Thus, *Stoot* does not constitute "clearly established law" sufficient to make clear to reasonable social worker that his or her conduct was clearly unlawful. *See White v. Pauly*, 137 S. Ct. 548, 552 (2017) (articulating that "clearly established law must be 'particularized' to the facts of the case.").

Second, Plaintiffs cite to *Greene v. Camreta*, where the Ninth Circuit concluded that "the decision to seize and interrogate [a minor plaintiff at school] in the absence of a warrant, a court order, exigent circumstances, or parental consent was unconstitutional" under the Fourth Amendment. 588 F.3d 1011, 1030 (9th Cir. 2009). The Supreme Court, however, dismissed the action as moot and specifically vacated the part of the Ninth Circuit's opinion regarding the Fourth Amendment issue. *Camreta v. Greene*, 563 U.S. 692, 697 (2011). Plaintiffs contend that "the Ninth Circuit's reasoning in [*Greene*] provides fair notice to the County and its social workers . . . that their warrantless, non-exigent, 'interview-at-any-time-we-wish' school interviews violate the Fourth Amendment rights of the children who are seized from their classrooms and detained for interviews." Doc. No. 16 at 9. Yet, the Supreme Court expressly stated that "[t]he point of vacatur is to prevent an unreviewable decision from spawning any legal consequences . . . Vacatur then rightly strips the decision below of its binding effect, and clears the path for future relitigation." *Camreta*, 563 U.S. at 713 (internal quotation marks and citations omitted). As such, *Greene* does not place social workers on notice that interviewing a child at school without a warrant, parental consent, or exigency is unlawful. *See Capp v.*

---

(9th Cir. 2017); *see also Blanford v. Sacramento Cty.*, 406 F.3d 1110, 1119 (9th Cir. 2005) (qualified immunity applies when "neither the Supreme Court nor circuit precedent in existence [at the time] . . . would have put a reasonable officer [in the same position] on notice" that his or her conduct was unlawful). As such, both cases are inapposite.

*Cnty. of San Diego*, 2017 WL 1400148, at *5 (S.D. Cal. Apr. 19, 2017) (concluding social workers are entitled to qualified immunity "in the absence of binding authority establishing that a social worker's interview of a child at school violates the child's Fourth Amendment rights."); *McManus v. Cnty. of San Diego*, 2016 WL 3552007, at *4 (S.D. Cal. June 30, 2016) (finding *Greene* did "not lend support to Plaintiff's legal theory that parental rights are violated whenever a 14-year-old minor is removed from school and interviewed in the course of a child abuse investigation without the parent's consent, a court order, or exigent circumstances"); *Mann v. Cnty. of San Diego*, 2013 WL 4046642, at *10 (S.D. Cal. Aug. 8, 2013) (finding the defendants were entitled to qualified immunity where the plaintiffs relied solely on *Greene* for the proposition that a social worker's interview of a child at school violates the Constitution).

Accordingly, the Court finds that the social worker defendants are entitled to qualified immunity on Minor Plaintiffs' section 1983 claim to the extent it is based upon a violation of their Fourth Amendment rights.

### c. Fourteenth Amendment Violation: Substantive Due Process

Plaintiffs assert that the social worker defendants "interfered with the familial association rights" of Evans and Williams "to the care, custody and control of their children, and the rights of the Minor Plaintiffs to the care and comfort of their parents" by "seizing, detaining and interrogating the Minor Plaintiffs without exigency, Court Order, just or reasonable cause, or consent[.]" Complaint ¶ 47. Defendants contend the substantive due process right to familial association is implicated only when a child is physically separated from a parent, and does not apply to situations where children are interviewed at school during a child abuse investigation. *See* Doc. No. 15-1 at 7-8. Moreover, Defendants claim that even if such conduct did rise to the level of a constitutional violation, the social worker defendants are entitled to "qualified immunity[] because any Fourteenth Amendment prohibition on their conduct was far from clearly established." *Id.* at 8.

