UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Katy Williams, et al.,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>County of San Diego, et al.,<br><br>　　　　　　　　　　　Defendants. | Case No.: 17-cv-00815-MMA (JLB)<br><br>**ORDER DENYING MOTION TO COMPEL FURTHER RESPONSE TO INTERROGATORIES, SET ONE AND DEMAND FOR PRODUCTION OF DOCUMENTS, SET ONE**<br><br>**[ECF NO. 45]** |

Before the Court is Plaintiff Katy Evans [Williams][1] ("Williams") motion to compel further response from Defendant County of San Diego[2] ("Defendant" or "County") to her Interrogatories, Set One, and Request for Production of Documents, Set One. (ECF No. 45.) In response, Defendant moves for a protective order and requests that the Court order Williams' counsel to pay the expenses, including attorney's fees, which it incurred in

---

[1] The lead plaintiff is identified as Katy Williams in the complaint and the caption of this and other pleadings, but is referred to in the text of this pleading as Katy Evans.

[2] The County was erroneously sued as "San Diego Health and Human Services Agency." (*See* ECF No. 29 at 1, n. 1.)

1

opposing Williams' motion and seeking a protective order, and any additional sanctions the Court deems appropriate pursuant to Federal Rule of Civil Procedure 37(a)(5). (ECF No. 46.) For the reasons stated below, Williams' motion to compel is **DENIED**.

## I. BACKGROUND

### A. Factual Background

Plaintiffs Williams, Gary Evans, and Minor Plaintiffs A.C., Am.E., and Aa.E., by and through their Guardian ad Litem, John Garter (collectively, "Plaintiffs"), filed a First Amended Complaint ("FAC") for Damages on January 12, 2018. (ECF No. 24.) In their FAC, Plaintiffs bring (1) a *Monell* claim based upon violations of Plaintiffs' First, Fourth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983; and (2) injunctive relief. (*Id.*)

Williams is the natural mother of A.C., Am.E., and Aa.E ("Minor Plaintiffs"). (*Id.* at ¶ 8.) Williams has another minor child, D.C., who is not a plaintiff in this action. (*Id.*) Plaintiff Gary Evans ("Evans") is the natural father of Am.E. and Aa.E. (*Id.* at ¶ 9.) Williams and Evans share custody of Am.E. and Aa.E, and Williams has sole custody of A.C. (*Id.* at ¶¶ 10-11.) On April 24, 2017, the Court appointed Mr. John Garter as Guardian ad Litem for Minor Plaintiffs. (*See* ECF No. 4.)

The remainder of this factual background section is drawn from the allegations of Plaintiff's FAC. (ECF No. 24.)

In 2013, Defendant first became acquainted with Williams and her children after an incident involving D.C.'s father, Jason Clark ("Clark"). (ECF No. 24 at ¶ 12.) Clark became violent with Williams and threatened to kill her. (*Id.*) As a result, Williams obtained a restraining order against Clark. (*Id.*)

In June 2014, County of San Diego Health and Human Services Agency ("HHSA") filed a petition on D.C.'s behalf alleging D.C. sustained bruises to his head, "which would not ordinarily be sustained except as a result of the unreasonable acts of D.C.'s father[.]" (*Id.* at ¶ 13.) Juvenile dependency proceedings commenced shortly thereafter. (*See id.*) D.C. lived with Williams during this time, and Clark was no longer able to have

unsupervised visits with his son. (*See id.*) Clark, angry about the supervised visits with D.C., began making "false allegations against Williams and [Evans.]" (*Id.* at ¶¶ 14-15.)

