**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KATY WILLIAMS; GARY EVANS; and Minor Plaintiffs A.C., Am.E. and Aa.E., by and through their Guardian Ad Litem, JOHN GARTER,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO; and COUNTY OF SAN DIEGO HEALTH AND HUMAN SERVICES AGENCY,<br><br>Defendants. | Case No.: 17cv815-MMA (JLB)<br><br>**ORDER OVERRULING IN SUBSTANTIAL PART PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S JANUARY 31, 2019 ORDER**<br><br>[Doc. No. 89] |

Plaintiffs Katy Williams, Gary Evans, and minor plaintiffs A.C., Am.E., and Aa.E., by and through their Guardian ad Litem, John Garter (collectively, "Plaintiffs"), filed this action against Defendant County of San Diego[1] ("Defendant" or "County") alleging claims for: (1) *Monell* liability based upon violations of Plaintiffs' Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983; and (2) injunctive relief. *See* FAC. On January 31, 2019, Magistrate Judge Jill L. Burkhardt issued an order granting Defendant's motion to compel further response to its interrogatories to Plaintiffs

---

[1] The County was also erroneously sued as "San Diego Health and Human Services Agency."

concerning mental health providers. *See* Doc. No. 87.

On February 8, 2019, Plaintiffs filed objections to the magistrate judge's order pursuant to Federal Rule of Civil Procedure 72(a). *See* Doc. No. 58. Defendant filed an opposition to Plaintiffs' objections, to which Plaintiffs replied. *See* Doc. Nos. 91, 92. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. *See* Doc. No. 93. For the reasons set forth below, the Court **OVERRULES** in substantial part Plaintiffs' objections to the magistrate judge's January 31, 2019 order.

## FACTUAL BACKGROUND

Katy Williams ("Williams") is the natural mother of A.C., Am.E., and Aa.E (collectively, "Minor Plaintiffs"). FAC ¶ 8. Williams has another minor child, D.C., who is not a plaintiff in this action. *Id.* Plaintiff Gary Evans ("Evans") is the natural father of Am.E. and Aa.E. *Id.* ¶ 9. Williams and Evans share custody of Am.E. and Aa.E, and Williams has sole custody of A.C. *Id.* ¶¶ 10-11. On April 24, 2017, the Court appointed Mr. John Garter as Guardian ad Litem for Minor Plaintiffs. *See* Doc. No. 4.

In 2013, Defendant first became acquainted with Williams and her children after an incident involving D.C.'s father, Jason Clark ("Clark"). *Id.* ¶ 12. Clark became violent with Williams and threatened to kill her. *Id.* As a result, Williams obtained a restraining order against Clark. *Id.*

In June 2014, County of San Diego Health and Human Services Agency ("HHSA") filed a petition on D.C.'s behalf alleging D.C. sustained bruises to his head, "which would not ordinarily be sustained except as a result of the unreasonable acts of D.C.'s father[.]" *Id.* ¶ 13. Juvenile dependency proceedings commenced shortly thereafter. *See id.* D.C. lived with Williams during this time, and Clark was no longer able to have unsupervised visits with his son. *See id.* Clark, angry about the supervised visits with D.C., began making "false allegations against Williams and [Evans.]" *Id.* ¶¶ 14-15.

In January 2016, Clark reported a bruise near D.C.'s eye to HHSA. *See id.* ¶ 18.

D.C. "hit his left eye on a corner of a kitchen island while playing with Minor Plaintiff Aa.E." *Id.* ¶ 18. Social worker Daniel Bernal ("Bernal") inspected the bruise on January 8, 2016. *See id.* ¶ 18. During Bernal's investigation, Bernal informed Williams that he wished to interview minor plaintiff Aa.E. alone, but Williams did not consent to such an interview. *See id.* ¶ 19. On January 11, 2016, Evans and Williams' attorney sent a letter to the County, HHSA, and Bernal, indicating that "Minor Plaintiffs were represented by counsel and that no interviews of Minor Plaintiffs A.C., Am.E. or Aa.E. should take place without counsel present." *Id.* ¶ 20.

