UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATY WILLIAMS, et al.,<br><br>                  Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>                  Defendants. | Case No.: 17-cv-00815-MMA (JLB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL**<br><br>**[ECF No. 96]** |

      Before the Court is a discovery dispute regarding interrogatories, requests for production, and a request for admission served by defendant County of San Diego ("Defendant") on plaintiffs Katy Williams ("Williams"), Gary Evans ("Evans"), and minor plaintiffs A.C., Am.E., and Aa.E., by and through their Guardian ad Litem, John Garter (collectively, "Plaintiffs"), concerning Plaintiffs' mental health treatment. (*See* ECF No. 96.) Having considered the parties' submissions, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to compel.

I.     **BACKGROUND**

      Plaintiffs filed a First Amended Complaint ("FAC") for Damages, the operative complaint, on January 12, 2018. (ECF No. 24.) In their FAC, Plaintiffs (1) bring a *Monell* claim based upon violations of Plaintiffs' First, Fourth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, and (2) seek injunctive relief. (*Id.*)

Williams is the natural mother of A.C., Am.E., and Aa.E ("Minor Plaintiffs"). (*Id.* at ¶ 8.) Williams has another minor child, D.C., who is not a plaintiff in this action. (*Id.*) Evans is the natural father of Am.E. and Aa.E. (*Id.* at ¶ 9.) Williams and Evans share custody of Am.E. and Aa.E, and Williams has sole custody of A.C. (*Id.* at ¶¶ 10-11.) On April 24, 2017, the Court appointed Mr. John Garter as Guardian ad Litem for Minor Plaintiffs. (*See* ECF No. 4.)

The remainder of this factual background section is drawn from the allegations in Plaintiffs' FAC. (ECF No. 24.)

In 2013, Defendant first became acquainted with Williams and her children after an incident involving D.C.'s father, Jason Clark ("Clark"). (ECF No. 24 at ¶ 12.) Clark became violent with Williams and threatened to kill her. (*Id.*) As a result, Williams obtained a restraining order against Clark. (*Id.*)

In June 2014, the County of San Diego Health and Human Services Agency ("HHSA") filed a petition on D.C.'s behalf alleging D.C. sustained bruises to his head, "which would not ordinarily be sustained except as a result of the unreasonable acts of D.C.'s father[.]" (*Id.* at ¶ 13.) Juvenile dependency proceedings commenced shortly thereafter. (*See id.*) D.C. lived with Williams during this time, and Clark was no longer able to have unsupervised visits with his son. (*See id.*) Clark, angry about the supervised visits with D.C., began making "false allegations against Williams and [Evans.]" (*Id.* at ¶¶ 14-15.)

In January 2016, Clark reported a bruise near D.C.'s eye to HHSA. (*See id.* at ¶ 18.) D.C. "hit his left eye on a corner of a kitchen island while playing with Minor Plaintiff Aa.E." (*Id.*) Social worker Daniel Bernal ("Bernal") inspected the bruise on January 8, 2016. (*See id.*) During Bernal's investigation, Bernal informed Williams that he wished to interview minor plaintiff Aa.E. alone, but Williams did not consent to such an interview. (*See id.* at ¶ 19.) On January 11, 2016, counsel for Evans and Williams sent a letter to Defendant, HHSA, and Bernal, indicating that "Minor Plaintiffs were represented by

counsel and that no interviews of Minor Plaintiffs A.C., Am.E. or Aa.E. should take place without counsel present." (*Id.* at ¶ 20.)

On January 12, 2016, D.C. sustained additional injuries to his head when "he ran into a doorknob at his home[.]" (*Id.* at ¶ 21.) Williams took D.C. to the hospital, and the doctor discharged D.C., indicating that D.C. "sustained a 'normal childhood injury.'" (*Id.*) Clark, once again, reported the incident to the HHSA hotline. (*See id.*)

On January 19, 2016, Bernal went to A.C.'s middle school, instructed staff to remove her from her classroom, and "detained her against her will" without court order, parental consent, knowledge, or presence. (*Id.* at ¶ 22.) That same day, Bernal also visited Am.E. and Aa.E.'s elementary school, instructed staff to remove them from their classrooms, and "detained them against their will" without court order, parental consent, knowledge, or presence. (*Id.* at ¶ 23.) Once the children were removed from their classrooms, Bernal, social worker Janet Barragan ("Barragan"), and social worker Miriam Partida ("Partida") "interrogated" the children, despite the fact that Defendant, Bernal, and HHSA "were informed in writing" that Evans and Williams "did not want their minor children to be interviewed by social workers with [Defendant] and HHSA without a parent and/or attorney being present at that interview." (*Id.* at ¶ 24.) There were not, nor have there ever been, any allegations that Minor Plaintiffs were abused or neglected by their parents, or any other individuals. (*See id.*)

