1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11    KATY WILLIAMS, et al.,                  Case No.:  17-cv-00815-MMA (JLB)

12                              Plaintiffs,   **ORDER:**

13    v.
                                              **(1) GRANTING MOTION TO**
14    COUNTY OF SAN DIEGO, et al.,            **QUASH DEPOSITION SUBPOENA**
                                              **AND FOR PROTECTIVE ORDER**
15                             Defendants.    **REGARDING DEPOSITION OF**
                                              **MINOR D.C. [ECF No. 110]; AND**
16

17                                            **(2) GRANTING MOTION FOR**
                                              **RECONSIDERATION OF THE**
18                                            **COURT'S OCTOBER 2, 2019**
                                              **MINUTE ORDER [ECF No. 135]**
19

20

21

22        Before the Court is a motion to quash deposition subpoena and for protective order

23   regarding the deposition of minor D.C. and a motion for reconsideration of the Court's

24   October 2, 2019 Minute Order.  (ECF Nos. 110, 135.)  Non-party minor D.C requests that

25   the Court quash a deposition subpoena served on him by Defendant County of San Diego

26   ("Defendant" or "County") and enter an order protecting D.C. from being deposed in this

27   action.  Defendant opposes.  (*See* ECF Nos. 113, 125.)

28   ///

The Court held a hearing on the motion on October 2, 2019. Following the hearing, the Court ordered the parties to meet and confer and file a joint supplemental statement informing the Court of their respective positions on the location for D.C.'s deposition. (ECF No. 129.) On October 9, 2019, the parties filed a joint supplemental statement in which D.C. and Plaintiffs indicated that they intended to move for reconsideration and/or file objections to the Court's October 2, 2019 Minute Order and therefore did not participate substantively in the meet and confer. (ECF No. 133.) Thereafter, D.C. filed a motion for reconsideration of the Court's October 2, 2019 Minute Order and a supplemental brief in support of his motion to quash and for a protective order. (ECF No. 135.) Defendant filed an opposition to the motion for reconsideration on October 23, 2019. (ECF No. 141.)[1]

For the reasons set forth below, the motion to quash deposition subpoena and for protective order regarding the deposition of minor D.C. is **GRANTED** and the motion for reconsideration of the Court's October 2, 2019 Minute Order is **GRANTED**.

## I.     BACKGROUND

Plaintiffs Katy Williams ("Williams"), Gary Evans ("Evans"), and minor plaintiffs A.C., Am.E., and Aa.E., by and through their Guardian ad Litem, John Garter (collectively, "Plaintiffs"), filed this action against Defendant alleging claims for: (1) *Monell* liability based upon violations of Plaintiffs' Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983; and (2) injunctive relief. (*See* ECF No. 24 ("FAC").)

Williams is the natural mother of A.C., Am.E., and Aa.E (collectively, "Minor Plaintiffs"). (*Id.* at ¶ 8.) Williams has another minor child, D.C., born in 2012, who is not a plaintiff in this action. (*Id.*) Evans is the natural father of Am.E. and Aa.E. (*Id.* at ¶ 9.) Williams and Evans share custody of Am.E. and Aa.E, and Williams has sole custody of

---

[1]     D.C. was required to obtain leave of court to file a supplemental brief, or reply, and did not do so. However, after review, the Court finds it appropriate and in the interests of justice to consider D.C.'s supplemental brief.

A.C. (*Id.* at ¶¶ 10-11.) On April 24, 2017, the Court appointed Mr. John Garter as Guardian ad Litem for Minor Plaintiffs. (*See* ECF No. 4.)

In 2013, Defendant first became acquainted with Williams and her children after an incident involving D.C.'s father, Jason Clark ("Clark"). (FAC at ¶ 12.) Clark became violent with Williams and threatened to kill her. (*Id.*) As a result, Williams obtained a restraining order against Clark. (*Id.*)

In June 2014, the County of San Diego Health and Human Services Agency ("HHSA") filed a petition on D.C.'s behalf alleging D.C. sustained bruises to his head, "which would not ordinarily be sustained except as a result of the unreasonable acts of D.C.'s father[.]" (*Id.* at ¶ 13.) Juvenile dependency proceedings commenced shortly thereafter. (*See id.*) D.C. lived with Williams during this time, and Clark was no longer able to have unsupervised visits with his son. (*See id.*) Clark then began making "false allegations against Williams and her boyfriend." (*Id.* at ¶¶ 14-15.)

