**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KATY WILLIAMS, et al., <br><br> Plaintiffs, <br> v. <br> COUNTY OF SAN DIEGO, et al., <br><br> Defendants. | Case No.: 17-cv-815-MMA (JLB) <br><br> **ORDER: (1) DENYING DEFENDANT'S MOTION TO SEAL; AND (2) DENYING MINOR PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> [Doc. Nos. 184 & 193] |

On August 21, 2020, Plaintiffs A.C., Am.E., and Aa.E. ("Minor Plaintiffs") filed a motion for preliminary injunction. *See* Doc. No. 184. They seek to enjoin Defendant County of San Diego ("the County") from interviewing them at school absent specific allegations of abuse or neglect, parental consent, court order, or exigent circumstances. The County filed an opposition, to which Minor Plaintiffs replied. *See* Doc. Nos. 195, 198. The Court found this matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. *See* Doc. No. 196. For the reasons set forth below, the Court **DENIES** Minor Plaintiffs' motion for preliminary injunction.

# I. BACKGROUND

**A.    Child Abuse/Neglect Investigation**

Plaintiff Katy Williams ("Williams") is the natural mother of Minor Plaintiffs. *See* Doc. No. 24 ("FAC") ¶ 8. Williams has another minor child, D.C., who is not a plaintiff in this action. *See id.*

There is a long history of reports to the County regarding injuries and concerns of child abuse to D.C.[1]  In 2014, D.C.'s preschool director reported an injury to D.C.'s ear. *See* Doc. No. 182-1 at 9.[2]  After another unexplained injury in August 2014, D.C. was removed from Williams's care.  *See id.*  But ultimately Williams regained custody as the allegations of abuse against Williams were deemed "inconclusive."  *See id.* at 10.  Between November 2014 and January 2016, D.C.'s father—Jason Clark ("Clark")—made six reports to the County citing various injuries to D.C.  *See id.* at 10–12.  At some point after the fifth report, Williams obtained counsel and thereafter refused to allow the County's social workers to interview her children without counsel present.[3]  *See id.* at 11–12.  The sixth report, which occurred on January 17, 2016, spawned the investigation

---

[1] The parties do not discuss D.C.'s report history (or other relevant factual information) as it may relate to the instant motion for injunctive relief.  The parties do, however, incorporate by reference their respective motions for summary judgment.  *See* Doc. Nos. 184-1 at 12, 195 at 4.  As such, the Court will cite to the record, including the summary judgment motions, in this order.

According to the County, D.C. was listed as a victim on eleven referrals from 2013 and January 2016.  *See* Doc. No. 181-1 at 7.

[2] Citations to electronically filed documents generally refer to the pagination assigned by the CM/ECF system.

[3] The investigation that followed the fifth report is unclear.  Plaintiffs' allege that various social workers interviewed the Minor Plaintiffs in the presence of their paternal grandfather.  *See* FAC ¶ 16.  At some point, the social workers expressed an interest in interviewing Aa.E. alone, a request which Williams declined.  *See id.* at ¶ 19.  Williams's attorney then sent the County a letter explaining that Minor Plaintiffs were represented by counsel and that no interviews of them should take place without parental consent.  *See id.* at ¶ 20.  On January 11, 2016, social worker Lisette Alvarez contacted Williams and "reiterated her intent" to interview Williams and her children.  *See id.* at ¶ 29.  Williams indicated that she agreed to a meeting with herself, D.C., and her counsel, but that she would not agree to interviews of Minor Plaintiffs.  *See id.*

Minor Plaintiffs now say that one of the County's social workers interviewed Williams on January 8, 2016 but chose not to interview Minor Plaintiffs as a result of Williams's insistence on counsel being present.  *See* Doc. No. 182-1 at 11–12.

Nonetheless, the important fact is that at some point prior to the sixth report, the County became aware of Minor Plaintiffs' representation, and Williams's insistence that the County not interview Minor Plaintiffs without her consent and counsel present.

that led to this lawsuit and present motion. According to the sixth report, Clark reported a bruise on D.C.'s forehead and a cut on his lip. *See id.* at 12; Doc. No. 181-1 at 7. Based on the information obtained, the report identified Minor Plaintiffs as "at risk, sibling abused." Doc. No. 181-1 at 7.

