1
2
3
4
5
6
7
8
9

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATY WILLIAMS, et al.,<br><br>                                   Plaintiffs,<br>v.<br>COUNTY OF SAN DIEGO, et al.,<br><br>                                  Defendants. | Case No.:  17-cv-815-MMA (JLB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;**<br><br>[Doc. No. 181]<br><br>**DENYING MINOR PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Doc. No. 182] |

        Katy Williams and Gary Evans ("Adult Plaintiffs"), as well as minors A.C., Am.E.,
and Aa.E., by and through their Guardian ad Litem, John Garter ("Minor Plaintiffs," and
collectively with Adult Plaintiffs, "Plaintiffs") bring this action against the County of San
Diego (the "County") asserting civil rights violations pursuant to 42 U.S.C. § 1983.[1]  *See*
Doc. No. 24 ("FAC.").  The County moves for summary judgment in its entirety.  *See*

---

[1]  The initial Complaint also named San Diego Health and Human Services Agency, Daniel Bernal, Janet Barragan, and Miriam Partida as defendants.  *See* Doc. No. 1.  The Court previously determined that the individual defendants were entitled to qualified immunity.  *See* Doc. No. 23.  Moreover, San Diego Health and Human Services Agency was improperly named.  *See* Doc No. 29 at 1 n.1.  The County remains as the only defendant.

Doc. No. 181.  Minor Plaintiffs seek partial summary judgment on their Fourth Amendment claim.  *See* Doc. No. 182.  Both parties filed oppositions and replies.  *See* Doc. Nos. 189, 192, 197, 199.  The Court found this matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1.  *See* Doc. No. 196.  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the County's motion for summary judgment and **DENIES** Minor Plaintiffs' motion for partial summary judgment.

## I. BACKGROUND[2]

### A.    Factual History

Williams is the natural mother of Minor Plaintiffs.  *See* Doc. No. Doc. No. 182-3 ("Minor Plaintiffs' Separate Statement" or "MPSS") No. 1.  Evans is the natural father of Am.E. and Aa.E. and "acts in all respects as the father of minor Plaintiff A.C."[3]  MPSS No. 2.  Williams has another minor child, D.C., who is not a plaintiff in this action.  *See* MPSS No. 1.

Between 2013 and January 2016, D.C. was listed as a victim on eleven Emergency Response Referrals to the County.  *See* Doc. No. 181-2 ("Defendant's Separate Statement" or "DSS") No. 8.  One report in particular is of consequence.  On January 17, 2016, the County received a report from D.C.'s father, which generated an Emergency Response Referral stating that D.C. had a bruise on his forehead and a cut on his lower lip (the "ERR").  *See* DSS Nos. 1, 2.  The ERR also stated that D.C. resided with Williams and Minor Plaintiffs.  *See* DSS No. 4.  Minor Plaintiffs were listed under "Victim Information" as being "at risk, sibling abused."  Doc. No. 213-30; *see also* DSS

---

[2] These material facts are taken from the parties' separate statements of undisputed facts and responses thereto, as well as the supporting declarations and exhibits.  Facts that are immaterial or not genuinely disputed for purposes of resolving the current motions are not included in this recitation.  To the extent any such facts are nevertheless relevant to the Court's analysis, they are discussed as appropriate, *infra*.

[3] This is one example of many occasions upon which the parties purport to dispute factual statements based upon undoubtedly true information.  *See, e.g.*, Doc. No. 192-2 (Def. Response to MPSS No. 2).  To the extent the parties dispute a fact but do not explain their basis for doing so, the Court presumes that the fact is undisputed.

No. 6.  As part of the ERR investigation, the County sought to interview Minor Plaintiffs.

### 1.    The Interviews

On January 19, 2016, the County's social workers Miriam Partida ("Partida") and Daniel Bernal ("Bernal" and with Partida, the "Social Workers") went to Minor Plaintiffs' schools.  *See* MPSS No. 74.  Partida was assigned to interview Aa.E. and Am.E.  *See* MPSS No. 73; DSS No. 10.  Bernal was assigned to interview A.C.  *See* DSS No. 11; MPSS No. 73.  The Social Workers were alone at the respective schools; no law enforcement personnel accompanied them.  *See* DSS No. 14.  They did not have parental consent to speak with Minor Plaintiffs.  *See* MPSS No. 84.  Nor did they have a court order or warrant.  *See* MPSS No. 86.

Upon arrival, the Social Workers introduced themselves to school officials.  *See* MPSS No. 74.  In addition to introducing himself, Bernal presented the County's form letter (the "Letter").  *See* Doc. No. 213 ("Bernal Depo") at 21:5–9; *see also* Doc. No. 182-6.[4]  The Letter states that the County representative is permitted to enter school property to investigate child abuse claims.  *See* Doc. No. 182-6.  The Social Workers then asked for permission to speak with Minor Plaintiffs, *see* Bernal Depo at 64:12–16; Doc. No. 213-1 ("Partida Depo") at 39:7–18, and school officials removed Minor Plaintiffs from their classes.  *See* Bernal Depo at 40:9–14; Partida Depo at 164:19–24; DSS No. 12.

It is unclear what took place next.[5]  But as will be explained in greater detail

---

[4] Citations to deposition transcripts generally refer to the pagination assigned by the reporter of the deposition, as well as the corresponding line numbers.

[5] The parties attempt to disregard the factual disputes concerning what took place during the interviews.  But there is contradictory evidence before the Court.  For example, according to Minor Plaintiffs' Separate Statement, "[i]t is *disputed* whether the County social workers informed the girls they were free to decline the interview."  MPSS No. 89 (emphasis added).  Of course, this is inappropriately included as a statement of undisputed material fact.  In any event, the County responds that this "confirms that key facts are disputed and actually highlights that there is a genuine issue of material fact supporting the County's contention why summary judgment in favor of Minor Plaintiffs' Motion for Partial Summary Judgment should be denied."  *Id.*  Despite acknowledging this factual dispute, the County then states as an undisputed fact that "[t]he social worker did not explain to AaE., Am.E., or A.C. that the interview was voluntary."  DSS No. 16.  In turn, Minor Plaintiffs do not genuinely dispute this statement.  *See* Doc. No. 189-1 (MP Response to DSS No. 16).

below, Minor Plaintiffs have narrowed their claim to the events immediately before and including the moment they were removed from their classrooms. All subsequent events—disputed or not—are immaterial.

