1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

KATY WILLIAMS, et al.,

Plaintiffs,

v.

COUNTY OF SAN DIEGO, et al.,

Defendants.

Case No.:  17-cv-815-MMA (JLB)

**ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION**

[Doc. No. 220]

Katy Williams and Gary Evans ("Adult Plaintiffs"), as well as minors A.C., Am.E., and Aa.E., by and through their Guardian ad Litem, John Garter ("Minor Plaintiffs," and collectively with Adult Plaintiffs, "Plaintiffs") bring this action against the County of San Diego (the "County") asserting civil rights violations pursuant to 42 U.S.C. § 1983.[1]  *See* Doc. No. 24 ("FAC.").  On February 10, 2021, the Court denied Minor Plaintiffs' motion for summary judgment and granted in part the County's cross summary judgment motion (the "Summary Judgment Order").  *See* Doc. No. 217.  Specifically, the Court ruled in the County's favor on Minor Plaintiffs' Fourth Amendment claim and request for injunctive

---

[1]  As explained in the Court's order on summary judgment, the County of San Diego is the only remaining defendant.  *See* Doc. No. 217 at 1 n.1.

1 relief.  *See id.* at 18, 24.  The Court further determined that disputed material facts

2 precluded summary judgment as to Adult Plaintiffs' Fourteenth Amendment familial

3 association claim.  *See id.* at 22.  The County now moves for reconsideration, arguing

4 that the Court should have granted summary judgment in its favor on Adult Plaintiffs'

5 Fourteenth Amendment claim.  *See* Doc. No. 220.  Plaintiffs filed an opposition, to which

6 the County replied.  *See* Doc. Nos. 224, 225.  The Court found the matter suitable for

7 determination on the papers and without oral argument pursuant to Civil Local Rule

8 7.1.d.1.  *See* Doc. No. 222.  For the reasons set forth below, the Court **DENIES** the

9 County's motion for reconsideration.

10 ## I. BACKGROUND

11 The facts are set forth more fully in the Summary Judgment Order, *see* Doc. No.

12 217, which the Court incorporates by reference here.  For the purpose of reconsideration,

13 however, the Court provides the following limited summary.  In January 2016, the

14 County was investigating a child abuse/neglect claim relating to Minor Plaintiffs' sibling,

15 D.C.  *See* Doc. No. 181-2 at Nos. 1, 2.  During a home visit, Minor Plaintiffs' mother,

16 Plaintiff Katy Williams, informed the County's social workers that they were prohibited

17 from speaking with Minor Plaintiffs without their attorney present.  *See* Doc. No. 182-3

18 at No. 54.  Nonetheless, on January 19, 2016, two social workers interviewed Minor

19 Plaintiffs at school without their attorney.  *See id.* at No. 74.

20 Following the interviews, Plaintiffs filed this *Monell* action against the County

21 asserting civil rights violations.  *See Monell v. New York Dep't of Soc. Servs.*, 436 U.S.

22 658 (1978).  Namely, Minor Plaintiffs brought a Fourth Amendment unreasonable

23 seizure claim based upon their physical removal from class and Adult Plaintiffs brought a

24 Fourteenth Amendment familial association claim.  Both sides moved for summary

25 judgment.  *See* Doc. Nos. 181, 182.  On summary judgment, the Court concluded that

26 Minor Plaintiffs' Fourth Amendment claim failed as a matter of law.  First, it determined

27 that there is no precedent for imposing a parental consent, court order, or exigent

28 circumstances requirement for interviewing children in the course of a child abuse

1  investigation.  *See* Doc. No. 217 at 14–15.  Instead, it appears clear that each allegation of

2  an unconstitutional seizure must be evaluated on a case-by-case basis.  Next, the Court

3  conducted the standard unreasonable seizure analysis and determined that, based on the

4  submitted facts, any minimal harm was vastly outweighed by the County's interest.  *See*

5  *id.* at 15–16.  Accordingly, the Court granted summary judgment for the County on