"The Fourteenth Amendment protects individuals against the deprivation of

property by the government without due process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). "The substantive due process right to family integrity or to familial association is well established," such that "[a] parent has a 'fundamental liberty interest' in companionship with his or her child." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) (quoting *Kelson v. City of Springfield*, 767 F.2d 651, 654-55 (9th Cir. 1985)). "The Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies." *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1107 (9th Cir. 2001).

To allege a Fourteenth Amendment violation premised on the unlawful interference with familial rights, a plaintiff must demonstrate that "the [alleged] harmful conduct must 'shock [ ] the conscience' or 'offend the community's sense of fair play and decency." *Rosenbaum*, 663 F.3d at 1079 (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952). "[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Rather, to impose liability for a violation of an individual's due process rights, the official's actions must "shock[ ] the conscience." *Id.*

Here, to the extent that Plaintiffs assert that the school interviews violated the Minor Plaintiffs' substantive due process rights, such allegations are duplicative of Minor Plaintiffs' Fourth Amendment claim. The Supreme Court has held that where a constitutional claim is covered by a specific constitutional amendment, then "the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Lewis*, 523 U.S. at 843 (internal quotation omitted); *accord Albright v. Oliver*, 510 U.S. 266, 272-73 (1994) (noting that when a broad "due process" violation is alleged, but a particular amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing the[] claims." (quoting *Graham v. Connor*, 490 U.S. 386, 395

(1989)); *Fontana v. Haskin*, 262 F.3d 871, 882 (9th Cir. 2001). In Plaintiffs' opposition, Plaintiffs apparently concede this point noting "Plaintiffs have alleged violations of the Minor Plaintiffs' Fourth Amendment rights and *Evans and Williams' Fourteenth Amendment rights.*" Doc. No. 16 at 16 (emphasis added). Thus, because the Fourth Amendment provides an explicit textual source of constitutional protection, Minor Plaintiffs' Fourteenth Amendment substantive due process claim is subsumed by the Fourth Amendment analysis above.

Regarding the parents, the Court finds that Evans and Williams sufficiently allege a Fourteenth Amendment substantive due process violation. Parents have a protected liberty interest in the "companionship, care, custody and management of [their] children." *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27 (1981). However, a parent's rights are limited by the government's interest in protecting minor children. *See Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000). Though no binding authority has yet addressed this situation, the district court in *Dees* recently found that a social worker's interview of a minor child at school without parental consent, exigency, court order, or suspicion that the child was abused "shocks the conscience" and violates the Fourteenth Amendment rights of the child's parent. 2017 WL 4511003, at *8-9. Plaintiffs allege nearly identical conduct to that alleged in *Dees*. Moreover, Plaintiffs repeatedly emphasize that "there were not, nor have there ever been any allegations that the minor plaintiffs were abused or neglected by their parents or anyone else." Complaint ¶ 27. As such, construing Plaintiffs' allegations in the light most favorable to them, the Court finds the reasoning in *Dees* to be persuasive, and concludes that Evans and Williams sufficiently allege a violation of their Fourteenth Amendment substantive due process rights on the basis of interference with familial relations.

Nevertheless, the Court finds that the social worker defendants are entitled to qualified immunity because any prohibition of their conduct was not clearly established at the time of the interviews. Plaintiffs rely solely on *Doe v. Heck*, 327 F.3d 492, 524 (7th Cir. 2003), in support of their argument that "clearly established law supports

Plaintiffs' claim for violation of substantive due process." Doc. No. 16 at 15. In *Heck*, the Seventh Circuit found that "the defendants violated the plaintiffs' right to familial relations by conducting a custodial interview of John Doe Jr. without notifying or obtaining the consent of his parents and by targeting the plaintiff parents as child abusers." 327 F.3d at 524. However, as discussed above, the Ninth Circuit requires identifying "*precedent*" at the time of the alleged constitutional violation "that put [the defendants] on clear notice" that their conduct was unlawful. *S.B.*, 864 F.3d at 1015 (emphasis added). Because *Heck*, a decision from the Seventh Circuit, is not binding upon a district court in the Ninth Circuit, the social worker defendants are entitled to qualified immunity. *See McManus*, 2016 WL 3552007, at *4 (granting qualified immunity to social workers because where "the child's removal is from school rather than the home, the parent's right of familial association would appear to be leagues short of being clearly established.").