In January 2016, Clark reported a bruise near D.C.'s eye to HHSA. (*See id.* at ¶ 18.) D.C. "hit his left eye on a corner of a kitchen island while playing with Minor Plaintiff Aa.E." (*Id.*) Social worker Daniel Bernal ("Bernal") inspected the bruise on January 8, 2016. (*See id.*) During Bernal's investigation, Bernal informed Williams that he wished to interview minor plaintiff Aa.E. alone, but Williams did not consent to such an interview. (*See id.* at ¶ 19.) On January 11, 2016, Evans and Williams' attorney sent a letter to the County, HHSA, and Bernal, indicating that "Minor Plaintiffs were represented by counsel and that no interviews of Minor Plaintiffs A.C., Am.E. or Aa.E. should take place without counsel present." (*Id.* at ¶ 20.)

On January 12, 2016, D.C. sustained additional injuries to his head when "he ran into a doorknob at his home[.]" (*Id.* at ¶ 21.) Williams took D.C. to the hospital, and the doctor discharged D.C. indicating that D.C. "sustained a 'normal childhood injury.'" (*Id.*) Clark, once again, reported the incident to the HHSA hotline. (*See id.*)

On January 19, 2016, Bernal went to A.C.'s middle school, instructed staff to remove her from her classroom, and "detained her against her will" without court order, parental consent, knowledge, or presence. (*Id.* at ¶ 22.) That same day, Bernal also visited Am.E. and Aa.E.'s elementary school, instructed staff to remove them from their classrooms, and "detained them against their will" without court order, parental consent, knowledge, or presence. (*Id.* at ¶ 23.) Once the children were removed from their classrooms, Bernal, social worker Janet Barragan ("Barragan"), and social worker Miriam Partida ("Partida") "interrogated" the children, despite the fact that Bernal, the County, and HHSA "were informed in writing" that Evans and Williams "did not want their minor children to be interviewed by social workers with the County and HHSA without a parent and/or attorney being present at that interview." (*Id.* at ¶ 24.) Notably, there were not, nor have there ever been, any allegations that Minor Plaintiffs were abused or neglected by their parents, or any other individuals. (*See id.*)

During the interviews, the social workers inquired about Minor Plaintiffs' safety at home, how their parents disciplined them, and whether D.C. "was an active child." (*Id.* at ¶ 25.) The social workers did not inform the Minor Plaintiffs that they could decline to be interviewed, nor were they given a choice about being interviewed "once they were detained and confronted by the County workers." (*Id.* at ¶ 26.) Further, the Minor Plaintiffs "were not informed that they could have a parent and/or an attorney present for the interviews." (*Id.*) At the time of the interviews, the social workers "did not have exigency, Court Order, parental consent, knowledge or presence, or even reasonable suspicion that the Minor Plaintiffs were the subject of abuse or neglect." (*Id.* at ¶ 27.)

Clark "continues to make false allegations" and on December 29, 2017, social worker Lisette Alvarez ("Alvarez") contacted Williams to inquire about conducting an in-person interview regarding disciplinary issues involving Williams' children. (*See id.* at ¶ 28.) On January 11, 2018, Alvarez "reiterated her intent" to interview Williams and her children. (*See id.* at ¶ 29.) Williams indicated that she agreed for a meeting with herself, D.C., and her counsel, but that she would not agree to interviews of her other children. (*See id.*) Alvarez, however, "refused to agree not to go to the schools" of the Minor Plaintiffs pursuant to Defendant's "policies that allowed her to conduct such interviews[.]" (*Id.* (emphasis in original).)

### B. Procedural Background Regarding Discovery Dispute

On July 16, 2018, the parties left a joint voicemail with the Court requesting the Court's assistance with a dispute. (*See* ECF No. 42.) The Court held a telephonic Discovery Conference on July 17, 2018, but the parties were unable to resolve their dispute. (*See* ECF Nos. 43, 44.) Accordingly, the Court ordered briefing on the issue. (*See* ECF No. 44.) In compliance with the order, Williams filed a motion to compel on September 25, 2018, Defendant filed an opposition on September 28, 2018, and Williams filed a reply on October 2, 2018. (*See* ECF Nos. 45, 46, 47.) The Court finds the motion appropriate to resolve on the papers submitted without oral argument pursuant to Local Civil Rule 7.1.d.1.