On January 12, 2016, D.C. sustained additional injuries to his head when "he ran into a doorknob at his home[.]" *Id.* ¶ 21. Williams took D.C. to the hospital, and the doctor discharged D.C. indicating that D.C. "sustained a 'normal childhood injury.'" *Id.* Clark, once again, reported the incident to the HHSA hotline. *See id.*

On January 19, 2016, Bernal went to A.C.'s middle school, instructed staff to remove her from her classroom, and "detained her against her will" without court order, parental consent, knowledge, or presence. *Id.* ¶ 22. That same day, Bernal also visited Am.E. and Aa.E.'s elementary school, instructed staff to remove them from their classrooms, and "detained them against their will" without court order, parental consent, knowledge, or presence. *Id.* ¶ 23. Once the children were removed from their classrooms, Bernal, social worker Janet Barragan ("Barragan"), and social worker Miriam Partida ("Partida") "interrogated" the children, despite the fact that Bernal, the County, and HHSA "were informed in writing" that Evans and Williams "did not want their minor children to be interviewed by social workers with the County and HHSA without a parent and/or attorney being present at that interview." *Id.* ¶ 24. Notably, there were not, nor have there ever been, any allegations that Minor Plaintiffs were abused or neglected by their parents, or any other individuals. *See id.*

During the interviews, the social workers inquired about Minor Plaintiffs' safety at home, how their parents disciplined them, and whether D.C. "was an active child." *Id.* ¶ 25. The social workers did not inform the Minor Plaintiffs that they could decline to be

interviewed, nor were they given a choice about being interviewed "once they were detained and confronted by the County workers." *Id.* ¶ 26. Further, the Minor Plaintiffs "were not informed that they could have a parent and/or an attorney present for the interviews." *Id.* At the time of the interviews, the social workers "did not have exigency, Court Order, parental consent, knowledge or presence, or even reasonable suspicion that the Minor Plaintiffs were the subject of abuse or neglect." *Id.* ¶ 27.

Clark "continues to make false allegations" and on December 29, 2017, social worker Lisette Alvarez ("Alvarez") contacted Williams to inquire about conducting an in-person interview regarding disciplinary issues involving Williams' children. *See id.* ¶ 28. On January 11, 2018, Alvarez "reiterated her intent" to interview Williams and her children. *See id.* ¶ 29. Williams indicated that she agreed for a meeting with herself, D.C., and her counsel, but that she would not agree to interviews of her other children. *See id.* Alvarez, however, "*refused to agree not to go to the schools*" of the Minor Plaintiffs pursuant to Defendant's "policies that allowed her to conduct such interviews[.]" *Id.* (emphasis in original). Based on these allegations, Plaintiffs commenced the instant action.

## PROCEDURAL BACKGROUND

In August 2018, Defendant propounded special interrogatories to each Plaintiff. *See* Doc. No. 89-1 (hereinafter "Cox Decl.") ¶ 2. As part of its request, Defendant asked each Plaintiff to identify the names and contact information for their medical and/or mental health providers over the past ten (10) years. *See id.* On September 5, 2018, Plaintiffs responded to Defendant's special interrogatories and objected to this interrogatory claiming it seeks information protected by the right to privacy, is irrelevant to Plaintiffs' claims, and is disproportional to the needs of this case. *See id.* at ¶ 3. Counsel for the parties met and conferred regarding Plaintiffs' responses, and defense counsel agreed to limit the scope of the disputed interrogatory to the names and contact information of Plaintiffs' mental health providers over the past five (5) years, since Plaintiffs do not allege they suffered any physical injuries. *See id.* ¶ 4.

Plaintiffs served supplemental responses to the interrogatory in question on October 10, 2018. *See id.* ¶ 6. Specifically, Plaintiffs indicated that they "object to this interrogatory on the grounds that it seeks an expert opinion from a lay witness, and is overbroad as to time and scope. Plaintiff[s] also object[] on the grounds that this request seeks to invade [their] right to privacy." *Id.* Plaintiffs clarified that they are "not claiming pain and suffering damages for emotional distress other than that which would be the natural consequence of Defendant's actions (i.e., 'garden variety emotional distress.')." *Id.* The parties continued to meet and confer on the subject but were unable to resolve the dispute. *See id.* at ¶ 7.

On November 21, 2018, the parties requested the magistrate judge's assistance with this dispute. *See* Doc. No. 63. Judge Burkhardt held a telephonic Discovery Conference on November 29, 2018, but the parties were still unable to resolve their dispute. *See* Doc. No. 67. Judge Burkhardt then ordered briefing and set a briefing schedule. *See id.* The parties filed their respective briefs on December 7, 2018. *See* Doc. Nos. 71, 72, 78. On January 31, 2019, Judge Burkhardt issued an order granting Defendant's motion to compel further response to its interrogatories. *See* Doc. No. 87. Plaintiffs filed the instant objections to Judge Burkhardt's order on February 8, 2019. *See* Doc. No. 89.