During the interviews, the social workers inquired about Minor Plaintiffs' safety at home, how their parents disciplined them, and whether D.C. "was an active child." (*Id.* at ¶ 25.) The social workers did not inform the Minor Plaintiffs that they could decline to be interviewed, nor were they given a choice about being interviewed "once they were detained and confronted by the County workers." (*Id.* at ¶ 26.) Further, the Minor Plaintiffs "were not informed that they could have a parent and/or an attorney present for the interviews." (*Id.*) At the time of the interviews, the social workers "did not have exigency, Court Order, parental consent, knowledge or presence, or even reasonable suspicion that the Minor Plaintiffs were the subject of abuse or neglect." (*Id.* at ¶ 27.)

| | |
|---|---|
| 1 | Clark "continues to make false allegations" and on December 29, 2017, social worker Lisette Alvarez ("Alvarez") contacted Williams to inquire about conducting an in-person interview regarding disciplinary issues involving Williams' children. (*See id.* at ¶ 28.) On January 11, 2018, Alvarez "reiterated her intent" to interview Williams and her children. (*See id.* at ¶ 29.) Williams indicated that she agreed for a meeting with herself, D.C., and her counsel, but that she would not agree to interviews of her other children. (*See id.*) Alvarez, however, "refused to agree not to go to the schools" of the Minor Plaintiffs pursuant to Defendant's "policies that allowed her to conduct such interviews[.]" (*Id.* (emphasis in original).) |

Clark "continues to make false allegations" and on December 29, 2017, social worker Lisette Alvarez ("Alvarez") contacted Williams to inquire about conducting an in-person interview regarding disciplinary issues involving Williams' children. (*See id.* at ¶ 28.) On January 11, 2018, Alvarez "reiterated her intent" to interview Williams and her children. (*See id.* at ¶ 29.) Williams indicated that she agreed for a meeting with herself, D.C., and her counsel, but that she would not agree to interviews of her other children. (*See id.*) Alvarez, however, "refused to agree not to go to the schools" of the Minor Plaintiffs pursuant to Defendant's "policies that allowed her to conduct such interviews[.]" (*Id.* (emphasis in original).)

On January 18, 2019, Defendant served requests for admissions, special interrogatories, and requests for production of documents on Plaintiffs. (ECF No. 96-1, Declaration of Kate D. Jones ("Jones Decl."), at ¶ 2, Exhs. A-C.) On February 20, 2019, Plaintiffs responded to Defendant's discovery requests. (*Id.* at ¶ 3, Exhs. D-F.) On March 13, 2019, the parties left a joint voicemail with Judge Burkhardt's Chambers concerning their discovery dispute. (*See* ECF No. 94.) The Court ordered the moving party to file and serve a motion within three days of Judge Anello's order resolving Plaintiffs' objections on a related dispute. (*See id.*; *see also* ECF Nos. 87, 89, 95.) Defendant brought the present motion to compel within four days of Judge Anello's order. (*See* ECF Nos. 95, 96.) Plaintiffs oppose. (ECF No. 97.)

///
///
///
///
///
///
///
///
///

## II. LEGAL STANDARD

Nonprivileged information is discoverable under Rule 26 if it is (1) relevant, and (2) proportional to the needs of the case. Federal Rule of Civil Procedure 26(b)(1), as amended in 2015, provides that parties—

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Evidence must be "relevant to any party's claim or defense" to fall within the scope of permissible discovery. *Id*. The 2015 amendment to Rule 26(b) deleted the phrase "reasonably calculated to lead to the discovery of admissible evidence" because it was often misconstrued to define the scope of discovery and had the potential to "swallow any other limitation." Fed. R. Civ. P. 26(b)(1) advisory committee notes to 2015 amendment. *See also San Diego Unified Port Dist. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, No. 15CV1401-BEN-MDD, 2017 WL 3877732, at *1 (S.D. Cal. Sept. 5, 2017). The amendment replaced this phrase with the statement that information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1) advisory committee notes to 2015 amendment.

Information must also be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). When analyzing the proportionality of a party's discovery requests, a court should consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id*.

///

Rule 33 provides that a party may serve on any other party interrogatories that relate to any matter within the scope of discovery defined in Rule 26(b). Fed. R. Civ. P. 33(a). Similarly, Rule 34 provides that a party may serve requests for documents or tangible things on any other party that relate to any matter within the scope of discovery defined in Rule 26(b). Fed. R. Civ. P. 34(a).