In January 2016, Clark reported a bruise near D.C.'s eye to HHSA. (*See id.* ¶ 18.) D.C. "hit his left eye on a corner of a kitchen island while playing with Minor Plaintiff Aa.E." (*Id.* at ¶ 18.) Social worker Daniel Bernal ("Bernal") inspected the bruise on January 8, 2016. (*Id.*) During Bernal's investigation, Bernal informed Williams that he wished to interview minor plaintiff Aa.E. alone, but Williams did not consent to such an interview. (*Id.* at ¶ 19.) On January 11, 2016, Evans and Williams' attorney sent a letter to the County, HHSA, and Bernal, indicating that "Minor Plaintiffs were represented by counsel and that no interviews of Minor Plaintiffs A.C., Am.E. or Aa.E. should take place without counsel present." (*Id.* at ¶ 20.)

On January 12, 2016, D.C. sustained additional injuries to his head when "he ran into a doorknob at his home[.]" (*Id.* at ¶ 21.) Williams took D.C. to the hospital, and the doctor discharged D.C., indicating that D.C. had "sustained a 'normal childhood injury.'" (*Id.*) Clark, once again, reported the incident to the HHSA hotline. (*See id.*)

On January 19, 2016, Bernal traveled to A.C.'s middle school, instructed staff to remove her from her classroom, and "detained her against her will" without court order or

3

parental consent, knowledge, or presence. (*Id.* at ¶ 22.) That same day, Bernal also visited Am.E. and Aa.E.'s elementary school, instructed staff to remove them from their classrooms, and "detained them against their will" without court order, or parental consent, knowledge, or presence. (*Id.* at ¶ 23.) Once the children were removed from their classrooms, Bernal, social worker Janet Barragan ("Barragan"), and social worker Miriam Partida ("Partida") "interrogated" the children, despite the fact that Bernal, the County, and HHSA "were informed in writing" that Evans and Williams "did not want their minor children to be interviewed by social workers with the County and HHSA without a parent and/or attorney being present at that interview." (*Id.* at ¶ 24.) Notably, there were not, nor have there ever been, any allegations that Minor Plaintiffs were abused or neglected by their parents, or any other individuals. (*See id.*)

During the interviews, the social workers inquired about whether the Minor Plaintiffs' felt safe at home, how their parents disciplined them and D.C., and whether D.C. "was an active child." (*Id.* at ¶ 25.) The social workers did not inform the Minor Plaintiffs that they could decline to be interviewed, nor were they given a choice about being interviewed "once they were detained and confronted by the County workers." (*Id.* at ¶ 26.) Further, the Minor Plaintiffs "were not informed that they could have a parent and/or an attorney present for the interviews." (*Id.*) At the time of the interviews, the social workers "did not have exigency, Court Order, parental consent, knowledge or presence, or even reasonable suspicion that the Minor Plaintiffs were the subject of abuse or neglect." (*Id.* at ¶ 27.)

Clark "continues to make false allegations" and, on December 29, 2017, social worker Lisette Alvarez ("Alvarez") contacted Williams to inquire about conducting an in-person interview regarding disciplinary issues involving the Minor Plaintiffs and D.C. (*Id.* at ¶ 28.) On January 11, 2018, Alvarez "reiterated her intent" to interview Williams and her children regarding Clark's latest allegations regarding D.C. (*See id.* ¶ 29.) Williams indicated that she agreed to a meeting with herself, D.C., and her counsel, but that she would not agree to interviews of her other children. (*See id.*) Alvarez, however, "*refused*

_to agree not to go to the schools_" of the Minor Plaintiffs pursuant to Defendant's "policies that allowed her to conduct such interviews[.]" (_Id._ (emphasis in original).) Based on these allegations, Plaintiffs commenced the instant action.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs discovery of nonparties by subpoena. Fed. R. Civ. P. 45; _see also_ Fed. R. Civ. P. 30(a)(1) ("[A] deponent's attendance [at a deposition] may be compelled by subpoena under Rule 45"). The Advisory Committee Notes to Rule 45 state that "the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules," which in turn is the same as under Rule 26(b). Advisory Committee Notes to 1970 Amendment; Fed. R. Civ. P. 34(a). Federal Rule of Civil Procedure 26(b) allows a party to obtain discovery concerning "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); _see also Moon v. SCP Pool Corp._, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (noting "courts have incorporated relevance as a factor when determining motions to quash a subpoena"). "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries." _Gonzales v. Google, Inc._, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006) (internal quotation marks and citation omitted); _see also_ Fed. R. Civ. P. 26(b)(2)(C).