**B.     Interviews of Minor Plaintiffs**

Against Williams's wishes, on the afternoon of January 19, 2016, the County's social workers interviewed Minor Plaintiffs at their school. *See* Doc. No. 184-1 at 8. FAC ¶¶ 22–23. Specifically, social worker Daniel Bernal ("Bernal") went to A.C.'s middle school and instructed staff to remove her from her classroom. *See id.* at ¶ 22. That same day, Bernal also visited Am.E. and Aa.E.'s elementary school, and "with the assistance of school staff, removed them from their classrooms." *Id.* at ¶ 23. Once the children were removed from their classrooms, Bernal and social workers Janet Barragan and Miriam Partida interviewed the children. It appears undisputed that these interviews were without parental presence or consent.[4] During the interviews, the social workers inquired about Minor Plaintiffs' safety at home, how their parents disciplined them, and whether D.C. "was an active child." *Id.* at ¶ 25. The interviews lasted between 15 to 30 minutes.[5] *See* Doc. No. 181-1 at 8.

Minor Plaintiffs now seek a preliminary injunction to enjoin the County from

---

[4] The failure to obtain parental consent was the instigating event that triggered this lawsuit. And the record reflects that it is undisputed. As will be discussed further *infra*, pending before the Court are cross motions for summary judgment. *See* Doc. Nos. 181, 182. Although the County does not concede the lack of parental consent in its briefing on this motion, it does so in response to Minor Plaintiffs' separate statement of facts. *See* Doc. No. 192-2 ¶ 85. The County also acknowledges that Minor Plaintiffs' parents were not present. *See* Doc. No. 189-1 ¶ 13 (Minor Plaintiffs do not dispute that "Aa.E., Am.E., and A.C. were interviewed alone by one social worker").

[5] Minor Plaintiffs do not allege the length of the interviews in any of their pending motions. The Court discerned from the County's motion for summary judgment that the parties dispute the actual length of the interviews. *See* Doc. No. 181-1 at 8 n.2 (commenting on the duration of the interviews that "[b]ecause these facts [] are in dispute, the County references Plaintiffs' version of the events for the purposes of this Motion for Summary Judgment only"). A factual determination however is not necessary at this time. The Court's reference is merely for context.

conducting any further interviews with Minor Plaintiffs at school absent specific allegations of abuse or neglect, parental consent, court order, or exigent circumstances.

## II. Legal Standard

A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 9 (2008). "A plaintiff seeking a preliminary injunction must establish that he is" (1) "likely to succeed on the merits," (2) "likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Id.* at 20. The Ninth Circuit employs a "'sliding scale' approach to evaluating the first and third *Winter* elements," which dictates that "a preliminary injunction may be granted when there are 'serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff,' so long as 'the other two elements of the *Winter* test are also met.'" *See Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011)). "Serious questions" are "substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988). "Serious questions need not promise a certainty of success, nor even present a probability of success, but must involve a fair chance of success on the merits." *Id.* (quotation marks omitted).

Further, "[i]n deciding a motion for preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (citing *Dymo Indus., Inc. v. Tapewriter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)). But, if a court does make factual findings or conclusions "when evaluating the merits of a preliminary injunction motion," those findings and conclusions "are not binding at trial on the merits." *See Purdum v. Wolfe*, No. C-13-04816 DMR, 2014 WL

171546, at *4 (N.D. Cal. Jan. 15, 2014) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).

### III. DISCUSSION

#### A. The County's Motion to Seal

On October 21, 2020, the County filed a motion to seal all exhibits submitted in support of its opposition to Minor Plaintiffs' motion. *See* Doc. No. 193. This was one of several motions to seal filed by the parties. *See, e.g.*, Doc. Nos. 178, 180, 190. The Court then issued an order requesting additional briefing. *See* Doc. No. 205. In its supplemental brief, the County indicated it no longer wished to seal these exhibits. *See id.* Although the County did not formally file a withdrawal on the docket, it indicated it intended to do so in its supplemental brief, *see id.*, and subsequently filed an amended lodgment of redacted exhibits. *See* Doc. No. 208. Accordingly, the Court **DENIES** the County's motion to seal its exhibits in opposition to this motion as **MOOT**.