### 2. The Policy

In 2016, the County had a policy on interviewing children at school (the "Policy"). *See* Doc. No. 185-2. The Policy provides, in relevant part:

> CWS SWs are authorized to interview a suspected victim of child abuse during school hours and to conduct the interview on school grounds.
>
> A SW may interview a child who may be a victim of abuse or neglect without a parent's consent. (This may include other children in the referred family since they may be potential victims.) However, a child who is **not** an alleged victim or member of the referred family **cannot** be interviewed without a parent's consent.
>
> When interviewing a child in the course of an investigation of abuse or neglect, the SW must conduct the interview in such a way as to protect the child's legal and implied personal rights. The SW will:
> - advise the child of the right to have school personnel present during the interview
> - advise the child that (s)he may stop the interview at any time and periodically check with the child during the interview to determine if (s)he is comfortable with continuing the interview. If the child says to stop, then the SW will immediately terminate the interview
> - not include law enforcement in the interview
> - complete the interview within developmentally-appropriate time limits, which will never exceed 60 minutes.

---

Minor Plaintiffs' deposition testimony supports Defendant's Separate Statement No. 16. *See, e.g.*, Doc. No. 202-4 ("Aa. E. Depo") at 60:22–25, 61:1–11; Doc. No. 202-5 ("Am. E. Depo") at 75:23–25, 76:1–2; Doc. No. 202-6 ("A.C. Depo") at 46:11–13. But Bernal testified that he told A.C. that the interview was voluntary and that she did not have to do the interview. *See* Bernal Depo at 135:13–16. Partida similarly testified that she told Aa.E. she could end the interview at any time. *See* Partida Depo at 53:12–14. Therefore, there are clearly factual disputes about what occurred during the interviews. However, as explained *infra*, these disputes are ultimately immaterial under Minor Plaintiffs' theory of recovery.

Policy at 1 (emphasis in original).  Similarly, Step 7 of the County's procedure for interviewing a child at school provides the same:

> Interview the child per existing policies and procedures.
>
> Additionally, the SW will:
> - ensure that the interview with the child does not exceed 60 minutes
> - advise the child that (s)he can have school personnel present during the interview, document that the child was given a choice according to PC 11174.3, and document the child's choice
> - if the child asked for school personnel to be present, advise that person that the information must be kept confidential and that there are penalties for unauthorized disclosure of the information
> - advise the child that (s)he can stop the interview at any time
> - not have law enforcement present during the interview.

Policy at 3.  Thus, pursuant to the Policy, in order to interview a child—who lives with a suspected abuse or neglect victim—at school, a social worker need only obtain the school's and the child's permission.  *See* Doc. No. 210 at 75, Def. Ex. 11 at 122:16–20.

## B.   Procedural History

On January 12, 2018, Plaintiffs filed the operative First Amended Complaint.  *See* FAC.  They assert two "causes of action."  The first "cause of action" actually contains five separate claims based on alleged violations of Plaintiffs' First, Fourth, and Fourteenth Amendment rights brought pursuant to *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ("*Monell* claims").  The second "cause of action" seeks injunctive relief.

The Court pauses here to parse out the specific *Monell* claims against the County. First, Minor Plaintiffs claim that the "policy of seizing and detaining children at school without exigent circumstances (imminent danger of serious bodily harm), court order and/or the knowledge, consent or presence of their parents or legal guardian" violates their Fourth Amendment rights.  FAC at ¶ 31(a).

1    Second, Adult Plaintiffs allege that the "policy of seizing and detaining children at

2    school without exigent circumstances (imminent danger of serious bodily harm), court

3    order and/or the knowledge, consent or presence of their parents or legal guardian"

4    violates their Fourteenth Amendment right to familial association. *Id.*

5    Third, Minor Plaintiffs allege that "[t]he policy of causing minor children to be

6    interviewed at school without Court Order, parental consent, parental knowledge,

7    parental presence, and without just and reasonable cause violates the minor Plaintiffs'

8    Fourth Amendment right against unreasonable searches and seizures." *Id.* at ¶ 31(b).

9    Fourth, Adult Plaintiffs claim that "[t]he policy of causing minor children to be

10   interviewed at school without Court Order, parental consent, parental knowledge,

11   parental presence, and without just and reasonable cause" violates their Fourteenth

12   Amendment right to familial association. *Id.*

13   Fifth, Plaintiffs claim that "[t]he policy of retaliating against individuals who

14   exercise their constitutional right including to object to, refuse, and/or complain about the

15   actions of the COUNTY, HHSA, and/or their social workers violates the Plaintiffs First

16   Amendment right to assert their freedom of speech rights including the right to object to,

17   refuse, and complain about the conduct and threats and interference by the COUNTY,

18   HHSA, and their social workers." *Id.* at ¶ 31(c).

19   The first four claims are repetitive and the fifth is moot.[6]  Upon further review of

20   the entire record, it is clear that Minor Plaintiffs bring a Fourth Amendment claim based

21

22

23   [6] In opposition to the County's second motion to dismiss, Plaintiffs indicated that they wished to
24   withdraw "all of their First Amendment claims in the First Amended Complaint." Doc. No. 26 at 2 n.1.
     As such, neither party seeks summary judgment as to this claim.  However, Federal Rule of Civil
     Procedure 41(a) "does not allow for piecemeal dismissals.  Instead, withdrawals of individual claims
25   against a given defendant are governed by [Rule] 15, which addresses amendments to pleadings." *Hells
     Canyon Pres. Council v. United States Forest Serv.*, 403 F.3d 683, 687 (9th Cir. 2005) (citing *Ethridge
26   v. Harbor House Restaurant*, 861 F.2d 1389 (9th Cir. 1988)).  "Federal Rule of Civil Procedure 15(a) is
     the appropriate mechanism where a plaintiff desires to eliminate an issue, or one or more but less than
27   all of several claims, but without dismissing as to any of the defendants." *Ethridge*, 861 F.2d at 1392
     (internal quotation marks omitted).  Accordingly, the Court construes Plaintiffs' withdrawal of this
28   claim as a stipulated constructive amendment to the FAC.

on their physical removal from class.  And Adult Plaintiffs bring a Fourteenth Amendment familial association claim.  The County moves for summary judgment in its favor as to all of Plaintiffs' claims.  *See* Doc. No. 181.  Minor Plaintiffs seek summary judgment as to their Fourth Amendment claim.  *See* Doc. No. 182.