6  Minor Plaintiffs' Fourth Amendment claim.

7  The Court also considered Adult Plaintiffs' Fourteenth Amendment claim.  The

8  Court found that the "shocks the conscience" standard applies, *see id.* at 20, and that

9  material factual issues precluded summary judgment.  Specifically,

10
> Based on Williams' explicit prohibition against interviews, a reasonable jury
11
> could determine that Adult Plaintiffs lost actual control of Minor Plaintiffs—
> namely, the right to care, control, and manage them—when the Social
12
> Workers proceeded to interview them against her wishes.  Similarly, viewing
13
> all available facts in the light most favorable to Adult Plaintiffs, a reasonable
> jury could find that the Social Workers acted with deliberate indifference to
14
> Adult Plaintiffs' familial rights in a conscience-shocking manner.
15

16  *Id.* at 22.  It is this portion of the Summary Judgment Order that the County asks the

17  Court to reconsider.

18  **II. LEGAL STANDARD**

19  The Federal Rules of Civil Procedure do not expressly provide for motions for

20  reconsideration.  However, a motion for reconsideration may be construed as a motion to

21  alter or amend a final judgment, order, or proceeding under Rule 59(e) or 60(b).  *See*

22  *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989); *In re Arrowhead Estates Dev.*

23  *Co.*, 42 F.3d 1306, 1311 (9th Cir. 1994).  Additionally, a motion for reconsideration is

24  proper under Civil Local Rule 7.1.i.1.  *See* Civ. L. R. 7.1.i.

25  Federal Rule of Civil Procedure 59(e) authorizes courts to provide relief from

26  judgment by motion.  *See* Fed. R. Civ. P. 59(e).  Under Rule 59(e), it is appropriate to

27  alter or amend a judgment if "(1) the district court is presented with newly discovered

28  evidence, (2) the district court committed clear error or made an initial decision that was

1    manifestly unjust, or (3) there is an intervening change in controlling law." *United Nat'l*

2    *Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009); *see also Marlyn*

3    *Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009)

4    (internal quotation marks and citations omitted).

5          "A motion for reconsideration is not a vehicle to reargue the motion or to present

6    evidence which should have been raised before." *See United States v. Westlands Water*

7    *Dist.*, 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001).  Therefore, "[a] party seeking

8    reconsideration must show more than a disagreement with the Court's decision, and

9    recapitulation of the cases and arguments considered by the [C]ourt before rendering its

10   original decision fails to carry the moving party's burden." *Id.* (internal quotation marks

11   and citation omitted).  This is because Rule 59(e) may not be used to relitigate old

12   matters, raise new arguments, or present evidence that could have been raised prior to

13   entry of the judgment.  *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486–87 (2008);

14   *see also Taylor v. Knapp*, 871 F.2d 803, 805 (9th Cir. 1988) (finding denial of a Rule

15   59(e) motion proper where the motion "presented no arguments that had not already been

16   raised in opposition to summary judgment").

## III. DISCUSSION

18         The County filed its motion within 28 days of the Summary Judgment Order.

19   Therefore, its request is governed by Rule 59(e).  The Court is not advised of any new

20   evidence or intervening change in controlling law.  Instead, the County asserts that the

21   Court committed clear error when it denied the County's request for summary judgment

22   on Adult Plaintiffs' Fourteenth Amendment claim.

23         A review of the motion reveals that the County is seeking to relitigate a matter that

24   the Court already ruled on, which is precisely improper on a Rule 59(e) motion.  A

25   motion for reconsideration is not a vehicle for taking a "second bite at the apple." *Weeks*

26   *v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001) (quoting *Sequa Corp. v. GBJ Corp.*, 156

27   F.3d 136, 144 (2d Cir. 1998)) (internal quotation marks omitted).  Nonetheless, the Court

28   addresses the merits of the County's motion and further explains its ruling.