Accordingly, the Court finds that the social worker defendants are entitled to qualified immunity on Evans and Williams' section 1983 claim to the extent it is based upon a violation of their Fourteenth Amendment substantive due process rights.

### d. Fourteenth Amendment Violation: Procedural Due Process

Plaintiffs further allege the social worker defendants violated their procedural due process rights by "deliberately disregard[ing] Plaintiffs' request that an attorney be present at any and all interviews of the Minor Plaintiffs by County of San Diego social workers." Complaint ¶ 54. Plaintiffs contend Evans and Williams "were not given any notice that their children were to be seized and detained by Defendant Social Workers or any opportunity to be heard." Doc. No. 16 at 16. Defendants argue that Plaintiffs fail to allege a deprivation of a protected liberty interest; thus, "Plaintiffs' procedural due process claim fails on this threshold inquiry." Doc. No. 15-1 at 9. However, even if Plaintiffs could sufficiently allege a procedural due process violation, the social worker defendants are entitled to qualified immunity because such conduct "did not violate clearly established law[.]" *Id.*

"A section 1983 claim based upon procedural due process [ ] has three elements:
(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the
interest by the government; (3) lack of process." *Portman*, 995 F.2d at 904. Due process
requires "a person deprived of property [or liberty] be given an opportunity to be heard at
a meaningful time and in a meaningful manner." *Buckingham v. Sec'y of U.S. Dep't of
Agr.*, 603 F.3d 1073, 1082 (9th Cir. 2010) (internal quotation marks and citation omitted).
Procedural due process "does not require that the notice and opportunity to be heard
occur before the deprivation;" rather, it "can take place through a combination of pre- and
post-deprivation procedures, or be satisfied with post-deprivation process alone[.]" *Id.*
(internal citations omitted).

Here, it is unclear whether Plaintiffs intend to assert a procedural due process
claim on behalf of all individuals, or just Evans and Williams. For example, the
Complaint alleges a cause of action for procedural due process on behalf of all Plaintiffs.
However, in Plaintiffs' opposition, Plaintiffs claim that "Plaintiffs were not given any
notice that *their children* were to be seized and detained by Defendant Social Workers or
any opportunity to be heard." Doc. No. 16 at 16. Such a statement implies that the cause
of action is brought solely on behalf of the parents. Moreover, the district court in *Shuey
v. County of Ventura* found that a minor plaintiff's procedural due process claim
"essentially duplicates his Fourth Amendment claim" and must be analyzed under the
Fourth Amendment. 2015 WL 6697254, at *7 (C.D. Cal. Nov. 3, 2015). Plaintiffs
provide no case law on point indicating whether minor plaintiffs in this situation can
assert a procedural due process claim, when the underlying facts mirror Minor Plaintiffs'
Fourth Amendment claim. As such, the Court finds that at this time, Minor Plaintiffs fail
to allege a violation of their Fourteenth Amendment procedural due process rights.
Accordingly, the Court **GRANTS** Defendants' motion and **DISMISSES** Minor
Plaintiffs' section 1983 claim based on a violation of their procedural due process rights
**with leave to amend**.

Regarding Williams and Evans, the Court finds that the parents sufficiently state a

17cv815-MMA (JLB)

procedural due process violation.  As noted above, Evans and Williams have sufficiently alleged that they were deprived of their well-established right to family integrity under the Fourteenth Amendment.  Thus, the first two elements of Evans and Williams' procedural due process claim are satisfied.  Next, Evans and Williams must show a lack of process.  *Portman*, 995 F.2d at 904.  "While the level of process differs depending on the factual situation, the allegation that no predeprivation process was provided in a non-emergency situation states a claim."  *Demaree v. Krause*, 2012 WL 12548144, at *7 (D. Ariz. Sept. 10, 2012); *see also Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 716 (9th Cir. 2011) (noting that procedural due process is "flexible depending on the circumstances").  The Seventh Circuit has found that interviewing a child at school without first notifying the parents and obtaining their consent is sufficient to state a claim for violation of the plaintiffs' procedural due process rights.  *Heck*, 327 F.3d at 527.  Accordingly, taking Plaintiffs' allegations as true, the Court finds that Evans and Williams' allegations are sufficient to allege a violation of procedural due process.