## II. LEGAL STANDARD

Nonprivileged information is discoverable under Rule 26 if it is (1) relevant, and (2) proportional to the needs of the case. Federal Rule of Civil Procedure 26(b)(1), as amended in 2015, provides that parties—

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Evidence must be "relevant to any party's claim or defense" to fall within the scope of permissible discovery. *Id*. The 2015 amendment to Rule 26(b) deleted the phrase "reasonably calculated to lead to the discovery of admissible evidence" because it was often misconstrued to define the scope of discovery and had the potential to "swallow any other limitation." Fed. R. Civ. P. 26(b)(1) advisory committee notes to 2015 amendment. *See also San Diego Unified Port Dist. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, No. 15CV1401-BEN-MDD, 2017 WL 3877732, at *1 (S.D. Cal. Sept. 5, 2017). The amendment replaced this phrase with the statement that information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1) advisory committee notes to 2015 amendment.

Information must also be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). When analyzing the proportionality of a party's discovery requests, a court should consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id*.

///

Rule 33 provides that a party may serve on any other party interrogatories that relate to any matter within the scope of discovery defined in Rule 26(b). Fed. R. Civ. P. 33(a)(2). Similarly, Rule 34 provides that a party may serve requests for documents or tangible things on any other party that relate to any matter within the scope of discovery defined in Rule 26(b). Fed. R. Civ. P. 34(a). If a party fails to answer an interrogatory submitted under Rule 33, or if the answer provided is evasive or incomplete, the propounding party may bring a motion to compel. *See* Fed. R. Civ. P. 37(a). The propounding party may also move to compel a response if a party fails to produce documents requested under Rule 34. *See id*. "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Bryant v. Ochoa*, No. 07cv200 JM (PCL), 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009). Those opposing discovery are "required to carry a heavy burden of showing" why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

## III. ANALYSIS

### A. Williams' Motion to Compel

Williams contends that at the Early Neutral Evaluation Conference in this matter, held on June 19, 2018, County Counsel Kate Jones "made certain representations to the individuals present, including th[e] Court, that indicated that she had reviewed documents within the Juvenile Case Files pertaining to the Minor Plaintiffs and their family members." (*See* ECF No. 45-2 at ¶ 2.) Williams' counsel "asked Ms. Jones if she had seen [a certain document] and she acknowledged that she had."[3] (*See id.* at ¶ 3.) At the time Ms. Jones made this representation, Williams contends that the County had "not filed a Request for

---

[3] Defendant contends that "[a]t no time did Ms. Jones or Ms. Cortez admit to reviewing or make representations that they had reviewed any portions of Plaintiffs' juvenile case files." (*See* ECF No. 46 at 3.)

6

17-cv-00815-MMA (JLB)

Disclosure of Juvenile Case File pursuant to California Welf. & Inst. Code §827 and California Rule of Court 5.552." (*See id.* at ¶ 4.)

Williams further contends that although Plaintiffs submitted their original Request for Disclosure of Juvenile Case File in early June 2017, to date the Juvenile Court has only disclosed eight pages of highly redacted materials to Plaintiffs and that the document Ms. Jones claimed to have reviewed was not one of the documents disclosed.[4] (*See id.* at ¶ 5.) As such, Plaintiffs' counsel was "very surprised to hear that Ms. Jones had reviewed documents from the highly confidential and privileged Juvenile Case Files regarding Plaintiffs and their family members." (*See id.*)

On June 29, 2018, Williams' counsel claims that he requested in an email to Ms. Jones that Defendant produce any additional documents in its possession, and address the purpose of the redactions. (*See id.* at ¶ 7.) Ms. Jones allegedly responded that she could only provide the records that the Juvenile Court ordered released pursuant to Plaintiff's petitions, and that she would not disclose the documents she reviewed in preparation of her case, as such documents are protected by the work product and attorney client privileges. (*See id.* at ¶ 8; *see also* ECF No. 46-1 at 8.) After the email exchange, the parties continued to meet and confer, but to no avail. (*See id.* at ¶ 9.)