## **LEGAL STANDARD**

A party may object to a non-dispositive pretrial order of a magistrate judge within fourteen days after service of the order. *See* Fed. R. Civ. P. 72(a). The magistrate judge's order will be upheld unless "it has been shown that the magistrate [judge]'s order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). "The 'clearly erroneous' standard applies to factual findings and discretionary decisions made in connection with non-dispositive pretrial discovery matters." *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 15-cv-595-BAS (MDD), 2017 WL 3335736, at *1 (S.D. Cal. Aug. 4, 2017) (quoting *F.D.I.C. v. Fid. & Deposit Co. of Md.*, 196 F.R.D. 375, 378 (S.D. Cal. 2000)). "Under Rule 72(a), [a] finding is clearly erroneous when,

although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Waterfall Homeowners Ass'n v. Viega, Inc.*, 283 F.R.D. 571, 575 (D. Nev. 2012) (internal quotation marks and citation omitted). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* (citation omitted).

"When reviewing discovery disputes, however, the Magistrate is afforded broad discretion, which will be overruled only if abused." *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007) (internal citations and quotation omitted).

## DISCUSSION

Plaintiffs object to the magistrate judge's order on three grounds. *See* Doc. No. 89 at 5. Specifically, Plaintiffs assert that: (1) Judge Burkhardt erred in holding Plaintiffs' right to privacy is adequately addressed by the protective order; (2) Judge Burkhardt's order extends beyond the discovery dispute; and (3) Judge Burkhardt incorrectly determined the "broad" waiver approach applies. *See id.* at 5-8. The Court addresses Plaintiffs' objections in turn.

**1.     Right to Privacy**

First, Plaintiffs argue that their right to privacy clearly outweighs Defendant's need for the requested information. Specifically, Plaintiffs contend the magistrate judge erred in holding that "any privacy concerns can be addressed by the protective order entered in this case." Doc. No. 87 at 9-10. While Plaintiffs attempt to assert a narrow objection based on the Protective Order, Plaintiffs' briefs make clear that they seek to overturn Judge Burkhardt's order granting Defendant's motion to compel. *See* Doc. No. 92 at 3 ("The only way to protect Plaintiffs' right to privacy is to overturn the Magistrate's Order."). Thus, the Court construes the objection as challenging Judge Burkhardt's determination that Defendant's need for the information outweighs Plaintiffs' privacy concerns.

As noted by Judge Burkhardt, Plaintiffs' right to privacy is not an absolute bar to discovery, but subject to the balancing of needs. *See* Doc. No. 87 at 9. In *Whalen v. Roe*,

the Supreme Court recognized that individuals have a privacy interest in "avoiding disclosure of personal matters, and . . . in making certain kinds of important decisions." 429 U.S. 589, 599-600 (1977). The Supreme Court, however, did not define the parameters of this privacy interest.

The Ninth Circuit has indicated that following *Whalen*, "[s]ome of our sister circuits recognize a constitutional right to privacy in medical records, though the Supreme Court has never so held." *Seaton v. Mayberg*, 610 F.3d 530, 537 (9th Cir. 2010). The Ninth Circuit acknowledged that in previous cases, it held "there was a 'constitutionally protected interest in avoiding disclosure of personal matters including medical information' and offered a list of five factors to be considered among others to decide 'whether the governmental interest in obtaining information outweighs the individual's privacy interest.'" *Id.* at 537-38 (quoting *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004)).

The Ninth Circuit explained that "[w]hatever constitutional right to privacy of medical information may exist," that right is not absolute, but subject to the five-factor balancing test. *Id.* at 539. Courts must balance the following factors to determine whether the interest in obtaining the information outweighs the individual's privacy interest: "(1) the type of information requested, (2) the potential for harm in any subsequent non-consensual disclosure, (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree of need for access, and (5) whether there is an express statutory mandate, articulated public policy,'" or other public interest favoring access. *Id.* (quoting *Tucson Woman's Clinic*, 379 F.3d at 551).

Here, the Court finds that Plaintiffs have not shown Judge Burkhardt's determination that Plaintiffs must disclose the names and contact information of mental health providers is clearly erroneous. With respect to the first factor, Defendant seeks only the names and contact information of Plaintiffs' mental health providers—not the contents of Plaintiffs' medical records. Regarding the second factor, the potential for harm in disclosing the names and contact information of Plaintiffs' mental health

providers is minimal, if any.  Third, it does not appear that there are safeguards in place to prevent the unauthorized disclosure of this information, as the Protective Order entered in this case applies to "any documents ordered release by the San Diego County Juvenile Court in response to the parties' petitions under California Welfare and Institutions Code sections 827 and 828" and requires that any documents or pleadings containing the names of Minor Plaintiffs must be redacted before filing.  Doc. No. 41 at 1-2.[2]  With respect to the fourth factor, Defendant's need for access is great.  Plaintiffs each contend they have suffered "[p]ast, present, and future fear, anxiety, emotional distress, anger, frustration and related pain and suffering from the day of the subject incident to the present."  Doc. No. 78-1 at 29.[3]  As Defendant notes, these are Plaintiffs' only injuries resulting from the incident.  Regarding the fifth factor, it does not appear that there is any express statute, public policy, or other public interest favoring access.