If a party fails to answer an interrogatory or produce documents, or if the response provided is evasive or incomplete, the propounding party may bring a motion to compel. *See* Fed. R. Civ. P. 37(a). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Bryant v. Ochoa*, No. 07cv200 JM (PCL), 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009). Those opposing discovery are "required to carry a heavy burden of showing" why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

In addition, Rule 36 provides that a party may serve on any other party a written request to admit the truth of any matters within the scope of Rule 26(b) relating to facts, the application of law to fact, or opinions about either, and the genuineness of any described documents. Fed. R. Civ. P. 36(a)(1). The party responding to the requests for admission may either answer or object. Fed. R. Civ. P. 36(a)(4), (5). If a party provides an answer, it must admit, deny, or state in detail why the party cannot truthfully admit or deny the matter. Fed. R. Civ. P. 36(a)(4). Qualified answers are proper if the responding party specifies the part admitted and qualifies or denies the rest. *Id.* The responding party may also assert lack of knowledge or information as a reason for failing to admit or deny the matter, as long as the party states that "it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." *Id.*

The requesting party may move under Rule 36 to determine the sufficiency of an answer or objection. Fed. R. Civ. P. 36(a)(6). Unless the court finds an objection justified,

it must order that an answer be served. *Id.* On finding that an answer does not comply with Rule 36, the court may order either that the matter is admitted or that an amended answer be served. *Id.*

### III. ANALYSIS

#### A. Discovery Requests at Issue

Defendant moves to compel responses to the following requests related to Plaintiffs' mental health treatment:

> Request for Admission No. 11/1[1]: Admit or deny that you received mental health treatment in the five years preceding January 19, 2016.
>
> Special Interrogatory No. 12/16: If you received treatment from any licensed professional/healthcare provider (including but not limited to doctors, therapists, counselors, clinical social workers, psychologists, psychiatrists, and psychotherapists) for any emotional or mental health condition from January 19, 2011 through January 19, 2016, please list the dates of treatment, the names and address of the treatment provider, the nature of treatment, the condition you were treated for, and any diagnosis received.
>
> Special Interrogatory No. 13/17: If you were prescribed or have taken any medication as a result of emotional or mental health conditions from January 19, 2011 through January 19, 2016, identify the medication and state the name, address, and phone number of the person(s) who prescribed or furnished the medication, the date it was prescribed or furnished, the dates you began and stopped taking it, and the cost to date.
>
> Special Interrogatory No. 14/18: If you have been prescribed or have taken any medication as a result of the injuries you attribute to the incidents described in your Complaint, identify the medication and state the name, address, and phone number of the person(s) who prescribed or furnished the medication, the date it was prescribed or furnished, the dates you began and stopped taking it, and the cost to date.
>
> Request for Production No. 6/5 : All medical and mental health records that show treatment you received from medical and/or mental health providers identified in your response to Special Interrogatory [16 to Williams and Gary

---

[1] In these references to the numbers of the discovery requests, the first number is the number of the request propounded to Williams and Evans and the second is the number of the request propounded to A.C., Aa.E., and Am.E.

7

17-cv-00815-MMA (JLB)

Evans and 12 to A.C., Aa.E., and Am.E.]. This request includes producing signed HIPAA-compliant releases (attached as **Exhibit A**) authorizing defense counsel to obtain medical and mental health records showing such treatment."

Request for Production No. 7/6: All medical and mental health records that show treatment you received from medical and/or mental health providers identified in your response to Special Interrogatory [17 to Williams and Gary Evans and 13 to A.C., Aa.E., and Am.E.]. This request includes producing signed HIPAA-compliant releases (attached as **Exhibit A**) authorizing defense counsel to obtain medical and mental health records showing such treatment.

Request for Production No. 8/7: All medical and mental health records that show treatment you received from medical and/or mental health providers identified in your response to Special Interrogatory [18 to Williams and Gary Evans and 14 to A.C., Aa.E., and Am.E.]. This request includes producing signed HIPAA-compliant releases (attached as **Exhibit A**) authorizing defense counsel to obtain medical and mental health records showing such treatment.

(Jones Decl. at ¶¶ 2, 4, 6, 8, Exhs. A-C (emphasis in original).)