Rule 45 provides that "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). The question of "whether a subpoena is burdensome depends on the facts of the case." _Lillie v. ManTech Int'l. Corp._, No. 2:17-cv-02538-CAS-SSX, 2019 WL 653085, at *1 (C.D. Cal. Feb. 15, 2019) (quoting _Green v. Baca_, 226 F.R.D. 624, 653-54 (C.D. Cal. 2005), _order clarified_, No. CV 02-204744 MMM (MANx), 2005 WL 283361 (C.D. Cal. Jan. 31, 2005)). "[A] court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." _ATS Prod., Inc v. Champion Fiberglass, Inc._, 309 F.R.D. 527, 531 (N.D. Cal. 2015) (quoting _Gonzales,_

234 F.R.D. at 680); *see also Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014) ("In determining whether a subpoena poses an undue burden, courts weigh the burden to the subpoenaed party against the value of the information to the serving party." (internal quotations and citation omitted)). However, "if the sought-after [information is] not relevant . . . then *any burden whatsoever* imposed . . . would be by definition 'undue.'" *Compaq Computer Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995) (emphasis in original).

"[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs," and a court may quash a subpoena where the court determines that the same evidence could be obtained from a party to the litigation. *Amini Innovation Corp.*, 300 F.R.D. at 409-10; *see also Lemberg Law LLC v. Hussin*, No. 16-mc-80066-JCS, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016) ("The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." (citing *United States v. C.B.S., Inc.*, 666 F.2d 364, 371-72 (9th Cir. 1982))).

"The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Optimize Tech. Sols., LLC. v. Staples, Inc.*, No. 14-mc-80095-LHK (HRL), 2014 WL 1477651, at *2 (N.D. Cal. Apr. 14, 2014) (citation omitted). The party moving to quash the subpoena bears the "burden of persuasion" under Rule 45(d)(3). *Moon*, 232 F.R.D. at 637 (citations omitted). "[B]road discretion is vested in the trial court to permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see also Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) ("Rule 26(c) and Rule 45([d])(3) give ample discretion to district courts to quash or modify subpoenas causing 'undue burden.'").

A non-party moving to quash a subpoena may also seek a protective order under Federal Rule of Civil Procedure 26. *See* Fed. R. Civ. P. 45, Advisory Committee Notes, 1937 Adoption ("Under this amendment, the person subpoenaed may obtain the protection afforded by any of the orders permitted under Rule 30(b) [the provisions of Rule 30(b)

were transferred to Rule 26(c)] or Rule 45(b)."). Pursuant to Rule 26, a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," arising out of a discovery request. Fed. R. Civ. P. 26(c)(1); *see also* Fed. R. Civ. P. 26(b)(2)(C). District courts have "broad latitude" to issue a protective order. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002). The party seeking a protective order has the burden of proving "good cause," which requires a showing "that specific prejudice or harm will result" if the protective order is not granted. *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011).

## III. DISCUSSION

### A. Defendant's Arguments

On July 11, 2019, Defendant served a deposition subpoena on D.C., who is a minor and non-party to this case. (ECF Nos. 110-3; 113 at 3.) D.C. is currently seven years old. (ECF No. 110-1 at 2.) D.C. was three years old on January 19, 2016 when Defendant interviewed the Minor Plaintiffs. (*Id.*) Defendant contends that it is entitled to "broad discovery" (ECF No. 113 at 2), and that D.C. can testify as to the following:

- The veracity of the allegations contained in the County's child abuse reports (from 2013 to January 2016) that resulted in the interviews of the Minor Plaintiffs. (*Id.* at 2-3, 5-6; *see also* ECF No. 125.)

- The veracity of the allegations contained in child abuse reports made after the interviews of the Minor Plaintiffs on January 19, 2016. (ECF No. 113 at 2, 6.)

- His observations and perception of whether he and the Minor Plaintiffs were—and continue to be—at risk of abuse in the home. (*Id.* at 2, 6.)

- His observations and perception of whether the Minor Plaintiffs "are at risk of being interviewed again." (*Id.* at 6-7.) "For example, D.C. could testify about how often social workers visited the house or attempted to speak to his sisters." (*Id.*)

- Plaintiffs' damages, including their "alleged emotional distress." (*Id.* at 2, 7.) D.C. lives with Plaintiffs and attends "family counseling sessions" with the Minor Plaintiffs and therefore can testify to his "observations and perception of Plaintiffs' emotional state." (*Id.* at 7.) D.C. can also testify "to any communications between himself and Plaintiffs about their emotional state at home and during their therapy sessions." (*Id.*)

- Plaintiffs' possible biases against Defendant. (*Id.* at 2, 7.) D.C. "can testify to any negative or derogatory statements made by Plaintiffs" about Defendant. (*Id.* at 7.)