#### B. Minor Plaintiffs' Motion for Preliminary Injunction

Minor Plaintiffs seek to enjoin the County from interviewing them at school absent "specific allegations of abuse or neglect concerning the specific child, . . . parental consent, a court order, or exigent circumstances." Doc. No. 184-1 at 10. As an initial matter, the Court notes the timing of this motion. This case has been progressing for over three years and is now in the dispositive phase, as both sides have moved for summary judgment. *See* Doc. Nos. 181, 182. Despite praying for preliminary injunctive relief "based upon separate application" in their First Amended Complaint, *see* FAC at ¶ 12, Minor Plaintiffs have not previously brought any such motion. Not only is the timing of the instant motion curious, but it is simply inapt as to A.C., who is now 18 years old and no longer in school. *See* Doc. No. 195 at 8. The request to prevent the County from interviewing her *at school* is therefore **MOOT** and so for that reason, the Court **DENIES** the motion as it relates to A.C.

With that in mind, the Court addresses each of the *Winter* factors as they relate to

Minor Plaintiffs Am.E. and Aa.E.[6]

### 1.     Likelihood of Success on the Merits

Minor Plaintiffs bear the burden of establishing the merits of their claim on a motion for preliminary injunction. *See JL Beverage Co., LLC v. Jim Bean Brands, Co.*, 828 F.3d 1098, 1105 (9th Cir. 2016). Yet their only argument in support of this key element is reference to their concurrently filed motion for partial summary judgment. *See* Doc. No. 184-1 at 12. This once again raises the Court's timing concern, albeit in a different way. The Court doubts the appropriateness of weighing the likelihood of Minor Plaintiffs' success on the merits while the parties' cross motions for summary judgment are under submission. As such, the Court proceeds with caution.

Minor Plaintiffs only seek summary judgment on, and a preliminary injunction related to, their Fourth Amendment claim. Because this claim is against the County under a theory of municipal liability, to succeed on the claim they must meet the standard set forth in *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Under *Monell*, Minor Plaintiffs must first establish that they were deprived of a constitutional right. *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)). To this point, Minor Plaintiffs argue the interviews constituted an unreasonable seizure in violation of the Fourth Amendment. "The Fourth Amendment protects a child's right to be free from unreasonable seizure by a social worker." *Dees v. Cty. of San Diego (In re Dees)*, 960 F.3d 1145, 1154 (9th Cir. 2020) (quoting *See Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 790-91 (9th Cir. 2016) (en banc)). That said, "[a] seizure triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or show of authority, in some way restrained the liberty of a citizen." *Capp v. Cty. of San Diego*, 940 F.3d 1046, 1059 (9th Cir. 2019) (quoting *Graham v. Connor*,

---

[6] For the sake of convenience, and because the *Winter* analysis is the same for Am.E. and Aa.E., the Court will continue referring to them collectively as "Minor Plaintiffs."

490 U.S. 386, 395 n.10 (1989)) (internal citation and quotation marks omitted).

> "When the actions of the [official] do not show an unambiguous intent to restrain or when an individual's submission to a show of governmental authority takes the form of passive acquiescence . . . a seizure occurs if, 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Brendlin v. California*, 551 U.S. 249, 255, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007) (quoting *United States v. Mendenhall*, 446 U.S. 544, 55 4, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)). Whether a person is seized for purposes of the Fourth Amendment is a mixed question of law and fact. *United States v. Cormier*, 220 F.3d 1103, 1110 (9th Cir. 2000). Whether a person is being compelled to answer an official's questions, rather than freely consenting to answer them, is a question of fact. *United States v. Ryan*, 548 F.2d 782, 789 (9th Cir. 1976).

*Dees*, 960 F.3d at 1154.  Here, because the persons alleging a seizure are minors, the reasonable person standard is adjusted to that of a reasonable child in their position. *See Shuey v. Cty. of Ventura*, No. 2:14-cv-9520-ODW (SHx), 2015 U.S. Dist. LEXIS 148993, at *23 (C.D. Cal. Nov. 3, 2015) ("[A] reasonable child in his position would not believe that he was free to leave.").