## II. LEGAL STANDARDS

### A.    Summary Judgment

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party."  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  A fact is material if it could affect the "outcome of the suit" under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  *See id.*

If the moving party meets its burden, the nonmoving party must go beyond the pleadings and, by its own evidence or by citing appropriate materials in the record, show by sufficient evidence that there is a genuine dispute for trial.  *See Celotex*, 477 U.S. at 324.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . ."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  A "scintilla of evidence" in support of the nonmoving party's position is insufficient; rather, "there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Anderson*, 477 U.S. at 252.

1  Moreover, "a party cannot manufacture a genuine issue of material fact merely by
2  making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio*
3  *Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

4       Where cross-motions for summary judgment are at issue, the court "evaluate[s]
5  each motion separately, giving the nonmoving party in each instance the benefit of all
6  reasonable inferences." *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th
7  Cir. 2006) (citations omitted).  That said, "the court must consider each party's evidence,
8  regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v.*
9  *Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).  "When opposing parties tell two different
10 stories, one of which is blatantly contradicted by the record, so that no reasonable jury
11 could believe it, a court should not adopt that version of the facts for purposes of ruling
12 on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

13 **B.    Section 1983 Liability**

14      Section 1983 provides that "[e]very person who, under color of any statute,
15 ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be
16 subjected, any citizen of the United States . . . to the deprivation of any rights, privileges,
17 or immunities secured by the Constitution and laws, shall be liable to the party injured."
18 42 U.S.C. § 1983.

19      A local governmental entity "may not be sued under § 1983 for an injury inflicted
20 solely by its employees or agents.  Instead, it is when execution of a government's policy
21 or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be
22 said to represent official policy, inflicts the injury that the government as an entity is
23 responsible under § 1983." *Monell*, 436 U.S. at 694.  In order to establish liability for
24 governmental entities under *Monell*, a plaintiff must prove: (1) that the plaintiff possessed
25 a constitutional right of which he was deprived; (2) that the municipality had a policy;
26 (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional
27 right; and (4) that the policy is the moving force behind the constitutional violation.
28 *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Plumeau v. Sch.*

*Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).  A single occurrence of unconstitutional action by a non-policy making employee is insufficient to establish the existence of an actionable municipal policy or custom.  *See Davis v. City of Ellensburg*, 869 F.2d 1230, 1233–34 (9th Cir. 1989).  "Only if a plaintiff shows that his injury resulted from a permanent and well settled practice may liability attach for injury resulting from a local government custom."  *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989) (quotations omitted).  "Where a plaintiff claims that the municipality has not directly inflicted injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable for the actions of its employee."  *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 405 (1997).

### III. EVIDENTIARY OBJECTIONS

Minor Plaintiffs have submitted a declaration by Attorney Donnie R. Cox (the "Cox Declaration") and several exhibits in support of their opposition to the County's summary judgment motion.  *See* Doc. No. 189.  The County subsequently filed three evidentiary objections.  *See* Doc. No. 200.  First, the County objects to Paragraph 2 in the Cox Declaration, asserting it is irrelevant, lacks foundation, and contains hearsay.  Second, the County objects to Exhibit 1 to the Cox Declaration, claiming it is irrelevant, lacks foundation, and has been properly authenticated.  And finally, the County objects to Paragraph 3 of the Cox Declaration on the grounds that it is irrelevant and lacks foundation.  Plaintiffs did not oppose or otherwise respond to the County's evidentiary objections.

Having reviewed the objections and related evidence, the Court concludes that individual rulings on these objections are unnecessary at this time.  As the Ninth Circuit recently explained:

> To begin, objections for relevance are generally unnecessary on summary judgment because they are "duplicative of the summary judgment standard itself."  *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D.

Cal. 2006)).   On summary judgment, a court must determine whether the evidence viewed in the light most favorable to the non-moving party creates a "genuine dispute as to any material fact" that must be resolved at trial.  Fed. R. Civ. P. 56(a).   And under Federal Rule of Evidence 401, evidence is relevant if it "has any tendency to make a fact more or less probable" and that fact "is of consequence in determining the action." Fed. R. Evid. 401.  Putting these two standards together, if evidence submitted on summary judgment could create a genuine dispute of material fact, it is, by definition, "of consequence in determining the action," and therefore relevant.   *Id.* Conversely, if the submitted evidence does not create a genuine dispute of material fact, there is no need for the court to separately determine whether it is relevant because, even assuming it is not, it will not affect the ultimate summary judgment ruling.

*Sandoval v. Cty. of San Diego*, No. 18-55289, 2021 U.S. App. LEXIS 866, at *14–15 (9th Cir. Jan. 13, 2021).  Consequently, "parties briefing summary judgment motions would be better served to 'simply argue' the import of the facts reflected in the evidence rather than expending time and resources compiling laundry lists of relevance objections." *Id.* at *15 (quoting *Burch*, 433 F. Supp. 2d at 1119).  Moreover,

> "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form.   We instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *see* Fed. R. Civ. P. 56(c)(2).  If the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment. *Fraser*, 342 F.3d at 1036–37 (holding that the plaintiff's diary could be considered on summary judgment because she could testify consistent with its contents at trial).

*Id.* at *16.

The Court, in performing its duty on summary judgment, weighs the relevancy of all evidence and concludes that none of the County's evidentiary objections are material to this ruling.  *See Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (explaining that on summary judgment, the District Court "must also rule on evidentiary

objections that are material to its ruling"). Accordingly, the Court declines to rule on the objections at this juncture. If necessary, these objections can be addressed via motion in limine, or at trial.

## IV. DISCUSSION

### A.   *Monell* Claims

Minor Plaintiffs move for summary judgment on their Fourth Amendment claim. And the County seeks summary judgment in its entirety. The Court addresses each *Monell* claim separately.

#### 1.   Minor Plaintiffs' Fourth Amendment Claim

Both parties move for summary judgment on Minor Plaintiffs' Fourth Amendment claim. "[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Riverside Two*, 249 F.3d at 1136 (quoting 10A Charles Alan Wright, et al., Federal Practice and Procedure § 2720, at 335–36 (3d ed. 1998)). "If, however, the cross-motions are before the court at the same time, the court must consider the evidence proffered by both sets of motions before ruling on either one." *Buffin v. City & Cty. of S.F.*, No. 15-cv-04959-YGR, 2019 U.S. Dist. LEXIS 34253, at *27 (N.D. Cal. Mar. 4, 2019) (citing *Riverside Two*, 249 F.3d at 1135–36). Accordingly, the Court considers each motion in turn.