1   The Supreme Court has repeatedly recognized the constitutional right to familial

2   association within the Fourteenth Amendment.  *See, e.g.*, *Pierce v. Soc'y of Sisters*, 268

3   U.S. 510, 534–35 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).  Those cases

4   firmly "establish that the Constitution protects the sanctity of the family precisely

5   because the institution of the family is deeply rooted in this Nation's history and

6   tradition." *Moore v. E. Cleveland*, 431 U.S. 494, 503 (1977); *see also Pierce*, 268 U.S. at

7   534–35; *Meyer*, 262 U.S. at 399.  Accordingly, it is indisputable that the Fourteenth

8   Amendment protects the "fundamental right of parents to make decisions concerning the

9   care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000);

10  *see also Stanley* v. *Illinois*, 405 U.S. 645, 651 (1972) ("It is plain that the interest of a

11  parent in the companionship, care, custody, and management of his or her children

12  'comes to this Court with a momentum for respect lacking when appeal is made to

13  liberties which derive merely from shifting economic arrangements'") (citation omitted));

14  *Wisconsin* v. *Yoder*, 406 U.S. 205, 232 (1972) ("The history and culture of Western

15  civilization reflect a strong tradition of parental concern for the nurture and upbringing of

16  their children. This primary role of the parents in the upbringing of their children is now

17  established beyond debate as an enduring American tradition"); *Quilloin* v. *Walcott*, 434

18  U.S. 246, 255 (1978) ("We have recognized on numerous occasions that the relationship

19  between parent and child is constitutionally protected"); *Parham* v. *J. R.*, 442 U.S. 584,

20  602 (1979) ("Our jurisprudence historically has reflected Western civilization concepts of

21  the family as a unit with broad parental authority over minor children. Our cases have

22  consistently followed that course"); *Santosky* v. *Kramer*, 455 U.S. 745, 753 (1982)

23  (discussing "the fundamental liberty interest of natural parents in the care, custody, and

24  management of their child"); *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) ("In a

25  long line of cases, we have held that, in addition to the specific freedoms protected by the

26  Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the

27  right . . . to direct the education and upbringing of one's children.").  While it appears

28  plain, it is nonetheless necessary for the Court to unambiguously state that the Fourteenth

1    Amendment's protection of familial association is not limited to the right to custody but

2    also includes the right to companionship, care, control, and management.  *See, e.g.*,

3    *James v. Rowlands*, 606 F.3d 646, 651 (9th Cir. 2010); *Lassiter v. Dep't of Soc. Servs.*,

4    452 U.S. 18, 27 (1981).

5           The Court has already concluded that Adult Plaintiffs' familial association claim is

6    based upon the County's allegedly unconstitutional interference with their right to care,

7    control, and manage Minor Plaintiffs.  *See* Doc. No. 217 at 22.  Accordingly, it is *not*

8    premised on an alleged loss of custody.  This distinction is important.  While it is true

9    that the alleged violation occurred the moment the County interviewed Minor Plaintiffs,

10   it is not the interviews themselves that gave rise to this claim.  Adult Plaintiffs do not

11   assert that they lost custody of Minor Plaintiffs as a result of the investigation, or that

12   their separation from Minor Plaintiffs during the interviews was unconstitutional.

13   Instead, it is the County's *decision* to interview Minor Plaintiffs that Adult Plaintiffs seek

14   to redress.  Put another way, Adult Plaintiffs argue that the County's failure to respect

15   Williams' child-rearing decision to prohibit interviews without an attorney—a decision

16   Williams made within her constitutional right to control and manage Minor Plaintiffs—is

17   unconstitutional under the Fourteenth Amendment.  Accordingly, Adult Plaintiffs'

18   familial association claim is based upon a loss of control or management and not a loss of

19   custody.

20          The County nonetheless argues that the claim fails because Adult Plaintiffs cannot

21   show actual loss of custody.[2]  *See, e.g.*, Doc. No. 220-1 at 11.  Specifically, the County

22   contends that "loss of custody of a child is a prerequisite for a parents' ability to pursue a

23   Fourteenth Amendment familial association claim as a result of a social worker's

24   interview of a child at school."  *See id.* at 3.  As an initial matter, the Court agrees that

25

26   _____

27   [2] The County also appears to argue that *all* familial association claims must fail unless a plaintiff shows,
     and eventually proves, loss of custody.  *See* Doc. No. 220-1 at 5.  This argument is unpersuasive.  Never
     has the constitutional right to familial association been limited in such a way.  To be sure, such a blanket
28   requirement would foreclose all claims under the Fourteenth Amendment outside loss of custody cases.