The Court, however, finds that the social worker defendants are entitled to qualified immunity.  Plaintiffs argue that "[t]he procedural due process rights of parents were recognized by the Ninth Circuit in *Wallis v. Spencer* . . . and were more recently recognized in *Shuey v. County of Ventura*, 2015 WL 6697254, [at] *7 (C.D. Cal. Nov. 3, 2015)."  Doc. No. 16 at 16.  However, *Wallis* is factually distinguishable from the case at bar.  There, the plaintiffs alleged violations of the family's constitutional rights based on the "unlawful removal" of the children "from their home in the middle of the night and by the subsequent unlawful detention of the children, including the invasive vaginal and anal examinations."  *Wallis*, 202 F.3d at 1136.  Here, the children were not physically removed from their parents.  Rather, the children were taken out of their classrooms and interviewed at school.  Thus, *Wallis* does not support Plaintiffs' argument that the "contours of this right" were well-established at the time of the interviews in January 2016.  Doc. No. 16 at 16.

Moreover, in *Shuey*, the district court considered a procedural due process claim by

a minor, J.S., and his father, Mr. Shuey, in connection with social workers' in-school interview and physical examination of J.S. 2015 WL 6697254, at *7, 1. The court dismissed J.S.'s procedural due process claim as duplicative of his Fourth Amendment claim because he generally asserted that the social workers "should have obtained consent or a court order prior to conducting the interview." 2015 WL 6697254, at *7. As for Mr. Shuey, the court noted that "Defendants do not appear to challenge Shuey's procedural due process claim with respect to the interview," and Mr. Shuey's procedural due process claim survived the motion to dismiss. *See id.* Thus, contrary to Plaintiffs' assertion, *Shuey* is insufficient to demonstrate a clearly established right. Moreover, "district court decisions—unlike those from the courts of appeals—do not necessarily settle constitutional standards or prevent repeated claims of qualified immunity." *S.B.*, 864 F.3d at 1016 (quoting *Hamby v. Hammond*, 821 F.3d 1085, 1095 (9th Cir. 2016)).

Accordingly, the Court finds that the social worker defendants are entitled to qualified immunity on Evans and Williams' section 1983 claim to the extent it is based upon a violation of their Fourteenth Amendment procedural due process rights.

## 2. Municipal Liability ("*Monell*") Claim

Second, Defendants argue that Plaintiffs fail to allege specific facts necessary to support each of the elements of their *Monell* claim. *See* Doc. No. 15-1 at 10-11. Plaintiffs assert their *Monell* claim against the County and HHSA.

"As a prerequisite to establishing Section 1983 municipal liability," a plaintiff must satisfy one of three conditions. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). First, a municipality may be liable under § 1983 where it acted pursuant to an official municipal policy, causing a constitutional tort. *See Monell*, 436 U.S. at 691-95. Second, a municipality may be held liable under § 1983 when the municipality's omissions or failures to act amounted to a policy of deliberate indifference to constitutional rights. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010) (overruled in part on other grounds, *Castro v. Cnty. of L.A.*, 833 F.3d 1060 (9th Cir. 2016)). Third, a municipality may be held liable under § 1983 when government officials with final

policy-making authority either: (a) committed the underlying constitutional violation themselves, or (b) ratified the unconstitutional conduct of a subordinate. *See id.*

After establishing one of the above methods of liability, the plaintiff must show that the challenged municipal conduct was both the cause in fact and the proximate cause of the constitutional deprivation. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008); *Trevino*, 99 F.3d at 918.