At the Discovery Conference held on July 17, 2018 before this Court, the parties addressed the matter but no resolution was reached. (*See id.* at 10; *see also* ECF Nos. 43, 44.) Williams contends that "it was decided that it would be best if interrogatories were formally served to [Defendant] to determine what documents Defendant[] either gave and/or allowed [its] counsel to review from the Juvenile Court file." (*Id.*)

---

[4] Williams notes that after a second request was made by Plaintiffs on or about July 26, 2018, and a hearing was held on September 21, 2018, it was determined that the Juvenile Court will release the case file by late October or early November. (*See id.* at ¶ 6.)

Therefore, on July 19, 2018, Williams served Interrogatories (Set One) and Requests for Production (Set One) on Defendant, "seeking information relating to the documents from the Juvenile Court file reviewed by County Counsel prior to the Early Neutral Evaluation Conference." (*See* ECF No. 45-2 at ¶ 11, Exhs. 1 & 2.)

The interrogatories ask the following:

1. Have YOU reviewed any documents in conjunction with the litigation filed in this case, other than those documents produced to YOU by Plaintiffs on May 18, 2018, since the litigation was filed in this matter on April 24, 2017?

2. If YOUR answer to Interrogatory No. 1 is "yes," please identify each and every document that you have reviewed, other than documents produced to YOU by Plaintiffs on April 24, 2017.

(*See* ECF No. 45-3 at 5.)

The terms YOU and YOUR are defined as: "Defendant COUNTY OF SAN DIEGO, including its Health and Human Services Agency, and any other entity, program and agency of the COUNTY, and includes, but is not limited to, YOUR past and present attorneys, agents, employees, representatives, agencies, organizations, entities or any of them, and any PERSON and ENTITY acting through or on YOUR behalf." (*See id*. at 3.)

Williams' request for production similarly requests: "Please produce each and every DOCUMENT that YOU have identified in YOUR Responses to Plaintiff Katy Williams' Interrogatories Propounded to Defendant County of San Diego, Set One." (*See* ECF No. 45-1 at 7; ECF No. 45-4 at 7.)[5]

Defendant objected to the Interrogatories and Request for Production on the grounds that they were overbroad and unduly burdensome, with no limitation in scope, and seek

---

[5] In her reply, Williams states that she is only seeking documents from the "confidential juvenile case file (as defined by California Rule of Court 5.552), and not 'any and all documents' that defense counsel has received in this case." (ECF No. 47 at 3.)

information protected from disclosure by the work product doctrine and the attorney-client privilege. (*See* ECF Nos. 45-1 at 2-3, 45-3, 45-4.) Defendant did not otherwise respond or produce documents. (*See id.*) Williams now moves to compel further response to the Interrogatories and Request for Production.

In her motion, Williams claims that the documents in the Juvenile Case File are relevant because "[t]he majority of the documentary evidence supporting Plaintiffs' claims is contained in the [file] maintained by [Defendant]." (ECF No. 45-1 at 3.) This may well be, but Williams did not request the production of Juvenile Case File documents in the possession of Defendant. Rather, she requested identification of, and production of, documents reviewed by Defendant *and/or counsel* "in conjunction with" this litigation. The issue in dispute is not as simple as whether or not the Juvenile Case File documents have relevance.

In her initial motion, Williams primarily raises concerns that County Counsel "is obtaining and reviewing documents to which they are not allowed access under the law." (*See* ECF No. 45-1 at 3-5.) However, in her reply, Williams clarifies her position. She states that her "sole purpose in bringing this motion (and in propounding the disputed discovery) is to ensure that [Plaintiffs] have access to the same information the County (and its counsel) has with regard to Plaintiff's Juvenile Case Files." (ECF No. 47 at 4-5.)