In considering the relevant factors, the Court finds that the factors weigh in favor of disclosure.  The Court agrees with Judge Burkhardt that the interrogatories seek relevant information.  The prejudice to Plaintiffs is minimal, and Defendant's need for the information outweighs Plaintiffs' privacy concerns.  Thus, Plaintiffs have not shown that Judge Burkhardt's conclusion is clearly erroneous.  *See Hukman v. Southwest Airlines Co.*, No. 18cv1204-GPC (RBB), 2019 WL 566451, at *4 (S.D. Cal. Feb. 12, 2019) ("Defendant's interest in obtaining [the plaintiff's mental health records] outweighs [the plaintiff's] privacy concerns.  Thus, the records must be produced.").  Accordingly, the Court **OVERRULES** Plaintiffs' objection to the extent Plaintiffs seek

---

[2] As such, the Court **SUSTAINS** Plaintiffs' objection to the extent it is based on the magistrate judge's determination that Plaintiffs' privacy concerns can be addressed by the Protective Order.  Defendant appears to concede that the Protective Order is inapplicable to the instant dispute, arguing that "[t]his Court can simply issue a second protective order, including a direction that any of the disclosed material filed with the Court must be done under seal, to protect Plaintiffs' privacy rights."  Doc. No. 91 at 6.  To the extent the parties wish to obtain a second protective order, they can make a formal request before the assigned magistrate judge.

[3] Citations to this document refer to the pagination assigned by the CM/ECF system.

to overturn Judge Burkhardt's determination that Plaintiffs must disclose the names and contact information of their mental health providers for the five years preceding the incident.

**2. Scope of Magistrate Judge's Order**

Second, Plaintiffs take issue with the scope of Judge Burkhardt's order, and object to her finding that "Plaintiffs have waived their psychotherapist-patient privilege, to the extent relevant, by putting their emotional health at issue in this case." Doc. No. 87 at 8-9. Plaintiffs explain that "[b]ecause the issue before the Magistrate was whether the identities of Plaintiffs' mental health providers were protected by their right to privacy, Plaintiffs did not brief the application of the psychotherapist-patient privilege" and contend that this "holding is severely prejudicial to Plaintiffs[.]" Doc. No. 89 at 7.

Contrary to Plaintiffs' assertions, Plaintiffs raised the psychotherapist-patient privilege in their initial brief regarding this dispute, and expressly requested Judge Burkhardt rule on the applicability of the privilege. Specifically, to avoid further discovery disputes,

> *Plaintiffs respectfully request that*, if the Court decides it is appropriate for Plaintiffs to respond to the disputed interrogatory, *it also order that any and all records regarding Plaintiffs' past mental health treatment* are not subject to discovery (as not relevant, and *protected by the psychotherapist-patient privilege* and Plaintiffs' right to privacy).

Doc. No. 72 at 1 n.1 (emphasis added).

Additionally, Judge Burkhardt made clear that "this Order does not cover Defendant's related requests for production, which are not presently before this Court," but rather applies only to Defendant's request that Plaintiffs provide the names and contact information of Plaintiffs' mental health providers for the five years preceding the incident. Doc. No. 87 at 9. Thus, taking into consideration the parties' briefs on the subject discovery dispute, and upon review of the Judge Burkhardt's order, the Court finds that Plaintiffs fail to demonstrate that the order "goes well beyond the subject

discovery dispute." Doc. No. 89 at 7. Accordingly, the Court **OVERRULES** Plaintiffs' objection to the scope of the magistrate judge's order.

**3.    Waiver and the Psychotherapist-Patient Privilege**

Third, Plaintiffs object to the magistrate judge's determination that the broad waiver approach applies to the psychotherapist-patient privilege. *See* Doc. No. 89 at 8. Plaintiffs claim that one of the cases cited by the magistrate judge, *Doe v. City of Chula Vista*, 196 F.R.D. 562 (S.D. Cal. 1999), "was based on speculation as to how the Supreme Court would rule on the issue of waiver, pulling language from the ***dissenting*** opinion by Justice Scalia[.]" Doc. No. 92 at 6 (emphasis in original).