Plaintiffs served objections to the request for admission and each request for production and special interrogatory listed above and did not otherwise respond. (*See id.* at ¶¶ 5, 7, 9, Exhs. D-F.) Plaintiffs objected to the special interrogatories and requests for production on the grounds that they seek information that is neither relevant nor proportional to the needs of the case. (*See id.* at Exhs. E-F.) Plaintiffs further objected to the special interrogatories and requests for production on the grounds that they seek to invade Plaintiffs' right to privacy and the physician-patient and psychotherapist-patient privileges. (*See id.*) Plaintiffs also contend that the special interrogatories and requests for production are overbroad as to time and scope, and that the requests for production exceed the permissible bounds of Rule 34(a). (*See id.*)[2] Plaintiffs objected to the request for

---

[2] Plaintiffs further objected to the special interrogatories on the basis that they violate the numerical limitations set forth in Rule 33. (*See id.* at Exh. E.) However, Plaintiffs have withdrawn this objection. (*See* Jones Decl. at ¶ 10; ECF No. 97.)

admission on the grounds that the term "admit or deny" is ambiguous in this context, and on the grounds that the request seeks information that is neither relevant nor proportional to the needs of the case and seeks to invade Plaintiffs' right to privacy. (*See id.* at Exh. D.)

In their opposition to Defendant's motion, Plaintiffs state that all Plaintiffs have now responded to the disputed request for admission and that Evans, Am.E., and Aa.E. have responded to the disputed interrogatories as not applicable to them. (ECF No. 97 at 3.) As such, Plaintiffs represent that Evans, Am.E., and Aa.E. have no changes to their responses to the disputed requests for production. (*See id.*)[3] Plaintiffs contend that the only discovery responses that are still subject to this dispute are Williams' and A.C.'s responses to the special interrogatories and requests for production. (*See id.*) Williams and A.C. continue to object to these requests based on relevance, privacy, and invasion of the psychotherapist-patient privilege. (*See id.* at 4.) As Defendant has not disputed these contentions, the Court will focus its analysis on the disputed interrogatories and requests for production.

**B.    Analysis**

    1.    <u>Relevance</u>

In their FAC, Plaintiffs bring a *Monell* claim under 42 U.S.C. § 1983 and seek injunctive relief. (ECF No. 24.) With respect to the *Monell* claim, Plaintiffs seek "[g]eneral damages in an amount to be determined by proof at trial." (*Id.* at 12.) In response to Defendant's first set of interrogatories, which asked each plaintiff to "[i]dentify all damages (including financial and monetary damages) and injuries (including physical and/or emotional injuries) you contend you suffered as a result of the incidents alleged in the Complaint," Plaintiffs uniformly responded: "Past, present, and future fear, anxiety, emotional distress, anger, frustration and related pain and suffering from the day of the subject incident to the present." (*See* ECF No. 78-1 at 29, 34, 39, 44, 50.)

---

[3] The Court interprets this to mean that Evans, Am.E., and Aa.E. are representing that they have no responsive documents.

9

Accordingly, the Court finds that Defendant's discovery requests relating to Plaintiffs' mental and emotional health seek information that is relevant to this case. *See Harper v. City of L.A.*, 533 F.3d 1010, 1026 (9th Cir. 2008) ("In a § 1983 action, the plaintiff must . . . demonstrate that the defendant's conduct was the actionable cause of the claimed injury."); *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996) (noting that the municipal policy or inaction alleged in a *Monell* action "must be the proximate cause of the section 1983 injury"); *Doe v. City of Chula Vista*, 196 F.R.D. 562, 568 (S.D. Cal. 1999) (concluding that "a plaintiff who seeks to recover for emotional distress damages is relying on her emotional condition as an element of her claim"); *Hukman v. Sw. Airlines Co.*, No. 18-cv-1204-GPC (RBB), 2019 WL 566451, at *4 (S.D. Cal. Feb. 12, 2019) (finding the plaintiff's preexisting emotional condition to be highly relevant to causation where she placed her emotional health at issue by seeking emotional distress damages); *see also* ECF Nos. 87 at 8; 95 at 8.[4] As Defendant has established the relevancy of the requested information, the Court turns to Plaintiffs' specific objections.

### 2. Physician-Patient Privilege

In federal question cases, federal law regarding privilege applies. Fed. R. Evid. 501; *N.L.R.B. v. N. Bay Plumbing, Inc.*, 102 F.3d 1005, 1009 (9th Cir. 1996). No physician-patient privilege exists under federal common law. *See Robinson v. De La Vega*, No. 07-cv-409-JAH (NLS), 2008 WL 11355423, at *1 (S.D. Cal. Mar. 13, 2008); *Galarza v. United States*, 179 F.R.D. 291, 294 (S.D. Cal. 1998); *see also In re Grand Jury Proceedings*, 867 F. 2d 562, 564 (9th Cir. 1989) (noting the Ninth Circuit's refusal to adopt a physician-patient privilege), abrogated on other grounds by *Jaffee v. Redmond*, 518 U.S. 1 (1996). Accordingly, Plaintiffs' objection on this basis is overruled.