Defendant contends that D.C.'s testimony is relevant for the following reasons:

- To "prove or disprove Plaintiffs' contention that [the interviews of Minor Plaintiffs on January 16, 2016] were unreasonable." (*Id.* at 5.)

- To "understand *why* County social workers interviewed minor Plaintiffs and *why* they conducted those interviews at school." (*Id.*)

- It is "probative of Plaintiffs' claim that the County was 'well aware' that D.C.'s father made false reports about D.C. to the County's child abuse hotline and, therefore, did not have a legitimate reason to interview his siblings." (*Id.* at 6 (citing ECF No. 110-1 at 2).)

- To determine whether the injunctive relief sought (*i.e.*, restrictions on the County "from conducting future interviews to determine the children's safety") is warranted. (*Id.* at 6-7.)

- Impeachment (*e.g.*, testimony regarding Plaintiffs' possible biases against Defendant and Plaintiffs' alleged emotional distress). (*Id.* at 7.)

- Damages. (*Id.*)

Defendant points out that "Plaintiffs have not limited their discovery to *only* information about the January 19, 2016 interviews" but have instead "propounded interrogatories and requests for production of documents regarding all reports and

investigations dating from 2013 to the present." (*Id.* at 5.) Defendant argues that "the County should not be prevented from casting the same net to gather information." (*Id.* at 6.)

At the hearing on the motion, Defendant clarified that this discovery was necessary to refute Plaintiffs' contention that, not only are the allegations about abuse in the home false, but "the County should have known[,] or there was information that the County knew[,] that those allegations were false." (ECF No. 130 at 8.) Thus, the County asserts that it should be able to conduct discovery that may indicate the allegations were actually true. (*Id.* at 8-9.)

In an attempt to alleviate any harm to D.C., Defendant has agreed to limit the time of the deposition to one hour[2] and to conduct the deposition in a place that is comfortable to D.C. (ECF Nos. 113 at 4; 125 at ¶ 20.) In addition, Defendant does not oppose Williams' request to be present for D.C.'s deposition. (*Id.*)

### B. D.C.'s Arguments

D.C. moves to quash the deposition subpoena on the basis that it will likely cause him "serious psychological damage," and this psychological harm "far outweighs any possible benefit" to Defendant of the requested discovery. (ECF No. 110-1 at 3, 5, 8.) D.C. explains that in 2014, when he was only two years old, Defendant separated him from his mother and placed him in the Polinsky Children's Center. (*Id.* at 4.) The separation from his mother was "deeply traumatizing to D.C" and he has been diagnosed with severe trauma disorder stemming from this incident. (*Id.* at 4-5.) D.C. has been in consistent therapy since 2017. (*Id.* at 5.)

To his motion, D.C. attaches a declaration from Emily Kierce, Psy.D., who has been treating D.C. since September 2017. (ECF No. 110-4 at ¶ 2.) Dr. Kierce has a doctoral

---

[2] Although Defendant initially represented that it had agreed to limit the deposition to two hours, at the hearing, Defendant represented that it agrees to limit the deposition to one hour. (*See* ECF No. 130 at 31.)

degree in Clinical Psychology and has spent more than ten years working with children and their families. (*Id.* at ¶ 1.) Dr. Kierce states that "[w]hen D.C. encounters stressful situations (*e.g.*, being involved in a deposition), his psychological and behavioral state regresses from baseline to excessive fears, hoarding behavior (in regard to food), and verbal and physical outbursts." (*Id.* at ¶ 4.) She explains that "[s]tressful situations overwhelm [D.C.'s] ability to effectively manage his emotion and behavior" and "[b]oth the content and the process of a deposition would be distressing for him to understand and manage emotionally." (*Id.*) As a result, Dr. Kierce opines that "the deposition of D.C. will likely cause psychological decompensation that would reverse the positive impact of his treatment." (*Id.*) Dr. Kierce adds that "D.C. is not a child who utilizes much language to communicate" and "[u]nder stress, he shuts down and withdraws." (*Id.* at ¶ 5.) Therefore, Dr. Kierce opines that she does not believe D.C. "will speak openly about difficult issues, particularly with strangers." (*Id.*) Based on the foregoing, Dr. Kierce recommends that D.C. not be required to have his deposition taken (*id.* at ¶ 6), and D.C. argues that Defendant "is not likely to obtain useful information by deposing" him (ECF No. 110-1 at 3).