Minor Plaintiffs' claim that a seizure occurred throughout the interviews—based on the social workers' conduct—is arguably strong.  For example, Minor Plaintiffs testified that the social workers did not tell them they were free to decline the interview. *See* Doc. No. 182-1 at 19.  For that same reason, Minor Plaintiffs have also set forth a credible argument that the seizure was unreasonable, in which case they will be able to demonstrate a constitutional violation.  However, they face an uphill battle with the third *Monell* element.  In order to meet the fourth element, Minor Plaintiffs must show that either a policy, custom, or practice was the moving force behind the constitutional deprivation. *See Monell*, 436 U.S. at 694.  The interviews were undisputedly initiated

pursuant to the County's policy on interviewing a child at school (the "Policy").[7] *See* Doc. No. 182-5. The Policy provides several safeguards that social workers are supposed to employ when interviewing children to ensure the child feels free to leave or end the interview at any time. *See id.* at 1 ("The S[ocial ]W[orker] will: advise the child that (s)he may stop the interview at any time and periodically check with the child during the interview to determine if (s)he is comfortable with continuing the interview."). Here, if the social workers deviated from the Policy when conducting the interviews—as Minor Plaintiffs contend in support of the first element of their *Monell* claim—the third element fails because the Policy could not have been the moving force behind the alleged constitutional deprivation.

Seemingly recognizing this, Minor Plaintiffs appear to have abandoned this theory of *Monell* liability. Instead, they seek summary judgment on the ground that the Policy is facially unconstitutional. They assert that the mere act of removing children, who are not suspected victims, from their classrooms absent parental consent, court order, or exigent circumstances constitutes an unreasonable seizure. *See* Doc. No. 182-1 at 18 ("There, [Minor Plaintiffs] were led to a room where a County social worker informed the girls that they needed to talk to them. *This is the point where the seizure occurred*.") (emphasis in original); *see also id.* at 19 ("The minute that the children were removed from their classrooms, at the behest of the social workers, *the seizure was complete*.") (emphasis in original); *see id.* at 21 ("Without reasonable cause to suspect that the minor Plaintiffs were ever, at any time, abused or neglected and without exigent circumstances, warrant, court order, or parental consent, *it was not reasonable for the County social workers to seize them*.") (emphasis added).

The Court will not delve further into the facts—disputed or otherwise—or further

---

[7] Minor Plaintiffs only allege the Policy as the moving force behind the purported Fourth Amendment violation. They reference the County's practices as "consistent with the policies," but they do not allege that any deviation from the Policy was a custom or practice. *See* Doc. No. 182-1 at 26.

analyze Minor Plaintiffs' *Monell* claim as it would be inappropriate at this stage of the litigation. Instead, for the purpose of this motion, the Court assumes that Minor Plaintiffs are likely to succeed on the merits of their claim that the Policy is unconstitutional absent the requirement of parental consent, court order, or exigent circumstances. Accordingly, the Court weighs this factor in their favor.

### 2. Irreparable Harm in the Absence of Preliminary Relief

"Plaintiff bears the burden of demonstrating that an injunction is necessary in order to prevent it from suffering irreparable harm." *San Diego Bev. & Kup v. United States*, 997 F. Supp. 1343, 1347 (S.D. Cal. 1998). Further, Plaintiffs must demonstrate irreparable harm to *themselves*, not the community as a whole. *See Immigrant Legal Res. Ctr. v. City of McFarland*, Nos. 20-16580, 20-16557, 2020 U.S. App. LEXIS 33645, at *6–7 (9th Cir. Oct. 26, 2020) (finding that the District Court abused its discretion when it "focused its irreparable harm analysis on the prospect of harm to third parties" because "[t]he standard for preliminary injunctions[] requires irreparable harm to the plaintiffs themselves").