##### i.   Minor Plaintiffs' Motion

Minor Plaintiffs argue that a constitutional violation occurred when the Social Workers had them removed from class. *See* Doc. No. 182-1. They claim that this action, taken without parental consent, court order, or exigent circumstances, constitutes an unreasonable seizure under the Fourth Amendment. *See id.* at 19. According to Minor Plaintiffs, what transpired during the interviews is immaterial because "[t]he minute that

1    the children were removed from their classrooms, at the behest of the social workers, *the*

2    *seizure was complete*."[7]   *Id.* (emphasis in original).

3            The Court first considers whether a constitutional violation occurred.  *See*

4    *Dougherty*, 654 F.3d at 900 (citing *Plumeau*, 130 F.3d at 438).  "The Fourth Amendment

5    protects a child's right to be free from unreasonable seizure by a social worker."  *Dees v.*

6    *Cty. of San Diego (In re Dees)*, 960 F.3d 1145, 1154 (9th Cir. 2020) (quoting *See*

7    *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 790–91 (9th Cir. 2016) (en banc)).

8            It is undisputed that on January 19, 2016, Partida went to Aa.E. and Am.E.'s

9    school and Bernal went to A.C.'s school.  *See* DSSF No. 10–11.  Both Bernal and Partida

10   introduced themselves as social workers and requested to see Minor Plaintiffs.  *See*

11   MPSS No. 74; Bernal Depo at 164:12–16; Partida Depo at 39:7–18.  Bernal also

12   presented school officials with the Letter.[8]  *See* Bernal Depo at 21:5–9.  The Letter stated

13   that he was "permitted to enter school property to investigate child abuse pursuant to

14   Penal Code § 11174.3."[9]  *See* Doc. No. 182-6.  School officials then removed Minor

15

16

17

18   [7] Minor Plaintiffs originally alleged that an unreasonable seizure occurred throughout the interviews
     based on the Social Workers' conduct.  *See, e.g.*, FAC ¶ 26.  Depositions were taken to advance this
19   theory.  *See, e.g.*, Aa. E. Depo at 60:22–25, 61:1–11; Am. E. Depo at 75:23–25, 76:1–2; A.C. Depo at
     46:11–13.  However, Minor Plaintiffs' own deposition testimony undermined their *Monell* claim—
20   specifically, as will be discussed *infra*, the "moving force" element.  This is likely why on summary
     judgment, they have significantly narrowed the factual universe and altered their theory accordingly.
21   [8] There is no evidence that Partida presented the Letter upon her arrival.  *See* MPSS No. 75.
     [9] Minor Plaintiffs argue that presenting the Letter, which references California Penal Code § 11174.3,
22   was improper.  *See* Doc. No. 182-1 at 21–22.  Namely, they contend that the Policy's provision of
     offering the Letter in connection with interviewing other children within the home of a suspected victim
23   unconstitutionally applies the statute.  *See id.* at 22 n. 8.  As an initial matter, the constitutionality of the
     statute, either facially or as applied, is not properly before the Court.  That said, the Court agrees that the
24   statute permits interviews of suspected victims of child abuse at school but makes no mention of other
     children within the home, and is silent on the question of parental consent, judicial authorization, exigent
25   circumstances, or any other Fourth Amendment safeguard.  *See* Cal. Pen. Code § 11174.3.  However,
     Minor Plaintiffs make this argument preemptively; the County does not assert that section 11174.3—or
26   any other Penal Code provision for that matter—provides a justification for the interviews.  Moreover,
     as explained *infra*, the Court declines to draw a distinction between the child with physical injuries and
27   thus identified as the primary victim, and the other children within the home.

28

1    Plaintiffs from their classrooms and brought them to the front offices.  *See* Bernal Depo

2    at 40:9–14; Partida Depo at 164:19–24.

3         Regardless of whether school officials felt obligated or merely acquiesced to the

4    request, they retrieved Minor Plaintiffs at the Social Workers' behest.[10]  Common sense

5    dictates that a reasonable child would not have felt free to decline or otherwise resist

6    going to the front office with a school official.  *See Neel v. Cty. of San Diego*, No. 18-

7    CV-1764 W (MSB), 2019 U.S. Dist. LEXIS 70261, at *10-11 (S.D. Cal. Apr. 25, 2019)

8    ("The children in question were two and three years old. It goes without saying that a

9    reasonable two-year-old or three-year-old would not have felt free to leave while being

10   questioned by a state actor outside the presence of parents.").  Therefore, the Court

11   concludes that Minor Plaintiffs were seized when they were removed from their

12   classrooms for the purpose of an interview with the Social Workers.

13        That said, not all seizures are unconstitutional: only those that are unreasonable.

14   *See Brower v. County of Inyo*, 489 U.S. 593, 599 (1989) ("Seizure alone is not enough for

15   § 1983 liability; the seizure must be unreasonable.").  As such, the Court next considers

16   the reasonableness of these seizures.  Minor Plaintiffs argue that the seizures were per se

17   unreasonable absent parental consent, court order, or exigent circumstances.  This issue—

18   whether these safeguards are necessary in all instances to ensure compliance with the

19

20   _____

21   [10] Minor Plaintiffs state that the removal was done "[a]t the behest and instruction of the social

22   workers."  MPSS No. 76.  The County disputes this conclusory narrative of events.  *See id.*  But it
     cannot reasonably be disputed that school officials removed Minor Plaintiffs at the Social Workers'

23   request.  *See* Bernal Depo at 164:12–16 ("I identified myself.  I presented myself and I asked for
     permission to talk to the children – child, I am sorry.  [A.C.] in this case."); Partida Depo at 39:7–18 ("I

24   introduced myself, that I was a social worker…and asked if I could see two students in that school.").

25        Further, it is unclear what part the Letter played in the schools' decisions to remove Minor
     Plaintiffs from class.  Nonetheless, it is immaterial.  There is no evidence or argument that but for the

26   Letter, school officials would not have removed Minor Plaintiffs from class.  Regardless of whether
     Partida presented the Letter, school officials removed Aa.E. and Am.E. from their classrooms at her

27   request.  The County does not, and cannot, dispute this.  *See* MPSS No. 74; *but see* MPSS No. 76.  The
     Court therefore concludes that with or without presentation of the Letter, a seizure occurred.  How

28   exactly the Social Workers presented the request to school officials is irrelevant.

1    Fourth Amendment—appears to be unresolved in this circuit.  However, the Court finds

2    that the cases of *Greene* and *Dees* are instructive.