1    pursuant to *Capp* and *Dees*, an "investigation . . . alone is not cognizable as a violation of

2    the liberty interest in familial relations." *Dees*, 960 F.3d at 1152 (quoting *Capp*, 940 F.3d

3    at 1060). However, Adult Plaintiffs' claim is not based upon the investigation or

4    interviews, but the County's decision to interview Minor Plaintiffs in the face of

5    Williams' prohibition. Moreover, the County's argument ignores the fact that a parent

6    has several distinct rights under the Fourteenth Amendment and improperly suggests that

7    an interview can only give rise to a loss of custody claim. Nonetheless, the County

8    asserts that four cases support its position. The Court addresses each in turn.

9    **A.     Ninth Circuit Precedent**

10        In 2015, the County was investigating a child abuse/neglect claim involving the

11   Capp family. *See Capp v. Cty. of San Diego*, 940 F.3d 1046, 1050 (9th Cir. 2019).

12   During an interview between Capp—the children's father—and a social worker, Capp

13   learned that a social worker had interviewed his children at school without his consent.

14   *See id.* The investigation came in the midst of a custody battle between Capp and the

15   children's mother. *See id.* Based on the County's investigation, and on advice of

16   counsel, the children's mother filed an ex parte application to remove the children from

17   Capp's custody. *See id.* at 1051. The application was ultimately denied. *See id.*

18        Among other things, Capp brought a familial association claim under the

19   Fourteenth Amendment. The district court dismissed the claim and Capp appealed. *See*

20   *id.* at 1052. The Ninth Circuit affirmed, stating that "Plaintiffs have not pleaded that

21   Capp experienced such a deprivation" of life, liberty, or property because "Plaintiffs do

22   not allege that Capp actually lost custody of his children as a result of Defendants'

23   alleged misconduct." *Id.* at 1060. Importantly, the Ninth Circuit noted that "[q]uite the

24   contrary, they claim that, after [the children's mother] filed the ex parte application, the

25   family court 'denied the application and rebuked the [Agency].'" *Id.* at n.8.

26        *Capp* is distinguishable. First, Capp did not prohibit the interviews of his children.

27   Moreover, Capp did not allege loss of control or management. Instead, Capp claimed

28   that the investigation (including the interviews) interfered with his right to custody

1  because it caused the children's mother to seek to remove the children from his custody.

2  Accordingly, the Ninth Circuit held that Capp's near-loss of custody was insufficient to

3  bring a claim for loss of custody.  So while the familial association claim in *Capp*

4  similarly spawned from an investigation and interview, it is inapposite because Adult

5  Plaintiffs allege loss of control and management and not loss of custody.

6        The following year, the Ninth Circuit published its opinion in *Dees v. Cty. of San*

7  *Diego*, 960 F.3d 1145 (9th Cir. 2020), further clarifying the constitutional rights

8  implicated during child abuse investigations.  In *Dees*, the County was similarly

9  investigating a child abuse claim, during which time the children were temporarily sent to

10  stay with their biological father.  *Id.* at 1149.  After the family court reviewed the matter

11  and returned the children to their mother, the County sought to "wrap-up" the

12  investigation and complete a final welfare check.  *See id.*  A County social worked called

13  the home to arrange for a final interview of the children.  *See id.*  During this call, the

14  children's maternal grandmother declined the interview and stated that the County "was

15  not to interview [the children] without an attorney present."  *Id.*  Nonetheless, a social

16  worker interviewed one of the children at school.  *See id.* at 1150.

17        Parent plaintiffs brought a Fourteenth Amendment familial association claim.  *See*

18  *id.* at 1152.  The portion of the claim that was based on the interviews as an alleged

19  seizure went to trial and the jury found in the County's favor.  *See id.* at 1150.  Parent

20  plaintiffs filed a motion for judgment as a matter of law, or alternatively, for a new trial.