Defendants argue Plaintiffs' Monell claim fails for several reasons: (a) Plaintiffs fail to allege the deprivation of a constitutional right; (b) Plaintiffs fail to identify a policy that condones the violation of a family's constitutional rights during child abuse investigations; (c) Plaintiffs fail to allege facts sufficient to plausibly state that the County and HHSA were "deliberately indifferent;" and (d) Plaintiffs fail to allege the policy was the "moving force" behind the constitutional violations. The Court addresses each argument in turn.

### a. Constitutional Deprivation

Defendants first contend that Plaintiffs fail to plausibly allege an underlying constitutional deprivation; thus, Plaintiffs' *Monell* claim fails. *See* Doc. No. 15-1 at 10. However, for the reasons set forth above, the Court disagrees. Plaintiffs have not sufficiently alleged a violation of their First Amendment rights, and Minor Plaintiffs' procedural due process rights. Plaintiffs have, however, sufficiently alleged constitutional violations of Minor Plaintiffs' Fourth Amendment rights, and Evans and Williams' Fourteenth Amendment substantive and procedural due process rights. As such, the Court proceeds to analyze Defendants' remaining arguments.

### b. Official Policy or Custom

Second, Defendants contend Plaintiffs fail to allege that the social workers acted pursuant to a policy. A plaintiff may establish municipal liability "by demonstrating that . . . the constitutional tort was the result of a longstanding practice or custom which constitutes the standard operating procedure of the local government entity[.]" *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008). An "official" municipal policy or custom does

not necessarily require that the municipality have expressly adopted the alleged policy. *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003). However, such a "custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled . . . policy.'" *Trevino*, 99 F.3d at 918 (quoting *Monell*, 436 U.S. at 691).

Here, the Court finds Plaintiffs' allegations sufficient to allege the existence of a custom or policy. Although Plaintiffs do not provide an explicit policy,[2] Plaintiffs allege that the County "established and/or followed policies" which were "the moving force behind the violations of Plaintiffs' constitutional rights[.]" Complaint ¶ 60. Such policies include, but are not limited to, seizing and detaining children at school without exigent circumstances or parental consent, causing minor children to be interviewed at school without a court order or parental consent, retaliating against individuals who exercise their constitutional right to refuse and/or complain about the actions of the County and HHSA, by acting with deliberate indifference in implementing a policy of inadequate training, and by acting with deliberate indifference in failing to correct the wrongful conduct of other employees. Complaint ¶ 60.

Moreover, of particular importance is the fact that the social worker defendants conducted more than one interview. Plaintiffs allege that the social worker defendants went to A.C.'s middle school, and interviewed A.C. without parental consent or court order. Complaint ¶ 25. The same day, the social worker defendants went to Am.E. and Aa.E.'s elementary school, and removed both children from their respective classes and interviewed them without parental consent or court order. Complaint ¶ 26. Though it is unclear whether Am.E. and Aa.E. were interviewed together or spearately, the social worker defendants conducted at least two interviews, if not three. *Compare Davis*, 869

---

[2] The Court notes that Plaintiffs' attorney submitted a declaration in support of Plaintiffs' opposition to the instant motion, which includes as Exhibit 1 a copy of the County of San Diego, Health and Human Services Agency's policy entitled "Interviewing a Child at School." *See* Doc. No. 16-1. However, in ruling on the instant motion to dismiss, the Court may not look beyond the Complaint for additional facts. *See Ritchie*, 342 F.3d at 908. Accordingly, the Court does not rely on this document in reaching its conclusion below.

F.2d at 1233 ("A plaintiff cannot prove the existence of a *municipal* policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee.") (emphasis in original)).  Therefore, the Court finds Plaintiffs have sufficiently alleged the existence of a policy.

The Court is mindful that ultimately considerably more evidence will likely be necessary to establish liability under *Monell*.  *See Trevino*, 99 F.3d at 918.  However, taking Plaintiffs' allegations as true, the Court finds that Plaintiffs' allegations are sufficient at the pleading stage to allege the existence of a policy or custom.