Given the foregoing and based on its review of the papers, the Court finds that the manner in which Williams is attempting to obtain the requested documents is improper. Williams did not simply request the documents from the Juvenile Case File in Defendant's "possession, custody, or control." *See* Fed. R. Civ. P. 34(a)(1). Instead, she asked Defendant's counsel to identify the documents he or she *reviewed* in conjunction with this litigation. As such, the Interrogatories and Request for Production seek information covered by the work product doctrine.

Opinion work product, *i.e.*, attorney mental impressions, conclusions, opinions, or legal theories, "represents the core types of work product" protected by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947). *See Republic of Ecuador v. Mackay*, 742 F.3d

9

860, 869 n.3 (9th Cir. 2014); *see also United States v. Nobles*, 422 U.S. 225, 238 (1975) ("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.").

Accordingly, courts have held that "[w]here the selection, organization, and characterization of facts reveals the theories, opinions, or mental impressions of a party or the party's representative, that material qualifies as opinion work product." *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 507 (S.D. Cal. 2003) (citing *United States ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554 (C.D. Cal. 2003)); *see also Shapiro v. U.S. Dep't of Justice*, 969 F. Supp. 2d 18, 31 (D. D.C. 2013) ("[U]nder some circumstances, 'an attorney's compilation of various documents, each of which is itself a proper subject of discovery, constitutes an attorney's opinion work product subject to protection.'"); *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) ("the selection and compilation of documents by counsel . . . in preparation for pretrial discovery falls within the highly-protected category of opinion work product"). An attorney compilation is only protected, however, where "the attorney's selection of the contents could reveal or provide insights into the 'mental processes of the attorney' in the analysis and preparation of the client's case." *Shapiro*, 969 F. Supp. 2d at 32 (citing *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001); *United States v. Nobles*, 422 U.S. 225, 238 (1975)).

Here, Defendant asserts that responding to the Interrogatories and Request for Production "would force defense counsel to divulge its strategies, impressions, and theories of the case" and "would reveal which documents counsel considered to be relevant, helpful, or important in defending its case." (*See* ECF No. 46 at 7.) The Court has no reason to question these assertions. Accordingly, the Court finds that the Interrogatories and Request for Production are protected by the work product doctrine and shielded from disclosure.[6]

---

[6] Defendant also contends that "[i]t would be impossible for defense counsel to respond to Plaintiffs' requests without divulging confidential communications between client and counsel." (ECF No. 46.) However, Defendant has not produced a privilege log

**B. Defendant's Request for a Protective Order and Sanctions**

In its opposition, Defendant requests that the Court issue a protective order to prevent Plaintiffs and Plaintiffs' counsel from continuing to harass Defendant over the issues discussed in this order. (*See* ECF No. 46 at 10.) However, the Court's unambiguous order should put an end to Plaintiffs' counsel's demands "to know how counsel knows certain information and whether it has reviewed certain documents." (*See id*.) As such, the Court declines to issue a protective order under Federal Rules of Civil Procedure 37 and 26. *See* Fed. R. Civ. P. 37(a)(5)(B) and 26(c).

Defendant further requests that the Court issue an order requiring Williams' counsel to pay expenses, including attorneys' fees, which it incurred in seeking a protective order and opposing this motion and other sanctions, citing Federal Rule of Civil Procedure 37(a)(5). (*See* ECF No. 46 at 3, 11.) Rule 37(a)(5) provides that the Court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," unless the Court finds the "motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B).

Here, Defendant is the prevailing party on the discovery motion. Moreover, the Court is deeply concerned about Williams' violation of her obligation to respect the confidentiality of statements made at the Early Neutral Evaluation Conference. Williams repeatedly cited representations allegedly made by Defendant's counsel at the Early Neutral Evaluation Conference in her motion to compel. (*See* ECF Nos. 45-1 at 5, 45-2 at

---

or otherwise met its burden of proving the applicability of the attorney-client privilege. *See* Fed. R. Civ. P. 26(b)(5); *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992) ("The party asserting the attorney-client privilege has the burden of proving that the privilege applies to a given set of documents or communications.").