In her order, Judge Burkhardt defined the psychotherapist-patient privilege announced in *Jaffe v. Redmond*, 518 U.S. 1 (1996). While the Supreme Court recognized the psychotherapist-patient privilege, the Court simply stated that "[l]ike other testimonial privileges, the patient may of course waive the protection." *Id.* at 15 n.14. The Supreme Court did not elaborate on the issue of waiver, however. Judge Burkhardt explained that following the Supreme Court's decision in *Jaffe*, "courts have taken two primary approaches to waiver, with some courts opting for a broad approach and others opting for a narrow approach." Doc. No. 87 at 7. Judge Burkhardt noted that courts in this district have adopted the broad approach and cited to several examples, including *Doe*. *See id.*

In *Doe*, the district court explained that "courts are divided on the circumstances in which a patient waives her privilege by bringing a lawsuit." 196 F.R.D. at 565. The court further noted that "[t]he Ninth Circuit has not yet addressed the federal common law's rule of waiver." *Id.* In reaching its conclusion that the broad waiver approach should apply in that case, the court considered a proposed Rule of Evidence submitted by the Supreme Court to Congress on the psychotherapist-patient privilege. *See id.* Although Congress ultimately declined to adopt the rule, "the language of the proposed rule illuminates the Supreme Court's vision of the parameters of the privilege and the instances in which the privilege would be waived." *Id.* The Supreme Court proposed an

exception to the privilege for communications relevant to the patient's mental or emotional condition in a proceeding where the patient relies upon that condition as an element of his claim or defense. *See id.* After reviewing relevant case law and the Supreme Court's proposed rule, the district court adopted the broad waiver approach but noted that the defendants were not entitled "to invade the whole of Doe's medical history." *Id.* at 570.

Here, the Court finds that Plaintiffs fail to demonstrate that Judge Burkhardt's adoption of the broad waiver approach is contrary to law. Judge Burkhardt correctly noted the differing approaches to waiver and relied on analogous case law in determining that Plaintiffs have waived their privilege in this case by seeking emotional distress damages. Although Plaintiffs cite to cases applying the narrow waiver approach, Plaintiffs do not cite to any binding authority rejecting the broad waiver approach.[4] Nor is the Court persuaded by Plaintiffs' argument that Judge Burkhardt's reliance on *Doe* is misplaced. Thus, the Court cannot say that Judge Burkhardt misapplied the relevant standard. *See e.g.*, *Nehad v. Browder*, No. 15-cv-1386 WQH (NLS), 2016 WL 1428069, at *4 (S.D. Cal. Apr. 11, 2016) ("The Court reviewed the authorities cited by the parties, as well as additional authorities uncovered through its own research. After careful consideration, this Court adopts the broad approach and concludes Plaintiffs waived the psychotherapist privilege."). Accordingly, the Court **OVERRULES** Plaintiffs' objection based on the broad waiver approach.

### 4. Sanctions

Lastly, Defendant contends the Court "should order Plaintiffs to pay Defendant the reasonable expenses, including attorney's fees, which it incurred in making its motion to compel and opposing these objections pursuant to Federal Rule of Civil Procedure 37." Doc. No. 91 at 8. Plaintiffs maintain that sanctions are not warranted. *See* Doc. No. 92 at

---

[4] Notably, several cases Plaintiffs rely upon involve a request for medical examination pursuant to Federal Rule of Civil Procedure 35, which is not at issue in this case. *See* Doc. No. 89 at 10.

7.

Pursuant to Federal Rule of Civil Procedure 37(a)(5), if a motion to compel is granted, courts "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, courts "must not order this payment" if the opposing party's nondisclosure was substantially justified or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A).

Here, to the extent Defendant seeks expenses and fees incurred in making its motion to compel, such a request is improper before the Undersigned. As Judge Burkhardt granted Defendant's motion to compel, she is in the best position to evaluate Plaintiffs' arguments and determine whether sanctions are appropriate. Moreover, to the extent Defendant seeks expenses and attorney's fees incurred in opposing Plaintiffs' objections, Defendant neither demonstrates that Rule 37 authorizes fees in this situation nor explains why the imposition of sanctions is appropriate. Accordingly, the Court **DENIES** Defendant's request for expenses and fees incurred in opposing Plaintiffs' objections.

### CONCLUSION

Based on the foregoing, the Court **OVERRULES** in substantial part Plaintiffs' objections to Judge Burkhardt's January 31, 2019 order.

**IT IS SO ORDERED.**

Dated: April 4, 2019

HON. MICHAEL M. ANELLO
United States District Judge