---

[4] Plaintiffs contend that since they "have not made a claim that they are taking medication as a result of the incident (since they are claiming only garden variety emotional distress), any discovery about pre- or post- incident psychiatric medication is completely irrelevant to this action." (ECF No. 97 at 5.) However, medication is part of any treatment received, and therefore the Court finds the information relevant.

### 3. Psychotherapist-Patient Privilege

Plaintiffs contend that they have not waived the psychotherapist-patient privilege by asserting a "garden-variety claim of emotional distress." (*See* ECF No. 97 at 8-10.) Plaintiffs argue that a court "[h]olding that the simple fact of filing a Civil Rights claim waives all rights an individual holds regarding his or her mental health history, details, and records will have significant repercussions." (*Id.* at 2.)

This Court has already determined that Plaintiffs have waived their psychotherapist-patient privilege, to the extent relevant,[5] by putting their emotional health at issue in this case. (ECF No. 87 at 8-9.) This determination was based upon the fact that Plaintiffs are seeking to recover emotional distress damages, not based upon the "simple fact of filing a Civil Rights claim" as asserted by Plaintiffs. As envisioned by the Supreme Court in *Jaffee* and the district court in *Doe*, a party's psychotherapist communications are privileged and only subject to disclosure in litigation to the extent a party has put his or her emotional health at issue. *See Jaffee*, 518 U.S. at 15 n.4, 17-18; *Doe*, 196 F.R.D. at 565, 568-69. Plaintiffs have done that here by seeking emotional distress damages. Accordingly, Plaintiffs' objection on the basis of the psychotherapist-patient privilege is overruled.

### 4. Right to Privacy

Plaintiffs contend that the requested information is protected by their right to privacy. (ECF No 97 at 6-8.) Plaintiffs contend that application of the five-factor balancing test set forth in *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004) clearly weighs in favor of maintaining Plaintiffs' privacy rights. (*See id.*)

---

[5] The psychotherapist-patient privilege covers "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment." *United States v. Romo*, 413 F.3d 1044, 1046 (9th Cir. 2005) (quoting *Jaffee*, 518 U.S. at 15). Some of the requests at issue call for the production of discovery that would seemingly meet this definition, but much of the requested discovery falls outside the scope of this privilege.

As noted above, some of the discovery responsive to the requests for production at issue would seemingly be covered by the psychotherapist-patient privilege, had this privilege not been waived. As to those otherwise privileged communications, Plaintiffs cannot successfully seek protection based upon their right to privacy.[6] A party's right to privacy was already taken into consideration by the Supreme Court in *Jaffee* when the existence and operation of the psychotherapist-privilege was articulated. "In recognizing the [psychotherapist-patient] privilege, the Supreme Court expressly rejected the approach in which a court 'balanced' the evidentiary need for the communications against the patient's privacy concerns." *Doe*, 196 F.R.D. at 565 (citing *Jaffee*, 518 U.S. at 7, 17-18). The Supreme Court explained that "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." *Jaffee*, 518 U.S. at 17. As such, Plaintiffs do not have a separate right of privacy over the mental health records that are covered by the psychotherapist-patient privilege.[7]

---

[6] Plaintiffs' privacy argument seems to be directed primarily, if not exclusively, to the confidential communications between Plaintiffs and their therapists. Specifically, Plaintiffs argue that "[i]ndividuals who seek mental health care often disclose the most intimate and confidential details of their lives to those providers while trying to mend emotional wounds." (ECF No. 97 at 7.) Plaintiffs further contend that it is essential that their mental health records be protected because effective psychotherapy "depends upon an atmosphere of confidence and trust in which the plaintiff is willing to make a frank and complete disclosure of facts, emotional, memories and fears." (*Id.* (quoting *Jaffe*, 518 U.S. at 10-11).) Plaintiffs further contend that "[a]llowing an invasion of this 'atmosphere of confidence and trust' in a case where the information, at best, is minimally relevant has the potential to wreak havoc with any future mental health treatment to be sought by Plaintiffs Williams and A.C." (*Id.*)

[7] The psychotherapist-patient privilege covers communications that were (1) confidential, and (2) made during the course of diagnosis or treatment (3) to a licensed psychotherapist. *Romo*, 413 F.3d at 1047.