D.C. further argues that his testimony "is not remotely important in resolving the issues in this case." (ECF No. 110-1 at 8.) D.C. notes that he was not a witness to the interviews of his half-sisters, the Minor Plaintiffs, which took place at their schools when he was three years old. (*Id.* at 5, 9.) Therefore, he would have "nothing substantive" to say about the interviews. (*Id.* at 9.) Nor would D.C. be able to testify about the emotional reaction of his mother and half-sisters at the time of the January 2016 interviews, as he was only three years old at the time. (*Id.*) D.C. further contends that, as "an emotionally disturbed seven-year-old," he would not be "able to properly attribute or articulate the cause of any emotions he may have witnessed in his home" over the three and a half years that followed. (*Id.*) D.C. adds that the information sought by Defendant "is available from other, more competent and reliable" and "less fragile" sources. (*Id.* at 3, 10.) He notes that "[t]here are others, including adult members of the family, who can far better speak to the

emotional impact the interviews have had on the Minor Plaintiffs." (*Id.* at 9.) With respect to Plaintiffs' claim for injunctive relief, D.C. argues that he "will have no insight into his father's mindset or plans to continue his campaign of harassment" against Williams and her family, nor will he be able to testify regarding Defendant's policies, procedures, practices and/or customs. (*Id.* at 9-10.)

During the hearing on the present motion, the Court repeatedly inquired of Plaintiffs whether one of the issues in this case is that the County's conduct is wrongful because the County knew or should have known that D.C. was not being abused by his mother. Despite being given many opportunities to do so, Plaintiffs never disavowed that they were taking this position, and in fact, ultimately confirmed that this was their position and that this was an issue in the case, albeit a "subissue."[3] However, as with D.C., Plaintiffs nonetheless maintained that any inquiry into the veracity of the abuse allegations is irrelevant. Plaintiffs argue that this area of inquiry is irrelevant because Plaintiffs' position that the County knew or should have known that the abuse allegations were and are false is a "subissue" and not the main issue.[4] (*Id.* at 20.)

In supplemental briefing, D.C. now asserts for the first time that none of Plaintiffs' "claims or elements requires a showing that the County knew or should have known that

_____

[3]        The Court: As long as you are saying that part of the problem of the County's conduct is the fact that they knew or should have known that there was no abuse in this case, as long as that is part of your argument, the County – I may have to let the County do discovery on whether there was or wasn't abuse of this victim.

        Mr Cox: Well, your Honor, again, it is a subissue. . . .

(ECF No. 130 at 20.)

[4]        The main issues being whether the County's policy of interviewing minors in schools who are not suspected of being abused violated Plaintiffs' constitutional rights, and whether the County will undertake to interview the Minor Plaintiffs again if there are future allegations of abuse against D.C. (*Id.* at 13-15, 20.)

the allegations made by D.C.'s father about alleged physical abuse of D.C. were untrue."
(ECF No. 135 at 6.)  More importantly, in support of this supplemental briefing, D.C.
attaches a declaration of Plaintiffs' counsel, Donnie R. Cox, in which he states, under
penalty of perjury: "Plaintiffs' claims do not include or require proof that the County 'knew
or should have known' that D.C. was not being abused.  This is true for both Plaintiffs'
claims for damages arising out of the unconstitutional interviews, and Plaintiffs' claim for
injunctive relief."  (Declaration of Donnie R. Cox, ECF No. 135-1 ("Cox Decl.) at ¶ 5.)

### C. Analysis

Defendant cites several cases to support the proposition that it is "very unusual for a
court to prohibit the taking of a deposition altogether," even the deposition of a minor,
"absent extraordinary circumstances."  (ECF No. 113 at 9-11 (citations omitted).)
Conversely, Plaintiffs cite two cases in which the depositions of minors were precluded
and argue that Defendant's cases involve "children who were **parties** to the case and/or
who were competent, **percipient** witnesses to the events that were central to the litigation."
(ECF No. 110-1 at 10-11 (emphasis in original).)