Minor Plaintiffs argue that "an alleged constitutional infringement will often alone constitute irreparable harm." *Associated Gen. Contractors, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991) (quoting *Goldie's Bookstore v. Superior Ct.*, 739 F.2d 466, 472 (9th Cir. 1984)). The Court agrees that a constitutional injury—including alleged Fourth Amendment violations—may satisfy the irreparable harm component of this factor. *See, e.g.*, *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501 (9th Cir. 1996) ("Indeed, this circuit has upheld injunctions against pervasive violations of the Fourth Amendment."). But *Associated Gen.* states that this is a presumption. *See Associated Gen.*, 950 F.2d at 1412. And as such, the presumption may be overcome. The *Goldie's Bookstore* case, which *Associated Gen.* relied on, declined to impose the presumption because the underlying constitutional claim was "too tenuous." *Goldie's Bookstore*, 739 F.2d at 472. As the Court has already explained, it will not analyze the strength of Minor Plaintiffs' Fourth Amendment claim at this juncture.

Therefore, the Court cannot determine if the presumption is warranted.  In any event, the Court assumes for the instant purposes that Minor Plaintiffs' purported harm is irreparable.

But that is not the end of this element's analysis.  "Under *Winter*, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction."  *Alliance*, 632 F.3d at 1131; *see also Enyart v. Nat. Conference of Bar Exam'rs*, 630 F.3d 1153, 1165 (9th Cir. 2011) ("Mere possibility of harm is not enough.").  Minor Plaintiffs argue that a pattern or policy establishes that repetition is likely.  *See* Doc No. 184-1 p. 13.  But their supporting cases, such as *Armstrong* and its progeny, discuss this in the context of standing where a plaintiff seeks a system-wide injunction.  *See Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001); *see also Los Angeles v. Lyons*, 461 U.S. 95 (1983); *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1236 (9th Cir. 2001); *La Duke v. Nelson,* 762 F.2d 1318, 1324 (9th Cir. 1985); *Gordon v. City of Moreno Valley*, 687 F. Supp. 2d 930, 938 (C.D. Cal. 2009).  Minor Plaintiffs are not seeking system-wide relief.  They are seeking a preliminary injunction that is specific to them.  And so Minor Plaintiffs' cases are distinguishable, and their argument is unpersuasive.  Minor Plaintiffs must allege or demonstrate a continuing, present harm to them stemming from their experience with the County's prior conduct.

No one can predict if there will be further reports of abuse to D.C. and thus the need to interview Minor Plaintiffs.  That said, the subject interviews were isolated occurrences.  *See* Doc. No. 195 p. 7.  They took place nearly five years ago.  *See id.*  And no interviews have been conducted since.  *See id.*  There is only one alleged past wrong to each Minor Plaintiff that has any bearing on whether there is a real and immediate threat of repeated injury.  Moreover, Minor Plaintiffs have waited over three years since the inception of this litigation to seek this form of preliminary relief.[8]  Their delay

---

[8] Minor Plaintiffs' delay in filing this motion, while simultaneously arguing that future harm is, and has been, inevitable, seems somewhat disingenuous.  They assert that Defendant will "continue to violate

undermines the immediacy of any harm.  In fact, it affirmatively weighs against a finding that imminent harm is likely.  *See Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."); *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."); *Estrada v. Blythe St. Apartments, L.P.*, No. CV 16-6823 PA (AFMx), 2016 U.S. Dist. LEXIS 197870, at *5-6 (C.D. Cal. Dec. 2, 2016) ("A plaintiff's delay in seeking relief weighs against granting a temporary restraining order or preliminary injunction."); *Hi-Rise Technology, Inc. v. Amateurindex.com*, 2007 U.S. Dist. LEXIS 46850, 2007 WL 1847249, at *4 (W.D. Wash. June 27, 2007) ("Such a long delay in seeking relief weights against granting a temporary restraining order or a preliminary injunction.").

This element considers the urgency of the need for equitable relief.  It is Minor Plaintiffs' burden.  *See, e.g.*, *Feldman v. Reagan*, 843 F.3d 366, 375 (9th Cir. 2016).  And they have not satisfied the Court that any harm—even if irreparable—is likely to occur in the absence of an injunction.  Consequently, the second factor weighs against issuing a preliminary injunction.