3           In *Greene v. Camreta*, 588 F.3d 1011 (9th Cir. 2009), the Ninth Circuit explored

4    "whether an in-school seizure and interrogation of a suspected child abuse victim is

5    always permissible under the Fourth Amendment without probable cause and a warrant

6    or the equivalent of a warrant." *Id.* at 1022.  The circuit court stated unambiguously that

7    "[o]nce the police have initiated a criminal investigation into alleged abuse in the home,

8    responsible officials must provide procedural protections appropriate to the criminal

9    context." *Id.* at 1030.  Consequently, it assessed the specific facts of the warrantless

10   seizure.  *See id.* at 1022–23.  Ultimately, the court found that the special needs doctrine

11   did not apply and therefore, absent probable cause or a warrant, the seizure was

12   unreasonable and thus unconstitutional.  *See id.* at 1033.  The Supreme Court, however,

13   vacated this particular portion of the Ninth Circuit's decision.  *See Camreta v. Greene*,

14   563 U.S. 692, 695 (2011).  This stripped *Greene* of its precedential influence and paved

15   the way for relitigation.[11]

16          The issue was then relitigated in *Dees*.  In *Dees*, the District Court determined as a

17   matter of law that a minor was unreasonably seized during an in-school interview absent

18   "warrant, court order, parental consent, exigency, or at the very least, reasonable

19   suspicion." *Dees*, 960 F.3d at 1151.  The Ninth Circuit reversed and remanded this issue

20   for a new trial.  *See id.*  The reversal suggests that parental consent, court order, or

21   exigent circumstances are not necessary as a matter of law to preserve a child's Fourth

22   Amendment rights.  That is not to say that such safeguards are never necessary.  Rather,

---

24   [11] The Court also notes that the facts in *Greene* are distinguishable.  In *Greene*, there was an ongoing
25   police investigation into the minor's father.  *See Greene*, 588 F.3d at 1127.  Seemingly as a direct
     consequence, a deputy sheriff accompanied the social worker in the interview of the minor, in full
26   uniform, with a visible firearm.  *See id.*  Here, Bernal and Partida were not accompanied by law
     enforcement when they requested to see Minor Plaintiffs.  *See* DSSF No. 14.  And Plaintiffs do not
27   argue that there were ongoing criminal investigations or that the Social Workers' investigation was
     inextricably connected to a criminal law enforcement purpose.  These distinguishing factors, as well as
28   the vacatur, render *Greene* instructive but not dispositive of the constitutional issue in this case.

1    the reasonableness of interviewing a minor in the absence of these protections must be

2    determined on a case-by-case basis.  Put another way, if the Ninth Circuit had been

3    convinced that regardless of the particular facts these additional safeguards are

4    constitutionally required, the District Court's holding in this respect would have remained

5    untouched.  Therefore, absent clear precedent establishing that the requested safeguards

6    are constitutionally required to preserve a child's Fourth Amendment rights, the Court

7    turns to the particular facts of this case to assess the reasonableness of the seizures at

8    issue.

9         The Court first determines the appropriate standard.  Minor Plaintiffs are correct

10   that the relaxed reasonableness standard, as outlined in *New Jersey v. T.L.O.*, 469 U.S.

11   325 (1985), does not apply.  *See, e.g.*, *Rabinovitz v. City of L.A.*, 287 F. Supp. 3d 933,

12   958–59 (C.D. Cal. 2018) (declining to apply the lesser constitutional standard outlined in

13   *T.L.O.* and explaining that it is only applicable in situations necessary to maintain order

14   and discipline on school grounds).  And it is undisputed that the County did not have

15   parental consent, a court order, or exigent circumstances to interview Minor Plaintiffs.[12]

16   Therefore, the Court applies the traditional Fourth Amendment reasonableness standard:

17   "the ultimate test of a seizure's reasonableness entails a balancing of the governmental

18   interest which justifies the intrusion and the level of intrusion into the privacy of the

19   individual."  *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1496 (9th Cir.

20   1996) (citing *Michigan Dept. of State Police v. Sitz,* 496 U.S. 444, 448–49 (1990)).

21        Minor Plaintiffs do not brief this balancing test.  Nonetheless, the Court has

22   considered if—and the extent to which—the seizures intruded upon Minor Plaintiffs'

23   privacy and concludes that any intrusion was minimal if at all existent.  A school official

---

[12] Minor Plaintiffs state that no exigent circumstances existed at the time of the interviews, *see* Doc. No. 182-1 at 21, and the County does not argue otherwise.  Further, while D.C.'s injury may have been serious in nature, there is no evidence suggesting that either D.C. or Minor Plaintiffs were at imminent risk of serious bodily harm.  *See Kirkpatrick v. Cty. of Washoe*, 792 F.3d 1184, 1193 (9th Cir. 2015) (discussing exigent circumstances sufficient to justify a seizure in the context of removing a child from the home).

1   removed Minor Plaintiffs from class and brought them to the front office.  Although

2   being removed from class might be embarrassing and even disruptive, there is evidence

3   that this type of occurrence was common and not atypical.  *See* Doc. No. 207 Exhibit E

4   ("Presson Depo") at 11:19–21, 36:4–6.  Therefore, any privacy intrusion was minimal.

5          Further, the County's interest in protecting children from abuse and adequately

6   investigating claims of abuse and neglect greatly outweighs any minor intrusion on Minor

7   Plaintiffs' privacy.  Here, the Social Workers had a report of a head injury concerning

8   Minor Plaintiffs' sibling, D.C.  *See* Bernal Depo at 107:13–23.  This is undoubtedly a

9   serious concern.  Moreover, the report indicated that D.C. had a "barrage of injuries in

10  the recent months," *see* Doc. No. 213-38 at 1, which led Bernal to suspect Plaintiff

11  Williams of abuse.[13]  *See* Bernal Depo at 94:5–9.  Williams had previously refused to

12  allow Bernal to interview Minor Plaintiffs in an environment that he deemed necessary to

13  adequately investigate these claims.  *See* Bernal Depo at 94:5–13.  And importantly, the

14  report listed Minor Plaintiffs as "at-risk" under victim information.  *See* Doc. No. 213-30.