21  *See id.* at 1151.  The district court granted the motion and conditionally granted a new

22  trial.  *See id.*  The County appealed.  Ultimately, the Ninth Circuit reversed the district

23  court's ruling.  *See id.* at 1153.

24        The Court first distinguishes the nature of the interview prohibition.  It is true that

25  in *Dees*, the children's maternal grandmother informed the social workers that they were

26  not to interview the children without an attorney.  *See id.* at 1149.  However, the

27  grandmother did not have custody of the children, she was merely staying at the Dees'

28  home.  *Id.*  She was neither a parent nor a guardian of the children.  Accordingly, there

1   can be no argument that her request was equally as decisive as Williams'.  Moreover, the

2   omission of this fact from the discussion indicates that it was not relevant to the claim—

3   *i.e.,* parent plaintiffs did not bring a claim for loss of control or management based upon

4   the grandmother's prohibition of the interviews.  So the fact that a third party living in the

5   home prohibited the interviews is not "essentially no different," *see* Doc. No. 220-1 at 7,

6   from Williams, as Minor Plaintiffs' mother, making and communicating an affirmative

7   decision regarding the management of her children, and subsequently bringing a claim

8   for the County's disregard of it.

9          Turning to the substance of the claim in *Dees*, as the County notes, the Ninth

10  Circuit expressly stated that:

11
        Reading *Capp* and *Mann* together, our Court requires that, to establish a
12      Fourteenth Amendment claim based on a minor being separated from his or
        her parents, plaintiff must establish that an actual loss of custody occurred;
13      the mere threat of separation or being subject to an investigation, without
        more, is insufficient.
14

15

16  *Dees*, 960 F.3d at 1152.  However, the key phrase is "based on a minor being separated

17  from his or her parents."  *Id.*  While the facts in *Dees* present a similar case, the differing

18  bases for the claims provide an important distinction.  In *Dees*, the familial association

19  claim was based upon the separation of the children during the interviews.  The Ninth

20  Circuit's discussion in *Dees* makes that clear.  It specifically noted that the familial

21  association claim was based upon an alleged seizure during the interview.  *See id.* at

22  1150.  Further, there is no mention of the grandmother's interview prohibition, and the

23  entire section focuses on the length of the interview and whether it constituted a seizure.

24  *See id.* at 1153 ("[Parent plaintiff] also claims that [social worker] violated her Fourteenth

25  Amendment familial association right when [social worker] allegedly seized L at

26  school.").  Accordingly, the Court reads *Dees* to say that a separation- or seizure-based

27  familial association claim must involve "an actual loss of custody."  *Id.*

28         As noted, Adult Plaintiffs do not claim that the removal of Minor Plaintiffs from

1    class was an unconstitutional separation or seizure.  Therefore, Adult Plaintiffs' claim is

2    not derivative of Minor Plaintiffs' Fourth Amendment seizure claim, nor is it based upon

3    an alleged loss of custody.  Instead, Adult Plaintiffs claim loss of control or management,

4    *to wit*, that the County's decision to disregard Williams' stated, child-rearing decision to

5    prohibit interviews of her children without an attorney present violates the Fourteenth

6    Amendment.  Accordingly, to the extent *Dees* requires a plaintiff to show actual loss of

7    custody, it appears limited to situations wherein the claim is based upon a separation or

8    seizure as an alleged loss of custody and does not clearly extend to cases involving an

9    alleged loss of control or management.

10        Consequently, both *Capp* and *Dees* are distinguishable.  First, neither *Capp* nor

11   *Dees* involved a parent exercising their right to control and manage their children by

12   prohibiting or qualifying interviews as Williams did.  Second, the familial association

13   claims in *Capp* and *Dees* were based on an alleged loss of custody.  Moreover, and

14   importantly, the Ninth Circuit did not state in either *Capp* or *Dees* that a claim for

15   familial association based upon the right to control or manage a child requires a showing

16   of actual loss of custody.[3]  Accordingly, the Court's ruling was not clear error in light of

17   *Capp* and *Dees*.