### c. Deliberate Indifference

Third, Defendants argue Plaintiffs' Complaint is "devoid of any factual allegations" necessary to support" a *Monell* claim under a theory of deliberate indifference.  Doc. No. 15-1 at 12.  A municipality may also be held liable under a theory of omission for failure to adequately train or supervise its employees.  *See Cloutheir*, 591 F.3d at 1249.  "To impose liability on a local government for failure to adequately train its employees, the government's omission must amount to 'deliberate indifference' to a constitutional right."  *Id.*  Plaintiffs face "much more difficult problems of proof" where plaintiffs allege inadequate training led municipal employees to violate their rights.  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 406 (1997).  "[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences."  *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 379 (1989)); *see also Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1186 (9th Cir. 2002).

Here, the Complaint alleges the County and HHSA have a policy, practice, and custom of seizing and detaining children at school and interviewing them without parental consent, court order, notice to parents, and without exigency.  *See* Complaint ¶ 60.  Plaintiffs allege such a policy is unconstitutional and directly caused Plaintiffs' injuries.  Complaint ¶ 60.  Moreover, Plaintiffs allege that the County and HHSA

established or followed policies including the policy of acting with "deliberate indifference in failing to correct (including counseling and/or discipline) the wrongful conduct of other employees in failing to provide the Constitutional protections guaranteed to individuals[.]"  Complaint ¶ 60(e).  The County and HHSA "breached their duties and obligations to Plaintiffs" by "failing to properly select, supervise, train, control, and review their agents and employees as to their compliance with Constitutional safeguards; and by permitting the individually named Defendants . . . to engage in the unlawful and unconstitutional conduct as herein alleged."  Complaint ¶ 62.  Plaintiffs contend that the County and HHSA "knew, or should have known, that by breaching the aforesaid duties and obligations, it was foreseeable that they would, and did, cause Plaintiffs to be injured and damaged by their wrongful policies and acts . . . ."  Complaint ¶ 63.

As noted above, Plaintiffs may prove municipal liability under either the more direct theory of liability (based on a policy), or the "deliberate indifference" route for violations based on omissions.  *See Gibson*, 290 F.3d at 1186.  In fact, depending on the facts of a given case, a reasonable jury could find liability under either theory.  *See id.*  Accordingly, taking Plaintiffs' allegations as true, the Court finds Plaintiffs' sufficiently allege a *Monell* claim under both theories of liability.

      d.  Whether the Policy was the "Moving Force" Behind the Violation

Fourth, Defendants claim that Plaintiffs fail to allege facts which demonstrate that the alleged policy was the "moving force" behind the constitutional violations.  Doc. No. 15-1 at 13.  In order to meet the causation requirement, a plaintiff must show both causation-in-fact and proximate causation.  *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013).  Here, however, Plaintiffs expressly allege that pursuant to the County and HHSA's policies, procedures, customs and/or practices, Defendants seized, interviewed and detained the children at school without exigent circumstances, court order, or parental consent, thereby directly injuring Plaintiffs.  *See* Complaint ¶ 60.  Plaintiffs further allege that the failure to adequately train, supervise, and discipline its

employees also caused Plaintiffs' injuries. *See* Complaint ¶¶ 61-63. Accordingly, the Court finds that Plaintiffs allege sufficient facts to satisfy the causation element of their *Monell* claim. *See Dees*, 2017 WL 4511003, at *10 (finding the defendant's "policy and longstanding practice of permitting social workers to interview children at school in the absence of a court order, warrant, parental consent, exigency, or reasonable suspicion was the factual and proximate cause of [the plaintiffs'] injuries.").

e. <u>Conclusion</u>

Based on the foregoing, the Court finds that the Plaintiffs fail to allege a violation of their First Amendment rights, as well as Minor Plaintiffs' procedural due process rights. As such, the Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiffs' *Monell* claim to the extent it is based upon violations of such rights **with leave to amend**.