2, 47 at 2.)[7]  As Defendant rightly noted, statements made during an Early Neutral Evaluation Conference are "off the record, privileged, and confidential." (*See* ECF No. 46 at 8.)  Not only do the Local Civil Rules for the Southern District of California state as such, *see* CivLR 16.1(c)(1)(b), but the Court's Order setting the Early Neutral Evaluation Conference clearly states: "All ENE Conference discussions will be informal, off the record, privileged and confidential." (*See* ECF No. 31 at 1.)  As previously recognized in this district, "disclosure of information exchanged in the confidentiality of a Settlement Conference undermines the trust jurists of this Court have earned in the legal community and diminishes the integrity and effectiveness of the Settlement Conference process." *Century Sur. Co. v. 350 W.A., LLC*, No. CIV. 05CV1548-LLSP, 2008 WL 1787491, at *3 (S.D. Cal. Apr. 16, 2008).  As such, any unauthorized disclosure has served as a basis for sanctions against the violating attorney.  *See id.*; *see also* CivLR 83.1(a) ("Failure of counsel . . . to comply with these rules, with the Federal Rules of Civil . . . Procedure, or with any order of the court may be grounds for imposition by the court of any and all sanctions authorized by statute or rule or within the inherent power of the court . . . .").

Given Williams' counsel's violation of both the Local Civil Rules and this Court's Order, the Court tentatively finds, subject to an opportunity to be heard, that it is appropriate to order Plaintiff to pay Defendant the reasonable expenses, including attorney's fees, which it incurred in opposing Williams' motion to compel.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[7]  Defendant denies Plaintiff's representations about what was said at the Early Neutral Evaluation Conference and, in its defense, proffers its own recollection of those communications.  (*See* ECF Nos. 46 at 3, 46-1 at ¶¶ 3-4.)

12

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Williams' motion to compel further response from Defendant to her Interrogatories, Set One, and Request for Production of Documents, Set One.

Furthermore, as set forth above, the Court tentatively determines that ordering Plaintiff to pay Defendant the reasonable expenses, including attorney's fees, which it incurred in opposing Williams' motion to compel is appropriate. The parties are therefore **ORDERED** to meet and confer on the subject of reasonable expenses, including attorney's fees, incurred by Defendant in opposing Williams' motion to compel by **October 24, 2018**, after which the parties are to place a joint call to chambers advising the Court if either party wishes to be heard.

If neither party wishes to be heard, Plaintiff is **ORDERED** to pay Defendant the amount of reasonable expenses, including attorney's fees, incurred by Defendant in opposing Williams' motion to compel or before **November 16, 2018**.

If either party wishes to be heard, then, on or before **October 31, 2018**, Defendant is **ORDERED** to file a declaration attaching sufficient evidence to show the hourly rates of its attorneys and whether those hourly rates are reasonable rates in the Southern District of California for work of similar complexity by attorneys with comparable skill and reputation. As part of any such declaration, Defendant must include any appropriate documentation substantiating the actual fees and costs expended in opposing this motion to compel and as well as the fees and costs expended in preparing the to-be-filed declaration and any exhibits thereto. Plaintiff is **ORDERED** to file any opposition to the imposition of a monetary award on or before **November 30, 2018**.

In addition, the Clerk of Court is directed to **SEAL** Williams' motion to compel (ECF No. 45), Defendant's opposition (ECF No. 46), and Williams' reply (ECF No. 47).

Thereafter, the Court **ORDERS** as follows:

1. Williams shall file a redacted version of her motion to compel on the docket, redacting any confidential information, no later than **October 17, 2018**;

13

17-cv-00815-MMA (JLB)

2. Defendant shall file a redacted version of its opposition, redacting any confidential information, no later than **October 18, 2018**; and

3. Williams shall file a redacted version of her reply, redacting any confidential information, no later than **October 19, 2018**.

**IT IS SO ORDERED.**

Dated: October 15, 2018

*[signature]*
Hon. Jill L. Burkhardt
United States Magistrate Judge