As to the information sought by Defendant which is not covered by the psychotherapist-patient privilege, Plaintiffs have a right to privacy in the confidentiality of their medical records. *Soto v. City of Concord*, 162 F.R.D. 603, 618 (N.D. Cal. 1995). However, the right to privacy is not a recognized privilege or an absolute bar to discovery, but instead is subject to the balancing of needs. *See E.E.O.C. v. Cal. Psychiatric Transitions*, 258 F.R.D. 391, 395 (E.D. Cal. 2009); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 191 (C.D. Cal. 2006) (citing *Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 657 (C.D. Cal. 2005)).

Courts must balance the following factors to determine whether the interest in obtaining the information outweighs the individual's privacy interest: "(1) the type of information requested, (2) the potential for harm in any subsequent non-consensual disclosure, (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree of need for access, and (5) whether there is an express statutory mandate, articulated public policy," or other public interest favoring access. *Seaton v. Mayberg*, 610 F.3d 530, 539 (9th Cir. 2010) (quoting *Tucson Woman's Clinic*, 379 F.3d at 551).

As Plaintiffs' privacy claim does not cover their confidential communications with a licensed psychotherapist in the course of diagnosis or treatment, the Court applies these factors to the discovery that falls outside of those communications. As to the discovery requested in response to the interrogatories at issue, *e.g.* the identity of any providers of mental or emotional health treatment, the nature of mental or emotional health treatment, the conditions, diagnoses, medications, etc. for any mental or emotional health issues, the Court finds that the first two factors do not overcome Defendant's need for access. *See Larson v. Bailiff*, No. 13-cv-2790 BAS (JLB), 2015 WL 4425660, at *5 (S.D. Cal. July 17, 2015) ("When a plaintiff places his medical conditions at issue, his expectation of privacy regarding those conditions is diminished."); *Hukman*, 2019 WL 566451, at *4 (ordering production of medical records where the plaintiff placed her emotional health at issue and her preexisting emotional condition is highly relevant to causation). The Court further finds that a second protective order is adequate to address Plaintiffs' privacy concerns over

the requested information. Accordingly, the Court overrules Plaintiffs' objection to the interrogatories at issue on this basis.

Defendant also moves to compel responses to Requests for Production Nos. 6/5, 7/6, and 8/7, which request that Plaintiffs produce all medical and mental health records that show the treatment received from the medical and/or mental health providers who were identified in response to Interrogatories Nos. 12/16, 13/17, and 14/18 as having provided treatment for mental or emotional health conditions from January 19, 2011 through January 19, 2016; or prescribed medication as a result of mental or emotional health conditions from January 19, 2011 through January 19, 2016; or prescribed medication as a result of injuries attributable to the subject incident.

These requests certainly call for the production of medical records reflecting confidential communications with a licensed psychotherapist in the course of diagnosis or treatment, for which Plaintiffs cannot claim a privacy privilege, but they also conceivably call for the production of medical records that reflect treatment for physical, as opposed to mental or emotional, health matters.[8] With respect to the documents reflecting treatment for purely physical health matters, the first and fourth factors outweigh the factors supporting production. Defendant's need for such information is very low, while the nature of the documents could be quite sensitive. Accordingly, the Court sustains Plaintiffs' objections to the requests for production to the extent they call for the production of medical records pertaining only to unrelated physical illnesses and ailments.

---

[8] By the language of the corresponding interrogatories, Defendant limits records requested to those of licensed professionals/healthcare providers who provided mental or emotional health treatment, including the prescription of medication for mental or emotional health issues. However, in requesting health records from those providers, Defendant does not limit the requests to mental or emotional health records. Thus, in theory, if any of the Plaintiffs received mental or emotional health treatment from a primary care physician, the requests for production, as written, would call for that Plaintiff to provide all medical records from that physician within the relevant time period, to include those records pertaining to completely unrelated physical illnesses or ailments.

### 5. Overbroad as to Time

As in its prior order, the Court finds that Defendant's limitation to mental health providers for the five years preceding the incident to be sufficiently limited in scope. (*See* ECF No. 87 at 9.) Accordingly, the Court overrules Plaintiffs' objection on this basis.

### 6. Proportionality

Plaintiffs contend that the information sought is not proportional to the needs of the case given the factors discussed in Rule 26(b)(1). (ECF No. 97 at 4.) Plaintiffs argue that their past mental health history is not important to the issues at stake or in resolving such issues, and that Defendant is already aware of numerous "other factors" that may have contributed to Plaintiffs' emotional distress, including Williams' history as a victim of domestic violence and prior experiences with Child Protective Services. (*Id.* at 4-5.) Plaintiffs represent that Defendant has thousands of pages of records from HHSA containing interviews with Williams and others about "other factors" that may have contributed to Plaintiffs' emotional distress. (*Id. at* 5.)