In deciding what restrictions, if any, to impose on discovery directed to a young child
party or witness, courts compare "the hardship to the party [or person] against whom the
discovery is sought, if discovery is allowed, with the hardship to the party seeking
discovery if discovery is denied."  *Lamberth v. Clark Cnty. Sch. Dist.*, No. 2:14-cv-02044-
APG, 2015 WL 4076506, at *4 (D. Nev. July 1, 2015) (quoting *Arassi v. Weber-Stephen
Prod. LLC*, No. 13-CV-684, 2014 WL 1385336, at *2 (E.D. Wis. Apr. 9, 2014)).  In several
cases where the depositions of young children who were parties to the action have been
permitted to proceed, the courts determined, after weighing the considerations, that any
undue burden on the child was outweighed by the significance of the testimony to the party
seeking to depose them.  For example, in *Graham v. City of New York*, No. 08-cv-
3518(KAM) RML, 2010 WL 3034618 (E.D.N.Y. Aug. 3, 2010), the court determined that
although the minor plaintiff was four years old at the time of the underlying incident, his
testimony "regarding his state of mind is relevant to establishing the elements of his claims,

and essential to defendants' ability to discover facts necessary to their defense, whether through a motion for summary judgment or trial." *Id.* at *4. The *Graham* court specifically noted that the defense sought to depose the minor, who was a "party witness," in part, on a "critical and very meaningful" and "crucial" issue that "could prove essential to the defense." *Id.*; *see also Doe v. New Fairfield Bd. of Educ.*, No. 3:13CV1025 (WWE), 2014 WL 7271522, at *1-3 (D. Conn. Dec. 18, 2014) (permitting the deposition of a minor plaintiff who was in sixth grade at the time of the underlying incident because her testimony was relevant to *her* claim of damages and the causal relationship between the alleged conduct and claimed damages).

In *Arassi*, the court dealt with a motion to quash the deposition subpoenas of two minors, ages fourteen and ten (ages ten and six at the time of the underlying incident), who were *non-parties* to the lawsuit. *Arassi*, 2014 WL 1385336, at *1-2. The plaintiffs, who were the minors' parents, brought a personal injury action against the defendant claiming that the defendant's gas grill caused the victim-plaintiff a "permanent life-altering hand injury." *Id.* at 1. The plaintiffs asserted claims against the defendant for "past and future medical expenses, pain and suffering, loss of society and companionship, lost wages, and loss of future earning capacity." *Id.* In their pleadings, depositions, and disclosures, the plaintiffs "repeatedly maintained that part (if not most) of the damages in the case" stemmed from a significant alteration in the victim's family and home life. *Id.* The defendant sought to depose the plaintiffs' children, who were "in the home at the time" of the accident, about the accident and about their "observations of their parents before and after the accident and their family life before and after the accident." *Id.* In denying the motion to quash, the court noted that "the children are fact-witnesses as they were at home on the day of the accident" and "they may also possess information on changes in their home life, which plaintiffs have asserted as part of their claim." *Id.* at *3. The Court weighed this information against claims that participation in the lawsuit would be harmful to the mental and emotional health of the children, the subject matter of the deposition, and the possibility of setting limitations to address specific concerns. *Id.* at *2.

Similarly, in *Hamilton v. Southland Christian Sch., Inc.*, No. 6:10-cv-871-ORL-22DAB, 2011 WL 13143561 (M.D. Fla. Apr. 18, 2011), the plaintiff sued her former employer, a Christian school, for employment discrimination arising from her termination from the school after the administration learned she was pregnant and had conceived the child prior to marriage. *Id.* at \*1. The plaintiff also asserted a claim for invasion of privacy for public disclosure of private facts. *Id.* The school served deposition subpoenas on the plaintiff's two oldest children "under the theory that the children—not the School administration—spread the information of [the] [p]laintiff's pregnancy." *Id.* The children were eleven and twelve years old at the time of their mother's termination. *Id.* In moving to compel the depositions, the school argued that the plaintiff "put the matter into controversy with her invasion of privacy claim and the School is entitled to discover what the children told their classmates and teachers about their mother's relationship with her then-boyfriend in order to defend the invasion of privacy action against it." *Id.* at \*2. The school submitted the affidavit of two teachers who stated that, prior to the plaintiff's termination, the plaintiff's two children told them or their children that the plaintiff was pregnant before she was married. *Id.* The court determined that the depositions should go forward with appropriate restrictions in place. *Id.* at \*3. In doing so, the court noted that "[t]he great weight of the decisions permit a deposition when children are *parties or witnesses to the claims in dispute*, with reasonable restrictions." *Id.* (internal quotation marks omitted) (emphasis added) (collecting cases).