### 3. Balance of Equities

According to Minor Plaintiffs, "the County's continued unconstitutional harm far outweighs any administrative hardship the County will face in correcting its policy."  Doc. No. 184-1 at 14.  But again, the Court reminds Minor Plaintiffs that they are not here seeking a system-wide injunction.  Nor are they asking the County to preliminarily correct the Policy as a whole.  Minor Plaintiffs are requesting temporary suspension of the Policy as it relates to them.  Minor Plaintiffs proffer no other argument.

---

minor Plaintiffs' rights without court intervention."  Doc. No. 184-1 at 6.  But that is simply not the case.  There has been no further contact between Defendant and Minor Plaintiffs since 2016.  *See* Doc. No. 195at 7.

As a starting point, this element appears to be neutral.  Minor Plaintiffs will suffer minimal harm, if any, absent an injunction because as history has shown, the likelihood of the County conducting future interviews of them is incredibly low.  Similarly, if an injunction is granted, the County will suffer minimal harm adjusting its application of the Policy as to Minor Plaintiffs.

That said, the Court cannot ignore the potential harm to Minor Plaintiffs if the Court issues the requested relief.  While they may not have been suspected victims on past reports, they were identified as "at risk."  Doc. No. 181-1 at 7.  It is possible they have witnessed, or will witness, abuse of one of their siblings.  An injunction would restrict the County's ability to interview them and thus could negatively impact the investigation—one that would undoubtedly benefit them as well.  As the County explains, it "has a serious and legitimate interest in being able to interview children privately during the court of abuse and neglect investigations to ensure that the child is provided with an environment where she can express herself freely and openly without any undue pressure by an alleged perpetrator or representative of the alleged perpetrator."  Doc. No. 195 p. 9.  The Court agrees.  The equities require that the County be able to follow the Policy and interview Minor Plaintiffs should the need arise unless and until it is determined that additional safeguards are needed.  Consequently, the balance of equities tips in the County's favor.

The Court is well-aware of Plaintiffs' repeated assertion that Clark's prior reports have been false as part of an alleged scheme of retaliation against Williams.  *See, e.g.*, Doc. No. 182-1 p. 10.  Even if this is true, the County cannot ignore reports merely because prior ones—even if many—turned out to be meritless.  The purpose of the County's child protective services is to protect children.  And undoubtedly, interviewing Minor Plaintiffs, as siblings living within the home of a potential victim, one on one, is necessary to properly explore claims of child abuse.

Accordingly, Minor Plaintiffs have not shown that the balance of equities tips in their favor.  In fact, the Court is of the view that the balance tips against them.  This

factor therefore weighs against issuing a preliminary injunction.

### 4. Public Interest

There is no greater harm than injury or death to an innocent child. The public has a great interest in protecting children—including D.C.—from child abuse and neglect. Investigations necessarily include speaking with potential victims and witnesses without oversight by their parents or guardians, whether the accused or not. To issue the requested injunction now—prior to a full adjudication of Minor Plaintiffs' claim—would irresponsibly ignore the reality that children may be afraid or unwilling to admit to witnessing abuse while in the presence of potential abusers, parents who are unaware of the abuse, or parentally hired attorneys. Surely this is contrary to public interest. Therefore, Minor Plaintiffs have not shown that suspending the Policy as to them in the interim will serve the public interest. And the Court's view is that it does not. Consequently, this factor also weighs against issuing a preliminary injunction.

In sum, even assuming Minor Plaintiffs are likely to succeed on their Fourth Amendment *Monell* claim, all of the remaining *Winter* elements weigh against issuing a preliminary injunction. Further, even if the Court concluded that Minor Plaintiffs' Fourth Amendment claim raises serious questions, as explained above, the balance of hardships does not tip in their favor. *See Ass'n des Eleveurs*, 729 F.3d at 944. Accordingly, Minor Plaintiffs are not entitled to a preliminary injunction.

## IV. CONCLUSION

Based on the foregoing, the Court **DENIES** Minor Plaintiffs' motion for preliminary injunction.

**IT IS SO ORDERED.**

Dated: December 11, 2020

HON. MICHAEL M. ANELLO
United States District Judge