15  Construing the limited factual universe in the light most favorable to the County, no

16  reasonable jury would conclude that it was unreasonable to remove Minor Plaintiffs from

17  class to merely ask if they wanted to be interviewed.[14]  Therefore, Minor Plaintiffs'

18  Fourth Amendment rights were not violated when the Social Workers had them removed

19  from class.[15]  Absent an underlying constitutional violation, there can be no *Monell*

20  liability.  *See Lockett v. Cty. of L.A.*, 977 F.3d 737, 741 (9th Cir. 2020) (explaining that

---

[13] Plaintiffs dispute the veracity of the referrals, *see* DSS No. 8, but do not dispute that there were eleven referrals over a three-year period.

[14] Whether they were in fact interviewed is immaterial under Minor Plaintiffs' narrowed theory of liability. *See* Doc. No. 182-1 at 19 ("The minute that the children were removed from their classrooms, at the behest of the social workers, *the seizure was complete*.") (emphasis in original).

[15] That is not to say that a child's rights may never be violated when taken from class to be interviewed by social workers.  But each instance must be evaluated on a case-by-case basis.  The analysis may well include consideration of the report instigating the investigation, the social worker's discussion with the school regarding the need to see the child, and the social worker's conduct during the interview.  But that is not before the Court now.  As explained above, Minor Plaintiffs have limited the seizure to the events that occurred before they came face-to-face with the Social Workers.

1   *Monell* claims are "contingent on a violation of constitutional rights").  Accordingly, the

2   Court **DENIES** Minor Plaintiffs' motion for summary judgment as to their Fourth

3   Amendment claim.[16]

4          ii.     **The County's Motion**

5          In moving for summary judgment on Minor Plaintiffs' Fourth Amendment claim,

6   the County argues that it is not liable under *Monell* for the Social Workers' conduct

7   during the interviews.  As explained above, Minor Plaintiffs abandoned this theory of

8   liability.  Moreover, they do not substantively oppose the County's motion on this

9   ground.[17]  As such, the Court concludes that Minor Plaintiffs had "a full and fair

10  opportunity to ventilate" their arguments and chose not to.[18]  *See Ramirez v. City of*

───────────────

12  [16] Further, to the extent Minor Plaintiffs ask the Court to draw a legal distinction between a child

13  identified as the primary suspected victim and other children in the home that are "at risk," *see* Doc. No.
    182-1 at 26, the Court will not.  Importantly, Minor Plaintiffs provide no support for this argument.  And

14  as a practical matter, such a distinction is inappropriate.  The County's reporting process, as evidenced
    by the Policy and numerous reports in evidence, makes it clear that all children within the home

15  identified on a report are of the County's concern.  *See, e.g.*, Doc. No. 213-30 (identifying Minor
    Plaintiffs under "Victim Information").  While it may be true that only one child has the reported

16  injuries, all are within the scope of harm.  *See* Policy at 1.  Moreover, reports of abuse raise a genuine
    question of neglect.  Although D.C. is listed as the victim of physical abuse, Minor Plaintiffs were often

17  listed under victim information, and sometimes the abuse category was for "general neglect" or
    "emotional abuse."  *See* Doc. Nos. 213-10, 213-15, 213-21, 213-23, 213-24, and 213-26, and 213-30.

18  Neglect and emotional abuse would not show the same injuries that often cause reporting.  It would be
    unreasonable to require social workers to affirmatively determine from one report that other children

19  within the home are not victims and thus subject to a different standard for interviews.  Consequently,
    the Court declines to make the requested distinction.

20
    [17] In opposition, Minor Plaintiffs do not address what occurred during the interviews.  *See* Doc. No. 189

21  at 24–25 ("Here, the seizure began when the social workers misrepresented to the school that they had
    authority to enter school property to interview the girls, and instructed the school to pull the children out

22  of their classrooms.  None of these minor girls felt like they were free to refuse to go to the office, much
    less free to leave the interview once they were confronted by the social workers in the room."); ("County

23  social workers instructed school officials to remove the minor Plaintiffs from their classrooms and bring
    them to the office.").

24
    [18] The Court notes that this decision was likely a strategic one.  Minor Plaintiffs' own testimony of what

25  occurred during the interviews undermined their claim.  Taking Minor Plaintiffs' versions of events as
    true, Bernal and Partida deviated from the Policy by failing to: (1) inform Minor Plaintiffs that the

26  interview was voluntary (DSS No. 16); (2) asking Minor Plaintiffs if they wanted school personnel
    present (DSS No. 17); (3) inform Minor Plaintiffs that they could stop the interview at any time (DSS

27  No. 18).; and (4) check in with Minor Plaintiffs during the interview to ensure they were comfortable
    (DSS No. 19).  Thus, even if the Social Workers' conduct under this theory amounted to an

28

*Buena Park*, 560 F.3d 1012, 1026 (9th Cir. 2009) (explaining that a party abandons an issue when it "has a full and fair opportunity to ventilate its views" on it and instead "removes the issue from the case"); *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 (9th Cir. 2005) (per curiam) (noting that a party abandoned claims it did not defend in summary judgment opposition).  Therefore, the County is entitled to judgment accordingly.  *See Rankine v. Roller Bearing Co. of Am.*, No. 12-CV-2065-MMA (BLM), 2013 U.S. Dist. LEXIS 158515, at *19 (S.D. Cal. Nov. 5, 2013) ("Yet, this is an entirely new theory of liability, and one that was not pleaded in [the] counterclaim . . . . On this basis alone, the Court could award summary judgment in Plaintiffs' favor.").  And as discussed above, no reasonable jury could find that the removal of Minor Plaintiffs from their classrooms violated their Fourth Amendment rights.  Consequently, the Court **GRANTS** summary judgment in favor of the County as to Minor Plaintiffs' Fourth Amendment claim.

### 2.    Adult Plaintiffs' Fourteenth Amendment Claim

The County moves for summary judgment on Adult Plaintiff's Fourteenth Amendment claim.  "The Fourteenth Amendment's Due Process Clause protects parents' well-established liberty interest in the 'companionship, care, custody, and management of [their] children.'"  *James v. Rowlands*, 606 F.3d 646, 651 (9th Cir. 2010) (citing *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27 (1981)) (noting that the importance of this right is "plain beyond the need for multiple citation").  "This same standard applies to all due process right to familial association claims, whether the actions that caused the alleged violation were taken by a law enforcement officer, or a social worker."  *Alberici v. Cty. of L.A.*, No. CV 12-10511-JFW (VBKx), 2013 U.S. Dist. LEXIS 146362, at *53–55 (C.D. Cal. Oct. 9, 2013) (citing *Kulya v. City & Cty. of San Francisco*, 2008 U.S. Dist. LEXIS 73952 (N.D. Cal. Sept. 26, 2008)).