18   _____

19

20   [3] The County also asserts that "neither *Dees* nor *Capp* hold that a Fourteenth Amendment claim by a parent can be pursued without an accompanying loss of custody of a child simply because the parents

21   asserted their preference not to have their children interviewed without an attorney and the social worker ignored that instruction when they interviewed the child at school." Doc. No. 220-1 at 3.  First, the

22   County's phrasing of Williams' communication as a "request" is disingenuous. *See id.* at 2.  Her decision was an outright prohibition against speaking to Minor Plaintiffs absent their attorney.  It was

23   not a mere "preference," *see id.* at 3, that the County was to take under advisement.  To suggest otherwise misapprehends the nature of this claim.  Second, as explained, the fact that the County ignored

24   Williams' decision is the central point of distinction from *Dees* and *Capp*.  Moreover, that no other cases have considered a loss of control or management claim derived from a parent's decision regarding

25   interviews does not preclude a question of fact here. *See Backlund v. Barnhart*, 778 F.2d 1386, 1390

26   (9th Cir. 1985) ("We do not hold that Section 1983 plaintiffs must always find a case on point in their favor to show that their rights were clearly established. Certainly they need not always produce binding

27   precedent.").  The Court previously acknowledged, *see* Doc. No. 217 at 21, and now reiterates that there is no binding precedent for this precise situation.  Nonetheless there is a genuine issue of material fact

28   that must go to trial.

1    **B.      Other District Court Decisions**

2          The County also draws the Court's attention to two recent district court cases.

3    While not controlling, the Court addresses both.

4          In *Scanlon v. Cty. of Los Angeles*, 2020 U.S. Dist. LEXIS 246270 (C.D. Cal. Oct.

5    21, 2020), the County of Los Angeles interviewed a child at school during a child

6    abuse/neglect investigation.  The parent plaintiffs brought a Fourteenth Amendment

7    familial association claim "arising from the interview of G.X. without the consent of

8    Parent Plaintiffs."  *Id.* at *4.  The defendants filed a Rule 12(c) motion.  *See id.* at *5.  It

9    was undisputed that the parent plaintiffs did in fact lose actual custody of their children.

10   *See id.* at *13.  However, because the parent plaintiffs failed to allege that they lost

11   custody of the children "*as a result* of the interview," *id.* at *14 (emphasis in original),

12   the district court granted the defendants' motion.  *See id.* at *20.

13         *Scanlon* is inapposite.  In *Scanlon*, the parent plaintiffs actually lost custody of

14   their children and accordingly, their familial association claim was for loss of custody.

15   To the contrary, Adult Plaintiffs did not lose custody of Minor Plaintiffs and their claim

16   is based on an alleged loss of control or management.  Therefore, *Scanlon* does not

17   support the County's position.  Moreover, to the extent the court in *Scanlon* found that

18   "the right to decide . . . when their children are interviewed at school" was "expressly

19   foreclosed by *Capp* and *Dees*," *id.* at *15, the Court presumes that this conclusion was

20   made solely based upon the facts and basis for the claim before it.  Notably, the parents

21   did not prohibit the interview, but merely raised issue with it after the fact.  *See id.* at *4.

22         Finally, the County draws the Court's attention to *Wagner v. Cty. of Spokane*, No.

23   2:19-CV-40-RMP, 2020 U.S. Dist. LEXIS 231601, at *8 (E.D. Wash. Dec. 9, 2020).  In

24   *Wagner,* a social worker was investigating a case involving a dangerous dog living in the

25   home of minor children, which had previously attacked a child on more than one

26   occasion.  *See id.* at *1–3.  During the investigation, a social worker went to the family

27   home while neither parent was present.  *See id.* at *4.  While there, she entered the home

28   and checked on the food and sleeping arrangements.  *See id.*  She left after 20–30 minutes

1   and "no children were taken into state custody." *Id.*  Because the district court in *Wagner*

2   found that no actual loss of custody occurred, it granted summary judgment for the

3   defendants.  *See id.* at \*10.