Moreover, the Court finds that Plaintiffs have sufficiently alleged a violation of Minor Plaintiffs' Fourth Amendment rights, as well as Evans and Williams' Fourteenth Amendment substantive and procedural due process rights. Plaintiffs have also sufficiently alleged facts to support the existence of a policy, in addition to facts supporting a claim based on deliberate indifference. Lastly, Plaintiffs have sufficiently alleged that the policy was the moving force behind the social worker defendants' actions. Therefore, the Court **DENIES** Defendants' motion to dismiss Plaintiffs' *Monell* claim based on violations of Minor Plaintiffs' Fourth Amendment rights, and Evans and Williams' Fourteenth Amendment substantive and procedural due process rights.

**3. Claim for Injunctive Relief**

Finally, Defendants assert Plaintiffs' claim for injunctive relief fails because "Plaintiffs have not factually alleged that they are currently, or at imminent risk of, being subjected to further child abuse investigations involving such interviews." Doc. No. 15-1 at 14. Plaintiffs oppose, claiming "Defendants will continue to act in accordance with the County's unlawful policies and procedures . . . and that Defendants' continued actions will cause injury to Plaintiffs (Complaint, ¶ 69)." Doc. No. 16 at 17-18.

Local governments "can be sued directly under § 1983 for monetary, declaratory,

or injunctive relief, where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. To establish Article III standing, a plaintiff must show that he or she suffered an "injury in fact," that the injury is "fairly traceable" to the challenged conduct, and that it is "likely" and not just "speculative" that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The Supreme Court has cautioned that injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "In the particular context of injunctive and declaratory relief, a plaintiff must show that he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way." *Canatella v. State of California*, 304 F.3d 843, 852 (9th Cir. 2002) (internal quotation marks and citations omitted).

Here, the Court finds Plaintiffs fail to sufficiently allege standing to pursue injunctive relief because Plaintiffs do not allege that there is a sufficient likelihood that Defendants will conduct in-school interviews of the Minor Plaintiffs again in a similar way. Rather, Plaintiffs generally assert, "Defendants have not changed or modified such actions, conduct and/or policies to conform to law" and as a result, Defendants "will continue to act in accordance with said unlawful policies[.]" Complaint ¶¶ 68, 69. Additionally, Plaintiffs claim that "[g]iven Defendants' brazen violation of the rights of the Plaintiffs by seizing and interviewing the Plaintiff Minors after being put on notice that they wanted counsel present for any such interview, it is certain that a 'real threat of future violations' exists in this case." Doc. No. 16 at 18. Such speculative and conclusory allegations, however, are insufficient to demonstrate that there is a likelihood Plaintiffs will be wronged in a similar way in the future. *See Canatella*, 304 F.3d at 852. As the Supreme Court noted, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any

continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

Further, the Supreme Court in *City of Los Angeles v. Lyons* found that the plaintiff did not have standing to sue for injunctive relief against the City of Los Angeles based on an allegedly unprovoked and unjustified chokehold by a police officer because the plaintiff did not face "a real and immediate threat of again being illegally choked." 461 U.S. 95, 119 (1983). In reaching this conclusion, the Supreme Court noted that five months passed between the date of the alleged incident and the filing of the plaintiff's complaint, but there were no allegations of any other encounters with the police during that five-month period. *Id.* at 108. Here, Plaintiffs commenced this action in April 2017—more than one year after the allegedly unconstitutional interviews occurred. *See* Doc. No. 1. Similar to Lyons, Plaintiffs do not allege any additional encounters with the County, HHSA, or the social worker defendants. Thus, Plaintiffs allege insufficient facts to show that they are likely to suffer future injury from the alleged misconduct by the defendants. *See Lyons*, 461 U.S. at 110.

Accordingly, the Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiffs' claim for injunctive relief **with leave to amend**.

### CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss. Plaintiffs must file an amended complaint that cures the deficiencies addressed herein on or before **January 12, 2018**.

**IT IS SO ORDERED.**

Dated: December 21, 2017

HON. MICHAEL M. ANELLO
United States District Judge