Plaintiffs offer that Defendant may question Plaintiffs at their depositions about "other factors" that may have contributed to their emotional distress, but given that Plaintiffs are only seeking a "garden variety" emotional distress claim, have not designated a mental health practitioner as a witness, and are not relying upon diagnoses or statements by mental health practitioners to bolster their claims, Plaintiffs contend that Defendant should not be allowed to comb through their mental health records. (*Id.* at 2, 5.)

Information must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). When analyzing the proportionality of a party's discovery requests, a court should consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id*.

Here, the only damages Plaintiffs are seeking with respect to their *Monell* claim are emotional distress damages. (*See* FAC at 12.) Plaintiffs do not claim any physical injury

and are not seeking to recover the costs of mental health treatment of any kind. (*See* ECF Nos. 87 at 6 (citing ECF No. 78-1 at 57); 97 at 2.) In defending against Plaintiffs' damages claims, Defendant is entitled to show that "other factors" contributed to Plaintiffs' emotional distress. *See, e.g.*, *Doe*, 196 F.R.D. at 568. Accordingly, discovery into Plaintiffs' emotional distress damages resulting from the incident, as well as Plaintiffs' emotional state prior to the incident, is important to resolving the issues in this action. *See Hukman*, No. 2019 WL 566451, at *4 (finding the plaintiff's preexisting emotional condition to be highly relevant to causation where she placed her emotional health at issue).

But under the facts of this case, do those legitimate needs of Defendant outweigh the burden to Plaintiffs of providing in discovery such sensitive information? Plaintiffs argue that they do not by emphasizing the "garden variety" nature of their emotional distress damages claim. Plaintiffs underscore this by pointing out that they have not designated any medical providers as witnesses in this case. Unfortunately, at this stage of discovery neither Defendant nor the Court can know what Plaintiffs might mean by "garden variety" emotional distress damages and case law fails to provide any clear and standard definition. Plaintiffs broadly describe their damages as "past, present, and future fear, anxiety, emotional distress, anger, frustration and related pain and suffering from the day of the subject incident to the present." (*See* ECF No. 78-1 at 29, 34, 39, 44, 50.) Including "emotional distress" as a category of damages within the description of their emotional distress damages amounts to a circular definition which ultimately leaves the type and extent of those damages unbounded. Including the phrase "and related pain and suffering" has a similar effect.[9] The depositions of Plaintiffs will likely shed more light on their damages claims, but Defendant would be unfairly disadvantaged if it had to conduct those depositions before obtaining the requested written discovery.

---

[9] Moreover, referring to damages as "garden variety" may seem to suggest that the compensation sought or awarded will be modest, but in reality, applying that label imposes no such limitation.

With these tensions in mind, the Court addresses the specific discovery requests at issue.

### a. *Special Interrogatories Nos. 12/16, 13/17 and 14/18*

The Court previously ordered Plaintiffs to provide a response to Defendant's interrogatories requesting that they identify all mental health providers who provided them treatment in the five years preceding the incident, including their name, address, and hospital affiliation (if any). (*See* ECF Nos. 87, 95.) The Court found "Defendant's limitation to mental health providers for the five years preceding the incident to be sufficiently limited in scope." (ECF No. 87 at 9.)

Defendant now claims that it needs responses to this second set of Special Interrogatories "to show other factors contributed to Plaintiffs' emotional distress" and "to discover the scope and seriousness of Plaintiffs' alleged emotional distress." (ECF No. 96 at 6, 7.) For example, Defendant claims the information "may show Plaintiffs' mental conditions are attributable to some preexisting cause." (*Id.* at 2.)[10] Special Interrogatories Nos. 12/16 and 13/17 seek information pertaining to any mental health treatment Plaintiffs received in the five years preceding the incident, which occurred on January 19, 2016. Special Interrogatories Nos. 14/18 seek information pertaining to medications prescribed as a result of injuries attributable to the incidents that are the subject of this lawsuit.

---

[10] Defendant further contends that "where—as here—a plaintiff alleges interference with her right to familial association, information and records regarding Plaintiffs' prior mental health conditions can provide 'insight into the familial relationship.'" (*Id.* at 6 (citing *Nehad v Browder*, No. 15-cv-1386 WQH NLS, 2016 WL 1428069, at *2, 4-5 (S.D. Cal. April 11, 2016)).) However, the Court finds that Plaintiffs have not put their familial relationship with each other at issue in this case, as they are not seeking damages for the loss of value of their familial relationship. *Cf. Nehad*, 2016 WL 1428069, at *4-5 (finding that the plaintiffs' waived the psychotherapist-patient privilege by bringing a wrongful death claim, which put their familial relationship with the decedent at issue, and seeking damages for the loss of value of their familial relationship).