The Court takes the above considerations into account in analyzing the present motion to quash and for a protective order. The Court considers whether the requested information is relevant under Rule 26 and, if it is relevant, balances the hardship to D.C. if discovery is allowed and the hardship to Defendant if the discovery is denied. The Court also considers any reasonable restrictions that may be available.

1. <u>Accuracy of Child Abuse Reports About Minor D.C.</u>

Defendant seeks to depose D.C. about whether the child abuse reports that resulted in the interviews of the Minor Plaintiffs were accurate. This information is purportedly

17-cv-00815-MMA (JLB)

"relevant to prove or disprove *Plaintiffs' contention* that [the interviews of the Minor Plaintiffs] were unreasonable." (ECF No. 113 at 5 (emphasis added).) Specifically, the information is "probative of *Plaintiffs' claim* that the County was 'well aware' that D.C.'s father made false reports about D.C. to the County's child abuse hotline and, therefore, did not have a legitimate reason to interview his siblings." (*Id.* at 6 (citing ECF No. 110-1 at 2) (emphasis added).)

D.C. argues in response that such testimony is irrelevant because there is nothing before the Court suggesting that the *Minor Plaintiffs* were subject to abuse or neglect. (ECF No. 110-1 at 4; *see also* FAC at ¶¶ 24, 27.) Furthermore, as previously noted, D.C. argues in his supplemental brief that such testimony is irrelevant because none of Plaintiffs' "claims or elements requires a showing that the County knew or should have known that the allegations made by D.C.'s father about alleged physical abuse of D.C. were untrue." (ECF No. 135 at 6.) Although this was a point of contention during the hearing, in support of his supplemental brief, D.C. attached a declaration of Plaintiffs' counsel, Donnie R. Cox, in which he states, under penalty of perjury: "Plaintiffs' claims *do not include* or require proof that the County 'knew or should have known' that D.C. was not being abused. This is true for both Plaintiffs' claims for damages arising out of the unconstitutional interviews, and Plaintiffs' claim for injunctive relief." (Cox Decl. at ¶ 5 (emphasis added).)

Based on Mr. Cox's new representation under penalty of perjury that this is not an issue – or even a subissue – in this case, the Court finds that Defendant has not established the relevance of this requested testimony.

### 2. Other Proposed Subject Areas of the Deposition

Next, Defendant argues that D.C.'s testimony is relevant to understanding *why* the County's social workers interviewed the Minor Plaintiffs and *why* they interviewed them at the school, and whether the County was *aware* of the falsity of the reports made by D.C.'s father. However, Defendant does not explain how D.C.'s testimony is relevant to determining what the County's social workers did or did not believe, know, or understand

at the time of the interviews of the Minor Plaintiffs. Those are subjective questions that D.C. cannot answer.

Defendant further argues that D.C.'s testimony is relevant to Plaintiffs' claim for injunctive relief. Defendant contends that D.C. can testify as to his observations and perception of whether the Minor Plaintiffs are at risk of being interviewed again. As an example, Defendant states that "D.C. could testify about how often social workers visited the house or attempted to speak to his sisters." (ECF No. 113 at 6.) This type of information, however, is already in the possession of Defendant and can also be obtained from Plaintiffs. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant."); *Amini Innovation Corp.*, 300 F.R.D. at 409; *see also* Fed. R. Civ. P. 26(b)(2)(C)(i) (a court must limit the extent of discovery otherwise allowed if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"). To the extent Defendant intends to ask D.C. whether he believes he is at risk of abuse or allegations of abuse in the future, the Court finds that any purported relevance of such highly speculative testimony is heavily outweighed by the undue burden on D.C., given his age and current emotional state.

Next, Defendant contends that D.C.'s testimony is relevant to determining whether Plaintiffs have any biases against Defendant. Defendant contends that D.C. can testify as to whether Plaintiffs have made any negative or derogatory statements about Defendant. Evidence of bias is relevant to impeachment. *See United States v. Hankey*, 203 F.3d 1160, 1171 (9th Cir. 2000) ("Evidence is relevant to a matter of consequence to the determination of the case if it has a mere tendency to impeach a witness' credibility by a showing of bias or coercion."); *see also United States v. Abel*, 469 U.S. 45, 51 (1984) ("[I]t is permissible to impeach a witness by showing his bias under the Federal Rules of Evidence just as it was permissible to do so before their adoption."). Moreover, information "need not be

17-cv-00815-MMA (JLB)

admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Evid. 801, 802.