---

unreasonable seizure, the *Monell* claim would fail as the Policy could not have been the driving force behind the constitutional violation.

That said, this constitutional right is not absolute.  *See Mueller v. Auker*, 700 F.3d 1180, 1186 (9th Cir.2012); *Woodrum v. Woodward, etc.*, 866 F.2d 1121, 1125 (9th Cir. 1989) ("The interest of the parents must be balanced against the interests of the state and, when conflicting, against the interests of the children.").  "[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Lewis*, 523 U.S. at 846.  Thus, to allege a Fourteenth Amendment violation premised on the unlawful interference with familial rights, a plaintiff must demonstrate that "the harmful conduct [ ] 'shocks the conscience' or 'offend[s] the community's sense of fair play and decency.'" *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) (quoting *Rochin v. California*, 342 U.S. 165, 172–73 (1952)).

In *Porter v. Osborn*, 546 F. 3d 1131 (9th Cir. 2008), the Ninth Circuit "clarif[ied] the standard of culpability" for due process right to familial association claims:

> The parties mistakenly suggest that the choice is between "shocks the conscience" and "deliberate indifference" as the governing standard, when in fact the latter is one subset of the former.  The Supreme Court has made it clear, as the district court correctly recognized, that only official conduct that "shocks the conscience" is cognizable as a due process violation. The relevant question on the facts here is whether the shocks the conscience standard is met by showing that Trooper Osborn acted with deliberate indifference or requires a more demanding showing that he acted with a purpose to harm Casey for reasons unrelated to legitimate law enforcement objectives. In our cases following the Supreme Court's enunciation of the shocks the conscience test in *Lewis*, we have distinguished the "purpose to harm" standard from the "deliberate indifference" standard, recognizing that the overarching test under either is whether the officer's conduct "shocks the conscience."

*Id.* at 1137 (internal citations omitted).  "The type of conduct which is most likely to rise to the conscience-shocking level is conduct intended to injure in some way unjustifiable by any government interest.  Conduct which was not intentional, but rather was deliberately indifferent, may nevertheless rise to the conscience-shocking level in some

1   circumstances." *Willard v. Calif. Dep't of Corrections & Rehab.*, No. 1:14-cv-760-BAM,
2   2014 U.S. Dist. LEXIS 169582, at *12 (E.D. Cal. Dec. 5, 2014) (internal citations and
3   quotation marks omitted).

4         Whether the deliberate indifference standard or the purpose to harm standard
5   applies turns on the facts of the case. *See Duenez v. City of Manteca*, No. CIV. S-11-
6   1820 LKK/KJN, 2013 U.S. Dist. LEXIS 179927, at *47 (E.D. Cal. Dec. 23, 2013). The
7   purpose to harm standard generally applies only to situations where a government actor
8   must make "snap judgments because of an escalating situation" because actual
9   deliberation is not practical. *See Gantt v. City of Los Angeles*, 717 F.3d 702, 707 (9th
10  Cir. 2013) (quoting *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)). But where
11  actual deliberation is practical, an actor's deliberate indifference may suffice to shock the
12  conscience. *See Gantt*, 717 F.3d at 707.

13        The purpose to harm standard does not apply here. *See Duenez*, 2013 U.S. Dist.
14  LEXIS 179927, at *48 ("[T]he 'purpose to harm' standard is appropriate for situations
15  involving high-speed car chases, shoot-outs, and armed suspects."). On January 8, 2016,
16  Williams explicitly prohibited Bernal from interviewing Minor Plaintiffs without an
17  attorney present—a condition that was reiterated via follow-up letter from Williams'
18  attorney. *See* MPSS No. 54. Eleven days later and after consulting with County
19  personnel, the Social Workers went to Minor Plaintiffs' schools for the interviews.
20  Deliberation was therefore practical and admittedly occurred. *See* Bernal Depo at 94:2–
21  13. Consequently, the Court considers whether the decision to interview Minor Plaintiffs
22  was deliberately indifferent to Adult Plaintiffs' Fourteenth Amendment rights in a
23  manner that shocks the conscience.

24        "As an initial matter, the Ninth Circuit has previously stated that '[r]ecovery for a
25  violation of the right to familial association is generally contingent on the existence of an
26  underlying constitutional violation.'" *A.B. v. Cty. of San Diego*, No. 18cv1541-MMA-
27  LL, 2020 U.S. Dist. LEXIS 182507, at *73–74 (S.D. Cal. Oct. 1, 2020) (quoting *Schwarz*
28  *v. Lassen Cty. ex rel. Lassen Cty. Jail*, 628 F. App'x 527, 528 (9th Cir. 2016)); *see also*

1    *Gausvik v. Perez*, 392 F.3d 1006, 1008 (9th Cir. 2004); *J.P. ex rel. Balderas v. City of*

2    *Porterville*, 801 F.Supp.2d 965, 988 (E.D. Cal. 2011) ("Where a claim for interference

3    with familial relationships is integrally predicated upon, or entwined with, other conduct

4    that is alleged to be unconstitutional, a finding that the other conduct was constitutional

5    generally will preclude recovery for interference with familial relationship.").  This

6    claim, however, appears to be independent of Minor Plaintiffs' unreasonable seizure

7    claim in that it rests heavily on the County's decision to interview Minor Plaintiffs

8    against Williams' wishes.  Therefore, the Court analyzes the merits of Adult Plaintiffs'

9    claim.

10          Neither side has pointed to any case where a social worker's temporary seizure of a

11   child on a school campus and during school hours interfered with a parent's familial due

12   process rights.  Nor have the parties cited case law discussing these familial rights more

13   broadly in the context of temporary questioning of a minor, on-campus or otherwise.

14   Indeed, it appears that such rights are recognized primarily in the context of removal of

15   parental custody, parental status determinations, or death.  *See Kelson v. City of*

16   *Springfiled*, 767 F.2d 651, 654–55 (9th Cir. 1985) (discussing parental due process rights'

17   roots in Supreme Court and Ninth Circuit precedent, and pointing to cases in which

18   officials moved the child out of state, state terminated parental status for unfitness, and

19   state agent killed child).  When presented with this question, another district court in this

20   circuit rejected a minor plaintiff's section 1983 claim for interference with the parent-

21   child relationship, noting that the Ninth Circuit has "only considered [parent-child

22   relationship rights] impaired in situations such as the death of a child, the loss of parental

23   rights, or the loss of contact or custody with the child."  *E.H. v. Brentwood Union Sch.*

24   *Dist.*, No. C13-3243 TEH, 2013 U.S. Dist. LEXIS 158482, at *6–7 (N.D. Cal. Nov. 4,

25   2013) (first citing *Kelson v. Springfield*, 767 F.2d 651, 654–55 (9th Cir. 1985); and then

26   citing *Ram v. Rubin*, 118 F.3d 1306, 1310 (9th Cir. 1997)); *see also Rabinovitz v. City of*

27   *L.A.*, 287 F. Supp. 3d 933, 950 (C.D. Cal. 2018).