4          *Wagner* is factually distinguishable.  The parents did not prohibit or qualify

5   interviews of their children and the children were never interviewed.  Moreover, the

6   familial association claim in *Wagner* was based upon an alleged loss of custody.  *See id.*

7   Here, Williams prohibited interviews absent Minor Plaintiffs' attorney, interviews

8   nonetheless took place without an attorney present, and Adult Plaintiffs now bring a

9   claim for loss of control and management.[4]

10         In sum, neither *Scanlon* nor *Wagner* are controlling and both are factually

11  distinguishable.  Importantly, neither case involved a prohibition on interviews by a

12  parent or a resulting claim based upon the right to control or manage a child.

13  Accordingly, the Court's ruling in its Summary Judgment Order was not clear error in

14  light of these cases.

15  **C.     The Court's Ruling Was Not Clear Error**

16         The County's sole basis for reconsideration is that Adult Plaintiffs' Fourteenth

17  Amendment familial association claim requires a showing of actual loss of custody

18  pursuant to *Capp*, *Dees*, *Scanlon*, and *Wager*.  However, this argument misapprehends

19  the nature of Adult Plaintiffs' claim, which is based upon a loss of control and

20  management and not loss of custody.  Moreover, as explained above, none of those cases

21  stand for the proposition that a familial association claim based upon a loss of control and

---

[4] To the extent the County argues that the district court in *Wager* concluded that *all* familial association claims require actual loss of custody, the Court is unmoved.  *See Wagner*, 2020 U.S. Dist. LEXIS 231601, at \*8 ("The Ninth Circuit has held that to assert a cognizable Fourteenth Amendment claim plaintiffs must establish that an actual loss of custody occurred; the mere threat of separation or being subject to an investigation, without more, is insufficient.").  As noted, the Ninth Circuit applies this standard in loss of custody familial association claims.  Moreover, the Court does not read *Wagner* to stand for such a proposition, as the district court recognized that "[a] cause of action does not lie where the social worker is *accused of seizing a child* and the parent has not actually lost control over the child. *Id.*

1    management nonetheless still requires a showing of loss of custody.  Therefore, the

2    County has not demonstrated that the Court's ruling on this claim in the Summary

3    Judgment Order was in clear error.

4         Instead, the Court reads *Capp* and *Dees* to say that a Fourteenth Amendment

5    familial association claim based upon the separation of parent from child during an

6    interview, as an alleged loss of custody, requires a showing of actual loss of custody.  It

7    follows then that a plaintiff claiming loss of control or management must show actual

8    loss of control or management.  That was precisely the issue before the Court on

9    summary judgment.  The Court will not re-analyze its finding of a genuine issue of

10   material fact as the County does not claim this was in error.  Nonetheless the Court

11   reiterates that Adult Plaintiffs sufficiently allege that the County's decision to interview

12   Minor Plaintiffs in direct contravention to Williams' stated choice on the matter deprived

13   Adult Plaintiffs of their right to care, control, and manage Minor Plaintiffs.  *See* Doc. No.

14   217 at 22.  Whether this decision in fact violated the Fourteenth Amendment—*i.e.*,

15   whether it constitutes an *actual* loss of control that was deliberately indifferent to Adult

16   Plaintiffs' familial rights in a conscience-shocking manner—is a question of fact that

17   must go to a jury.

18

19

20

21

22                                   ***

23

24

25

26

27

28

## IV. CONCLUSION

Having reviewed the Summary Judgment Order, the Court is satisfied that it committed no error.  The County has not provided any newly discovered evidence, nor has there been an intervening change in controlling law.  And as explained above, neither *Capp*, *Dees*, *Scanlon*, nor *Wagner* hold that in the Ninth Circuit, a Fourteenth Amendment familial association claim based upon loss of control or management requires a showing of loss of custody.  Accordingly, because Adult Plaintiffs do not claim loss of custody, they need not show loss of custody.  The Court therefore **DENIES** the County's motion for reconsideration.

**IT IS SO ORDERED.**

Dated:  June 7, 2021

HON. MICHAEL M. ANELLO
United States District Judge