Upon review, the Court finds that Special Interrogatories Nos. 12/16, 13/17, and 14/18, as set forth above in Section III(A), are appropriate and proportional to the needs of this case. However, Plaintiffs are not seeking the costs of any treatment, including the costs of any medication. Accordingly, Plaintiffs do not need to identify the "cost to date" of any medication as requested in Special Interrogatories Nos. 13/17 and 14/18.

### b. *Requests for Production Nos. 6/5, 7/6, and 8/7*

Defendant further moves to compel responses to Requests for Production Nos. 6/5, 7/6, and 8/7, which request that Plaintiffs produce all medical and mental health records that show the treatment received from the medical and/or mental health providers who were identified in response to Interrogatories Nos. 12/16, 13/17, and 14/18 as having provided treatment for mental or emotional health conditions from January 19, 2011 through January 19, 2016; or prescribed medication as a result of mental or emotional health conditions from January 19, 2011 through January 19, 2016; or prescribed medication as a result of injuries attributable to the subject incident.

These requests are overbroad and disproportionate to the needs of the case to the extent that they request medical records that reflect treatment for physical, as opposed to mental or emotional, health matters. The Court therefore finds that proportionality serves as an independent basis for limiting the requests for production to those otherwise responsive documents that show mental or emotional health treatment received from the healthcare providers identified in response to the referenced interrogatories.

With that refinement, the responsive documents can be broken down into two categories: (1) documents that reflect mental or emotional health treatment received from healthcare providers for injuries that Plaintiffs attribute to the subject incident; and (2) documents that reflect mental or emotional health treatment received from healthcare providers for anything other than injuries that Plaintiffs attribute to the subject incident. The first category of documents comprises only highly relevant discovery, and Plaintiffs put these documents squarely at issue. Defendant's motion to compel with respect to these documents is GRANTED. At Plaintiffs' option, Plaintiffs can either obtain and produce

these documents to Defendant or provide Defendant with signed HIPAA-compliant releases so that Defendant can obtain the documents directly from the providers.

As to the second category of responsive documents, the Court concludes that it cannot properly conduct its proportionality evaluation without a review of the documents themselves. Plaintiffs are to provide to the Court for *in camera* review documents responsive to Requests for Production 6/5, 7/6, and 8/7 that reflect mental or emotional health treatment received from healthcare providers for anything other than injuries that Plaintiffs attribute to the subject incident.

### 7. Reasonable Expenses

Defendant requests that the Court require "Plaintiffs to pay Defendant's reasonable expenses incurred in making this motion, including attorney's fees, pursuant to Federal Rule of Civil Procedure 37(a)(5)." (ECF No. 96 at 10.) However, as this motion was granted in part and denied in part, the Court, in its discretion, declines to apportion the reasonable expenses, including attorney's fees, incurred in bringing this motion. *See* Fed. R. Civ. P. 37(a)(5)(C) ("If the motion [to compel] is granted in part and denied in part, the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.").

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to compel. As set forth above, the Court **GRANTS** Defendant's motion to compel responses to Special Interrogatories Nos. 12/16, 13/17, and 14/18, as amended above, and responses to Requests for Production Nos. 6/5, 7/6, and 8/7 as to responsive documents that reflect mental or emotional health treatment received from healthcare providers for injuries that Plaintiffs attribute to the subject incident. With respect to these requests, Plaintiffs shall provide amended responses to Defendant within **fifteen (15) days** of the date of this Order. If Plaintiffs elect to provide Defendant with signed HIPAA-compliant releases, they must provide them along with their amended responses.

The Court takes under submission Defendant's motion to compel further responses to Requests for Production Nos. 6/5, 7/6, and 8/7 to the extent the requests call for the production of documents that reflect mental or emotional health treatment received from healthcare providers for anything other than injuries that Plaintiffs attribute to the subject incident, subject to the Court's *in camera* review of those documents. Within **fifteen (15) days** of the date of this Order, Plaintiffs are to produce this category of responsive documents to the Court for *in camera* review.

The parties shall file a motion for entry of a stipulated protective order to address Plaintiffs' privacy concerns with respect to the ordered discovery within **ten (10) days** of the date of this Order. The motion shall comply with Section V of Judge Burkhardt's Civil Chambers Rules.

**IT IS SO ORDERED.**

Dated: May 31, 2019

Hon. Jill L. Burkhardt
United States Magistrate Judge