However, in this case, the potential relevance of any such testimony is slight given D.C.'s age and therefore his limited ability to comprehend his family's relationship with the County. Moreover, D.C. and his family have had numerous negative interactions with the County, starting when D.C. was two years old. As noted above, D.C. was removed from his mother's custody when he was two years old and his mother filed suit resulting in a judgment against the County. (ECF No. 110-1 at 4, n.3 (citing *Evans v. County of San Diego*, No. 15-cv-01870-MMA (NLS) (S.D. Cal.), at ECF No. 37).) D.C., through his Guardian ad Litem, also filed a proposed class action on behalf of himself and all others similarly situated concerning the allegedly unlawful physical evidentiary examinations conducted on D.C. and all other children who entered the Polinsky Children's Center. (*Id.* at 5 (citing *D.C. v. County of San Diego*, No. 15-cv-01868-MMA-NLS (S.D. Cal.)).) That case is currently pending review by the Ninth Circuit. (*Id.*) The present suit was subsequently filed in 2017. Therefore, Defendant seeks the testimony of a seven-year-old regarding any "negative or derogatory statements" made by his family members about the County stemming from interactions and lawsuits that commenced when he was approximately two years old. Even assuming that D.C. could testify about such statements, the same type of evidence is available in the public record or readily obtainable from the parties to this litigation. As D.C.'s statements would be of little added value, the Court again finds that any purported relevance of D.C.'s testimony on this topic is heavily outweighed by the undue burden on D.C.

Lastly, Defendant contends that D.C.'s testimony is relevant to Plaintiffs' damages claim. Defendant intends to ask D.C. about what happens during their family counseling sessions and his observations and perception of Plaintiffs' emotional state. As detailed in several prior discovery orders, Plaintiffs are seeking damages for emotional distress. Accordingly, testimony regarding their emotional state would be relevant. However, D.C. was three years old at the time of the interviews of the Minor Plaintiffs and therefore would

likely not be able to testify about the emotional reaction of his mother and half-sisters immediately after the event. (*See* ECF No. 110-1 at 9.)

Even if he were able to testify regarding Plaintiffs' emotional responses stemming from the underlying incident in this case, the Court agrees that D.C. likely would not be able to "properly attribute or articulate the cause of any emotions he may have witnessed" due to his age and current emotional state. (*Id.*) Therefore, the relevance and value of D.C.'s testimony on this point appears slight. Moreover, the Court notes that information regarding Plaintiffs' emotional distress will be available from the parties. Plaintiffs will be deposed on these claims, and the Court has ordered Plaintiffs to respond to interrogatories and produce documents which reflect mental or emotional health treatment received from healthcare providers for injuries that Plaintiffs attribute to the underlying incident. (*See* ECF No. 98 at 19.) Accordingly, any testimony D.C. may be able to provide regarding statements during family counseling sessions would be otherwise obtainable through Plaintiffs in discovery.

### D. Motion for Reconsideration

D.C. also moves for reconsideration of the Court's October 2, 2019 Minute Order requiring the parties to meet and confer regarding a location for D.C.'s deposition. (ECF No. 135.) D.C. moves for reconsideration under Federal Rule of Civil Procedure 60. (*Id.* at 3.) Defendant argues that D.C.'s Rule 60 motion is premature and procedurally improper, as no final order had been issued. (ECF No. 141 at 4-5.) Regardless of whether Rule 60 was the proper procedural rule under which D.C.'s motion for reconsideration of the Court's October 2, 2109 Minute Order should have been brought,[5] in light of the Court's ruling on D.C.'s motion to quash deposition subpoena and for protective order, the Court's order that the parties meet and confer regarding a location for the deposition of

---

[5] *See 88 Int'l Inc. v. Hartford Cas. Ins. Co.*, No. CV 13-09442-DMG (SHx), 2014 WL 12607693, at *2 (C.D. Cal. Mar. 17, 2014) (Rule 60(b) motion is procedurally improper and should be denied where no final order or judgment has issued).

D.C. is now moot. Accordingly, the motion for reconsideration is **GRANTED** and the parties are excused from meeting and conferring further on this issue.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** non-party minor D.C.'s motion to quash the deposition subpoena served on him by Defendant and for a protective order, and **GRANTS** non-party minor D.C.'s motion for reconsideration of the Court's October 2, 2019 Minute Order.

**IT IS SO ORDERED.**

Dated: November 13, 2019

Hon. Jill L. Burkhardt
United States Magistrate Judge

17-cv-00815-MMA (JLB)