28

1    That said, the Ninth Circuit's recent decision in *Dees* is instructive.  There, a

2  mother claimed the county violated her Fourteenth Amendment rights when it

3  interviewed her child at school.  *See Dees*, 960 F.3d at 1153.  The district court granted

4  judgment in favor of the mother as a matter of law.  Ultimately, the circuit court reversed,

5  explaining that the holding in *Capp* barred her from successfully pursuing this claim.  *Id.*

6  (citing *Capp v. Cty. Of San Diego*, 940 F.3d 1046 (9th Cir. 2019)).  "*Capp* plainly holds

7  that a cause of action does not lie where the social worker is accused of seizing a child

8  and the parent has not 'actually lost' control over the child."  *Id.* (citing *Capp*, 940 F.3d at

9  1060).  Thus, the first question is whether Adult Plaintiffs actually lost control over

10  Minor Plaintiffs.

11    Unlike in *Dees* and *Capp*, Williams clearly communicated how she intended to

12  control and manage her children during the County's investigation.  It is undisputed that

13  Williams told Bernal that Minor Plaintiffs were represented by counsel and that no

14  interviews of them should take place without their attorney present.  *See* MPSS No. 54.

15  After eleven days and discussions among various County personnel, the decision was

16  made to interview Minor Plaintiffs nonetheless.  *See* Doc. No. 207 at 97:5–10.  Based on

17  Williams' explicit prohibition against interviews, a reasonable jury could determine that

18  Adult Plaintiffs lost actual control of Minor Plaintiffs—namely, the right to care, control,

19  and manage them—when the Social Workers proceeded to interview them against her

20  wishes.  Similarly, viewing all available facts in the light most favorable to Adult

21  Plaintiffs, a reasonable jury could find that the Social Workers acted with deliberate

22  indifference to Adult Plaintiffs' familial rights in a conscience-shocking manner.

23  Consequently, the Court determines that there is a material triable issue as to whether a

24  constitutional violation occurred.  The Court therefore **DENIES** the County's motion in

25  this respect.

26  **B.    Injunctive Relief**

27    The County also seeks summary judgment on Plaintiffs' second "cause of action,"

28  a request for injunctive relief.  Injunctive relief is "an extraordinary remedy that may only

be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008). To obtain injunctive relief, "a plaintiff must show that he has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with the 'sufficient likelihood that he will again be wronged in a similar way.'" *Canatella v. State of California*, 304 F.3d 843, 852 (9th Cir. 2002). As explained above, the only remaining claim is Adult Plaintiffs' Fourteenth Amendment due process claim. Therefore, the Court only considers whether under the evidence in the summary judgment record, injunctive relief may ultimately be appropriate as a remedy for the purported violation of Adult Plaintiffs' Fourteenth Amendment right to familial association. *See SourceAmerica v. SourceAmerica*, No. 3:14-cv-00751-GPC-AGS, 2018 U.S. Dist. LEXIS 80991, at *14 (S.D. Cal. May 14, 2018). Because Adult Plaintiffs hold the burden at trial, they also have the burden of demonstrating that the allegedly unlawful conduct will occur in the future in order to obtain injunctive relief. *See Armstrong v. Davis*, 275 F.3d 849, 860–61 (9th Cir. 2001) (noting that a prerequisite to injunctive relief is a demonstration that the plaintiff is "realistically threatened by a repetition of the violation"); *see also Celotex*, 477 U.S. at 322–23 (explaining that the plaintiff bears the burden of establishing future injury that needs to be enjoined).

The County highlights the fact that there is no evidence that the alleged wrongdoing will occur in the future. *See* Doc. No. 181-1 at 22. In response, Adult Plaintiffs cite to a new piece of evidence, explaining that D.C.'s father has made another child abuse report. *See* Doc. No. 189 at 28. This is insufficient. Adult Plaintiffs were obligated to offer and cite evidence demonstrating that a genuine issue exists as to whether the alleged wrongdoing will occur in the future—*i.e.*, that the County or its social workers are likely to interview Minor Plaintiffs at school in direct contravention of Williams's wishes. They do neither.

The Court analyzed in detail the likelihood of the interviews occurring again in its order on Minor Plaintiffs' motion for preliminary injunction, which the Court incorporates by reference here. *See* Doc. No. 211. In short, A.C. is now 18 years old and

no longer in school.  *See id.* at 5.  Moreover, the interviews were isolated occurrences that took place five years ago.  *See id.* at 10.  Notwithstanding the new report, no interviews have taken place since.  *See* Doc. No. 199 at 11.  Consequently, Adult Plaintiffs have not raised a triable issue of fact as to whether they will be entitled to injunctive relief.  *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ("[T]he district court [need not] scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").  Therefore, the Court **GRANTS** summary judgment in the County's favor as to Plaintiffs' request for injunctive relief.

## IV. CONCLUSION

Based on the foregoing, the Court **DENIES** Minor Plaintiffs' motion for partial summary judgment.  Further, the Court **GRANTS IN PART** and **DENIES IN PART** the County's motion for summary judgment.  Specifically, the Court **GRANTS** summary judgment for the County on Minor Plaintiffs' Fourth Amendment claim, as well as Plaintiffs' request for injunctive relief.  The Court **DENIES** the County's motion for summary judgment on Adult Plaintiffs' Fourteenth Amendment claim.  Adult Plaintiffs' Fourteenth Amendment claim must proceed to trial.  The Court will issue a separate pretrial scheduling order setting all pertinent deadlines and hearings, including a trial date.  The Court **ORDERS** the parties to jointly contact the chambers of the assigned magistrate judge within five business (5) days of the date this Order is filed, for the purpose of scheduling a mandatory settlement conference at the convenience of the magistrate judge.

**IT IS SO ORDERED.**

Dated:  February 10, 2021

HON. MICHAEL M. ANELLO
United States District Judge